Jeffrey S. Boxer, Esq.
Jacob H. Nemon, Esq.
Dylan L. Ruffi, Esq.
Carter Ledyard & Milburn LLP
Two Wall Street
New York, New York 10005
Tel. (212) 732-3200
Fax (212) 732-3232
Email boxer@clm.com/ nemon@clm.com/ ruffi@clm.com
*Attorneys for Defendants Itzik Tadmor,*
*Doron Turgeman and Ehud Yahalom*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| REX AND ROBERTA LING LIVING TRUST u/a DECEMBER 6, 1990, as AMENDED, JOHN TAYLOR JONES, and DAVID THOMAS JONES, Individually and on Behalf of All Others Similarly Situated,<br><br>          Plaintiffs,<br><br>     -against-<br><br>B COMMUNICATIONS LTD., EUROCOM COMMUNICATIONS LTD., D.B.S. SATELLITE SERVICES (1998) LTD., SHAUL ELOVITCH, OR ELOVITCH, RON EILON, STELLA HANDLER, DAVID MIZRAHI, MICKY NEIMAN, ALLON RAVEH, ITZIK TADMOR, DORON TURGEMAN, EHUD YAHALOM, and LINOR YOCHELMAN,<br><br>          Defendants. | Dkt. No. 1:17-cv-04937 (JPO) |

## MEMORANDUM OF LAW IN SUPPORT OF
## THE MOTION TO DISMISS OR STAY BY DEFENDANTS
## ITZIK TADMOR, DORON TURGEMAN AND EHUD YAHALOM

# TABLE OF CONTENTS

**Page(s)**

INTRODUCTION ...................................................................................................1

PRELIMINARY STATEMENT ............................................................................1

RELEVANT FACTS ..............................................................................................2

      I.     Allegations Against the Other Defendants .................................................2

      II.    Allegations Against the BComm Individual Defendants............................4

      III.   Facts Concerning the Court's Lack of Personal Jurisdiction Over the BComm Individual Defendants ...................................................................6

ARGUMENT...........................................................................................................6

POINT I THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION OVER THE BCOMM INDIVIDUAL DEFENDANTS ....................................6

      A.    Standard for Rule 12(b)(2) Motion to Dismiss...........................................6

      B.    The BComm Individual Defendants Do Not Have Sufficient Minimum Contacts with the United States to Exercise Personal Jurisdiction.............8

      C.    The Exercise of Jurisdiction Would Be Unreasonable ..............................10

POINT II THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM AGAINST THE BCOMM INDIVIDUAL DEFENDANTS ...........................................12

      A.    Standard for Rule 12(b)(6) Motion to Dismiss..........................................12

      B.    Count I Should be Dismissed Because it Fails to State a Claim for Securities Fraud ......................................................................................13

            1.     The Complaint Fails to Allege the BComm Individual Defendants' Scienter...................................................................13

                 i. No Specific Allegation of the BComm Individual Defendants' Actual Knowledge of or Participation in the Underlying Scheme........................................................................14

                 ii. No Specific Allegations of the BComm Individual Defendants' Motive and Opportunity to Commit Fraud...............16

                 iii. No Specific Allegations of the BComm Individual Defendants' Recklessness.............................................................16

2.    The Complaint Fails to Allege any Material Misrepresentation or Omission with Respect to Specific Statements by the BComm Individual Defendants ................................................................ 19

3.    The Complaint Fails to Plead Loss Causation ............................. 20

C.    Count II Should be Dismissed Because the Complaint Fails to Allege Control Person Liability ........................................................................ 22

POINT III THIS ACTION SHOULD BE STAYED PENDING THE OUTCOME OF THE ISRAELI CRIMINAL INVESTIGATION .................................................................. 23

CONCLUSION .......................................................................................................... 24

8245363.13

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Advanced Battery Techs., Inc. v. Bagell,*
 781 F.3d 638 (2d Cir. 2015)....................................................................................19

*Ashcroft v. Iqbal,*
 556 U.S. 662 (2009)...............................................................................................12

*Bell Atl. Corp. v. Twombly,*
 550 U.S. 544 (2007)..........................................................................................12, 20

*Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC,*
 750 F.3d 227 (2d Cir. 2014)...............................................................................12, 22

*Central States, Se. & Sw. Areas Pension Fund v. Fed. Home Loan Mortg. Corp.,*
 543 Fed. App'x 72 (2d Cir. 2013)............................................................................21

*C.D.T.S. No. 1 v. UBS AG,*
 2013 WL 6576031 (S.D.N.Y. Dec. 13, 2013) .........................................................14

*Chill v. GE,*
 101 F.3d 263 (2d Cir. 1996)....................................................................................18

*City of Pontiac Gen. Emps.' Ret. Sys. v. Lockheed Martin Corp.,*
 875 F. Supp. 2d 359 (S.D.N.Y. 2012)......................................................................23

*Dura Pharms., Inc. v. Broudo,*
 544 U.S. 336 (2005)...............................................................................................20

*Eades v. Kennedy, PC Law Offices,*
 799 F.3d 161 (2d Cir. 2015).................................................................................7, 10

*ECA & Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.,*
 553 F.3d 187 (2d Cir. 2009)....................................................................................16

*Fila v. Pingtan Marine Enter. Ltd.,*
 195 F. Supp. 3d 489 ...............................................................................................20

*Fries v. N. Oil & Gas, Inc.,*
 285 F. Supp. 3d 706 ...........................................................................................14, 18

*GAMCO Investors, Inc. v. Vivendi Universal, S.A.,*
 838 F.3d 214 (2d Cir. 2016)....................................................................................13

*Gamm v. Sanderson Farms, Inc.,*
 2018 WL 1319157 (S.D.N.Y. Jan. 19, 2018) ..........................................................14

iv

*Gruber v. Gilbertson*,
   2018 WL 1418188 (S.D.N.Y. Mar. 20, 2018) ..................................................14, 16

*Higginbotham v. Baxter Int'l, Inc.*,
   495 F.3d 753 (7th Cir. 2007) .......................................................................18

*In re AstraZeneca Sec. Litig.*,
   559 F. Supp. 2d 453 (S.D.N.Y. 2008)............................................................7, 8, 9

*In re Banco Bradesco S.A. Sec. Litig.*,
   277 F. Supp. 3d 600 (S.D.N.Y. 2017)............................................................ passim

*In re Braskem Sec. Litig.*,
   246 F. Supp. 3d 731 (S.D.N.Y. 2017)............................................................8, 10, 16

*In re CannaVest Corp. Sec. Litig.*,
   2018 WL 1633847 (S.D.N.Y. Mar. 31, 2018) ........................................................23

*In re Express Scripts Holding Co. Sec. Litig.*,
   2018 WL 2324065 (S.D.N.Y. May 21, 2018) ........................................................15

*In re Inv. Tech. Grp., Inc. Sec. Litig.*,
   2018 WL 1449206 (S.D.N.Y. Mar. 23, 2018) ........................................................23

*In re Mylan N.V. Sec. Litig.*,
   2018 WL 1595985 (S.D.N.Y. Mar. 28, 2018) ..................................................16, 20

*In re Rhodia S.A. Sec. Litig.*,
   531 F. Supp. 2d 527 (S.D.N.Y. 2007)................................................................9

*In re Take-Two Interactive Sec. Litig.*,
   551 F. Supp. 2d 247 (S.D.N.Y. 2008)......................................................17, 22, 23

*Ind. Pub. Ret. Sys. v. SAIC, Inc.*,
   818 F.3d 85 (2d Cir. 2016)..........................................................................12

*Jackson v. Halyard Health, Inc.*,
   2018 WL 1621539 (S.D.N.Y. Mar. 30, 2018) ..................................................13, 17

*Janbay v. Canadian Solar, Inc.*,
   2012 WL 1080306 (S.D.N.Y. Mar. 30, 2012) ........................................................21

*Lentell v. Merrill Lynch & Co., Inc.*,
   396 F.3d 161 (2d Cir. 2005).........................................................................20

*MacDermid, Inc. v. Deiter*,
   702 F.3d 725 (2d Cir. 2012).........................................................................7

v

*Marvel Characters, Inc. v. Kirby,*
  726 F.3d 119 (2d Cir. 2013)...................................................................................7

*Menaldi v. Och-Ziff Capital Mgmt. Grp. LLC,*
  277 F. Supp. 3d 500 (S.D.N.Y. 2017)..............................................12, 15, 22

*Asahi Metal Industry Co, Ltd. v. Superior Court of California,*
  480 U.S. 102 (1987)...........................................................................................10

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.,*
  84 F. 3d 560 (2d Cir. 1996).........................................................................10, 11

*Novak v. Kasaks,*
  216 F.3d 300 (2d Cir. 2000)...........................................................................17

*Pablo Star Ltd. v. Welsh Gov't,*
  170 F. Supp. 3d 597 (S.D.N.Y. 2016)..............................................................7

*Pacific Inv. Mgmt. Co. v. Mayer Brown LLP,*
  603 F.3d 144 (2d Cir. 2010).............................................................................22

*Peeq Media, LLC v. Buccheri,*
  2016 WL 5947295 (S.D.N.Y. Oct. 13, 2016) ...............................................8

*Penguin Grp. (USA) Inc. v. Am. Buddha,*
  609 F.3d 30 (2d Cir. 2010).................................................................................6

*Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC,*
  2006 WL 708470 (S.D.N.Y. Mar. 20, 2006) ...............................................9

*Police & Fire Ret. Sys. v. SafeNet, Inc.,*
  645 F. Supp. 2d 210 (S.D.N.Y. 2009)......................................................20, 21

*Prime Mover Capital Partners L.P. v. Elixir Gaming Techs., Inc.,*
  898 F. Supp. 2d 673 (S.D.N.Y. 2012).............................................................20

*Reich v. Lopez,*
  858 F.3d 55 (2d Cir. 2017).................................................................................8

*S. Cherry St., LLC v. Hennessee Grp. LLC,*
  573 F.3d 98 (2d Cir. 2009)..................................................................13, 14, 17

*SEC v. Sharef,*
  924 F. Supp. 2d 539 (S.D.N.Y. 2013).........................................................7, 9

*SEC v. Straub,*
  921 F. Supp. 2d 244 (S.D.N.Y. 2013).........................................................7, 9

vi

*SEC v. Unifund Sal,*
    910 F.2d 1028 (2d Cir. 1990)...................................................................................7

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta,*
    552 U.S. 148 (2008)........................................................................................13

*Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.,*
    531 F.3d 190 (2d Cir. 2008)..............................................................................17

*Wilbush v. Ambac Fin. Grp., Inc.,*
    271 F. Supp. 3d 473 (S.D.N.Y. 2017)..................................................................17

*Wilson v. Merrill Lynch & Co, Inc.,*
    671 F.3d 120 (2d Cir. 2011)..............................................................................12

## STATUTES AND RULES

Federal Rule of Civil Procedure, Rule 9(b) ................................................................12

Federal Rule of Civil Procedure, Rule 12.................................................................1, 6, 7, 12

Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4.......................................................12

Securities Exchange Act of 1934, 15 U.S.C. § 78j ..............................................................13, 23

SEC Rule 10b-5 .......................................................................................13

## INTRODUCTION

Defendants Itzik Tadmor, Doron Turgeman and Ehud Yahalom (together, the "BComm Individual Defendants"), by their undersigned counsel, Carter Ledyard & Milburn LLP, respectfully submit this memorandum of law in support of their motion: (a) pursuant to Federal Rule of Civil Procedure 12(b)(2) to dismiss the Amended Class Action Complaint (Dkt. No. 17) ("Complaint" or "Compl.") for lack of personal jurisdiction; (b) pursuant to Rule 12(b)(6) to dismiss the Complaint for failure to state a claim; or (c) to stay this action pending the outcome of criminal proceedings in Israel involving the same underlying allegations that form the basis for the Complaint.

## PRELIMINARY STATEMENT

The Complaint should be dismissed because the Court lacks personal jurisdiction over the BComm Individual Defendants, who are current or former officers of defendant B Communications Ltd. ("BComm"). Each of the BComm Individual Defendants resides and works in Israel, and their alleged involvement with the transaction underlying the Complaint occurred entirely in Israel.

The Complaint should be dismissed because it fails to state a claim against the BComm Individual Defendants. The Complaint contains no specific allegations that the BComm Individual Defendants knew about or participated in the alleged underlying scheme, that they had any motive and opportunity to engage in fraud, or that they recklessly disregarded information available to them about the alleged scheme. The Complaint instead makes general allegations of supposed wrongdoing by others and attempts to cast the BComm Individual Defendants as culpable by association alone. Moreover, as set forth in BComm's motion to dismiss (Dkt. Nos. 33-36) ("BComm Motion"), none of the alleged misrepresentations or omissions in the Complaint are actionable. Finally, the Complaint fails to adequately allege loss causation.

Alternatively, if the Court does not dismiss the Complaint against the BComm Individual Defendants, the Court should stay the action because the BComm Individual Defendants' defense of this action is prejudiced by an Israeli criminal investigation in which indictments against certain of the other Individual Defendants[1], but not against any of the BComm Individual Defendants, may be imminent.

## RELEVANT FACTS[2]

### I.   Allegations Against the Other Defendants

The Complaint centers on the purchase by Bezeq The Israeli Telecommunication Corp. Ltd. ("Bezeq") from Eurocom Communications Ltd. ("Eurocom") of the controlling interest in D.B.S. Satellite Services (1998) Ltd. ("Yes"), an Israeli satellite television provider (the "Bezeq-Yes Transaction"). Bezeq is a public company whose shares are traded on the Tel Aviv Stock Exchange ("TASE"). Compl. ¶ 8. BComm is a public company whose shares are traded on both the TASE and NASDAQ. *Id.* ¶ 16. The Complaint alleges that BComm owns about 26% of Bezeq's shares and that this constitutes a controlling interest in Bezeq. *Id.* The Bezeq-Yes Transaction closed on June 24, 2015. *See* Declaration of Jeffrey S. Boxer, dated July 12, 2018 ("Boxer Decl."), Ex. A (BComm, Report of Foreign Private Issuer (Form 6-K), Ex. 99.1 (Immediate Report of Bezeq – Closing of "YES" Transaction) (June 25, 2015)).[3]

The Complaint asserts that, prior to the completion of the Bezeq-Yes Transaction, Eurocom and Shaul Elovitch (an Israeli resident who allegedly controlled Eurocom, BComm,

---

[1] The other "Individual Defendants" are Shaul Elovitch (BComm's and Bezeq's chairman at the relevant time), Or Elovitch (BComm and Bezeq director and Eurocom's CEO), Ron Eilon (Yes's CEO), Stella Handler (Bezeq's former CEO), David Mizrahi (Bezeq's CFO), Micky Neiman (Yes's CFO), Allon Raveh (Bezeq's CFO), and Linor Yochelman (Bezeq's former Secretary). Compl. ¶¶ 16-29.

[2] In addition to the facts set forth below, the BComm Individual Defendants incorporate by reference the statement of facts in the Memorandum of Law in Support of Defendant B Communications Ltd.'s Motion to Dismiss or Stay, dated February 20, 2018 (Dkt. No. 36) ("BComm MOL"), at 2-9.

[3] The Court may consider BComm's SEC filings, particularly where the filings are referred to in the Complaint or were known to and relied upon by the plaintiffs in bringing suit. *In re Banco Bradesco S.A. Sec. Litig.*, 2017 WL 4381407, at *18 (S.D.N.Y. Sep. 29, 2017) (Woods, J.).

2

Bezeq and Yes) unduly influenced a committee of Bezeq's independent directors that reviewed the potential transaction.  In particular, the Complaint alleges that during negotiations leading to the Bezeq-Yes Transaction, Ms. Handler (Bezeq's then CEO) and Mr. Yochelman (Bezeq's then secretary) improperly provided unspecified, unidentified confidential information about the committee's discussions to Shaul Elovitch.  Compl. ¶¶ 42, 150.

The Complaint also alleges that after the transaction, some of Yes's directors or officers overstated Yes's "Free Cash Flow" so that Yes met certain contingent payment targets in the Bezeq-Yes Transaction agreements, resulting in additional payments of NIS 114 million from Bezeq to Eurocom.  *Id.* ¶¶ 39-41, 44-45, 50, 149.  The Complaint alleges that Yes's Free Cash Flow was overstated because some of Yes's executives withheld or delayed payments to some of Yes's suppliers, but provides no information about those payment or why any actions relating to the payments were improper.  *Id.* ¶ 43.  The Bezeq-Yes Transaction agreement defined Free Cash Flow as "net cash from operating activities less (or plus) net cash for the purchase/sale of property, plant and equipment and intangible assets."  *Id.* ¶ 39.

The Complaint alleges that Yes's inflated Free Cash Flow numbers were incorporated into Bezeq's audited financial statements, which were then incorporated into BComm's audited financial statements, allegedly resulting in BComm overstating Free Cash Flow.  *Id.* ¶¶ 44-45.  To support the allegation that Yes's Free Cash Flow was incorporated into BComm's financial statements, Plaintiffs equate Yes's Free Cash Flow (as defined in the Bezeq-Yes Transaction) with the line in BComm's financial statements reflecting "Net increase in cash and cash equivalents."  *See id.* ¶¶ 58, 60, 62, 64, 66, 68, 70.  Free Cash Flow, however, is a non-GAAP, non-IFRS financial measure which is not, and may not be, included in BComm's audited financial statements.  *See* Dkt No. 53-6 (BComm, 2016 Annual Report, at 91-93 (Apr. 26,

2017)).  Thus, Plaintiffs apparently confuse BComm's reporting of "cash and cash equivalents" in its financial statements with other documents that may have referred to Yes's or Bezeq's "Free Cash Flow."

## II.   Allegations Against the BComm Individual Defendants

Defendant Yahalom was BComm's CFO from October 2, 2011 until May 3, 2015[4], Defendant Tadmor is BComm's current CFO, and Defendant Turgeman is BComm's CEO.  *See* Compl. ¶¶ 26-28; Boxer Decl. Ex. B (BComm, Report of Foreign Private Issuer (Form 6-K), Ex. 99.1 (Departure of Chief Financial Officer) (May 4, 2015)).  The Complaint alleges that certain of BComm's SEC filings signed by the BComm Individual Defendants during the alleged class period from March 18, 2015 through September 6, 2017 contained misrepresentations or omissions because they (i) referred in the Form 20-F to Bezeq's committee considering the Bezeq-Yes Transaction without disclosing that the committee allegedly was not independent or was influenced by Eurocom (Compl. ¶¶ 76, 88) and (ii) incorporated Bezeq's (and thus Yes's) allegedly overstated Free Cash Flow into BComm's consolidated financial statements.  *See* Compl. ¶¶ 55, 58, 60, 62, 64, 66, 68, 70.  The Complaint also alleges that statements in certain of BComm's SEC filings about its disclosure controls and procedures, code of ethics and legal compliance and its Sarbanes-Oxley Act ("SOX") certifications were false.  *Id.* ¶¶ 80, 93, 96, 99, 101, 103.

While the Complaint claims that statements in certain SEC filings were misleading, there are no specific allegations that any of the BComm Individual Defendants participated in the purported effort to influence Bezeq's committee to endorse the Bezeq-Yes Transaction or to allegedly inflate Yes's Free Cash Flow.  Instead of specific allegations, the Complaint generally

---

[4] Defendant Yahalom was a BComm officer for about six weeks during the alleged class period, and is alleged to have signed only one filing containing purportedly materially misleading statements or omissions, none of which related to Free Cash Flow.  Compl. ¶¶ 76-81.

4

alleges that the defendants collectively engaged in this scheme (*see id.* ¶¶ 1-3, 54, 167-68), and only asserts that other defendants (but not the BComm Individual Defendants) engaged in various conduct to advance the purported scheme. *See, e.g., id.* ¶¶ 42-43 (alleging conduct by other defendants). Thus, the Complaint merely alleges that the BComm Individual Defendants are culpable by association.

Similarly, there are no specific allegations that the BComm Individual Defendants knew or could have known about the purported scheme or that they recklessly disregarded the scheme. For example, the Complaint merely alleges in general terms that BComm CFOs Tadmor or Yahalom (but not CEO Turgeman) "knew about or recklessly disregarded the scheme," since it was somehow "at the forefront of the[ir] attention" (*id.* ¶ 151), and that they all knew of the scheme "[b]y virtue of their positions at BComm" (*id.* ¶ 170). The Complaint contains no specific allegations about how the BComm Individual Defendants knew or should have known about the alleged scheme or about any procedures that could have detected the alleged conduct. Nor does the Complaint identify what specific information was available to the BComm Individual Defendants or what measures would have detected the alleged actions of those directly involved in the Bezeq-Yes Transaction, to which BComm itself was not a party.

The Complaint also does not allege any specific, plausible motive for the BComm Individual Defendants' purported involvement in the scheme. The Complaint alleges that the motive behind the purported scheme was to funnel funds to Eurocom to pay off its debt. *See id.* ¶¶ 136-38, 140-46. But the Complaint does not attribute any motive to any of the BComm Individual Defendants or explain how any of them could have benefitted from the alleged scheme.

5

III.   **Facts Concerning the Court's Lack of Personal Jurisdiction Over the BComm Individual Defendants**

The Complaint alleges that BComm is headquartered and maintains its principal place of business in Israel.  *Id.* ¶ 16.  During the alleged class period, each of the BComm Individual Defendants resided and worked in Israel, and did not reside or regularly conduct business in the United States.  Declaration of Doron Turgeman, dated July 11, 2018 ("Turgeman Decl."), ¶ 3; Declaration of Itzik Tadmor, dated July 11, 2018 ("Tadmor Decl."), ¶ 3; Declaration of Ehud Yahalom, dated July 11, 2018 ("Yahalom Decl."), ¶ 3.  The Complaint is predicated upon alleged violations by others (not the BComm Individual Defendants) of Israeli securities and penal law arising out of the Bezeq-Yes Transaction, all of which took place in Israel and involved Israeli entities and persons.  Compl. ¶ 6.  The Complaint's "Jurisdiction and Venue" section does not explicitly state any basis for personal jurisdiction over the BComm Individual Defendants (*id.* ¶¶ 9-12), but refers to Section 27 of the Exchange Act as the basis for the Court's subject matter jurisdiction.  *Id.* ¶ 10.  On March 14, 2018, the Clerk of Court filed Certificates of Mailing indicating that it had sent copies of the Summons, Complaint and other documents to each of the BComm Individual Defendants at the same business address in Israel.  Dkt. Nos. 37-39.

## ARGUMENT

### POINT I
### THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION OVER THE BCOMM INDIVIDUAL DEFENDANTS

A.   **Standard for Rule 12(b)(2) Motion to Dismiss**

On a motion to dismiss pursuant to Rule 12(b)(2), the "plaintiff bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit." *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010).  "In order to survive a

motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists." *Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 167-68 (2d Cir. 2015) (internal quotations omitted). "The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits." *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012) (internal citations omitted).

On a Rule 12(b)(2) motion, the Court undertakes a two-step analysis: (1) whether there is a statutory basis for personal jurisdiction over a defendant, and (2) whether exercising personal jurisdiction over the defendant is consistent with due process under the Constitution. *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 129 (2d Cir. 2013); *see Pablo Star Ltd. v. Welsh Gov't*, 170 F. Supp. 3d 597, 605 (S.D.N.Y. 2016) (Oetken, J.). Here, Section 27 of the Exchange Act provides a statutory basis for personal jurisdiction over a foreign defendant for Exchange Act violations involving securities listed on a domestic exchange. *SEC v. Straub*, 921 F. Supp. 2d 244, 252 (S.D.N.Y. 2013) (citing *Leasco Data Processing Equip. Corp. v. Maxwell*, 468 F.2d 1326, 1339-40 (2d Cir. 1972)). Section 27 permits the exercise of personal jurisdiction to the extent permitted by the Due Process Clause of the Fifth Amendment, so the assertion of personal jurisdiction must be tested against due process standards. *See SEC v. Unifund Sal*, 910 F.2d 1028, 1033 (2d Cir. 1990); *see generally SEC v. Sharef*, 924 F. Supp. 2d 539, 548 (S.D.N.Y. 2013) ("when a defendant[] is not located in the United States, great care and reserve should be exercised when extending our notions of personal jurisdiction into the international context.") (internal citations omitted).

To satisfy due process standards for personal jurisdiction, the defendant must have minimum contacts with the forum and the exercise of jurisdiction must be reasonable. *In re AstraZeneca Sec. Litig.*, 559 F. Supp. 2d 453, 466 (S.D.N.Y. 2008), *aff'd sub nom. State*

7

*Universities Ret. Sys. of Illinois v. Astrazeneca PLC*, 334 F. App'x 404 (2d Cir. 2009). Claims against Israeli citizens and residents who work in Israel relating to alleged conduct (primarily, if not entirely, undertaken by others) that occurred in Israel do not meet this standard.

**B.      The BComm Individual Defendants Do Not Have Sufficient Minimum Contacts with the United States to Exercise Personal Jurisdiction**

The Complaint fails to plead sufficient facts to demonstrate that the BComm Individual Defendants, in their individual capacities, had sufficient minimum contacts with the United States, making the exercise of personal jurisdiction over them inconsistent with due process. *See Peeq Media, LLC v. Buccheri*, 2016 WL 5947295, at *4 (S.D.N.Y. Oct. 13, 2016) (Oetken, J.). In conducting the minimum contacts analysis, the Court must "evaluate[] the quality and nature" of the defendants' contacts with the forum. *In re Braskem Sec. Litig.*, 246 F. Supp. 3d 731, 767 (S.D.N.Y. 2017) (citing *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242 (2d Cir. 2007)).[5]

In the securities fraud context, a complaint's allegations that defendants "caused the distribution of false and misleading reports and statements to [a foreign company's] investors in the U.S." or "had actual knowledge that each of the representations alleged [] were materially false or misleading" are "merely conclusory statements" incapable of supporting the exercise of personal jurisdiction against individual corporate officers. *AstraZeneca*, 559 F. Supp. 2d at 467; *see also Braskem*, 246 F. Supp. 3d at 770 ("a conclusory statement that a foreign defendant caused an issuer to mak[e] false and misleading filings is not enough to support personal jurisdiction."). Furthermore, being a corporation's "control person" within the meaning of Section 20(a) of the Exchange Act does not, of itself, confer a U.S. court with personal

---

[5] Plaintiffs do not allege that any of the BComm Individual Defendants are subject to general jurisdiction in the United States, nor can they. "General jurisdiction over an individual comports with due process in the forum where he is 'at home,' meaning the place of 'domicile.'" *Reich v. Lopez*, 858 F.3d 55, 63 (2d Cir. 2017). The BComm Individual Defendants reside and work in Israel and are not domiciled in the United States. *See* Turgeman Decl. ¶¶ 2-3; Tadmor Decl. ¶¶ 2-3; Yahalom Decl. ¶¶ 2-3.

8245363.13

jurisdiction. *See In re Rhodia S.A. Sec. Litig.*, 531 F. Supp. 2d 527, 542-43 (S.D.N.Y. 2007)

(citing *City of Monroe Employees Ret. Sys. v. Bridgestone Corp.,* 399 F.3d 651, 667 (6th Cir.

2005)); *Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 2006

WL 708470, at *3 (S.D.N.Y. Mar. 20, 2006).

A foreign company's officer may be found to have minimum contacts with the United

States only where the complaint contains specific allegations that the officer *knowingly* signed a

false SEC filing intending to defraud United States shareholders. *See In re Banco Bradesco S.A.*

*Sec. Litig.*, 277 F. Supp. 3d 600, 643-44 (S.D.N.Y. 2017) ("courts have exercised personal

jurisdiction over individuals who orchestrated bribery schemes aimed at foreign governments

*and* as part of that scheme . . . signed false SEC filings.") (emphasis in original); *Sharef*, 924 F.

Supp. 2d at 547 ("It is by now well-established that signing or directly manipulating financial

statements to cover up illegal foreign action, with knowledge that those statements will be relied

upon by United States investors satisfies [the jurisdictional] test."); *Straub*, 921 F. Supp. 2d at

255-58 ("Defendants knew or had reason to know that any false or misleading financial reports

would be given to prospective American purchasers of those securities.").

The Complaint's conclusory allegations that the BComm Individual Defendants signed

BComm's SEC filings containing allegedly false or misleading statements, without more, are

insufficient to assert that the BComm Individual Defendants have minimum contacts with the

United States.   The Complaint does not specifically allege any fraudulent conduct or knowledge

by the BComm Individual Defendants.   Instead, just like the dismissed complaint in

*AstraZeneca*, 559 F. Supp. 2d at 467, the Complaint here includes boilerplate language about the

BComm Individual Defendants' purported knowledge concerning the alleged misconduct of

others (*e.g.*, Compl. ¶¶ 151, 173, 181, 182), and conclusory allegations that the BComm

9

Individual Defendants had actual knowledge "[b]y virtue of their positions at BComm" and made misstatements or omissions "willfully or with reckless disregard for the truth." *Id.* ¶ 170. The Complaint does not specifically allege what, if anything, the BComm Individual Defendants knew, or even should have known, about the alleged scheme, or what measures they could have taken to prevent it. The only specific conduct alleged against the BComm Individual Defendants is that they signed BComm's SEC filings – quintessential corporate acts. *Id.* ¶¶ 58, 60, 62, 64, 66, 68, 70,76, 80, 88, 93, 96, 99, 101, 103. Without specific allegations of fraudulent intent to harm United States shareholders, the BComm Individual Defendants do not have sufficient minimum contacts with the United States to justify personal jurisdiction.

**C.     The Exercise of Jurisdiction Would Be Unreasonable**

Even if they have minimum contacts, the exercise of personal jurisdiction over the BComm Individual Defendants would be unreasonable. Courts "apply the five-factor test of *Asahi* [*Metal Industry Co, Ltd. v. Superior Court of California*, 480 U.S. 102 (1987)] to assess whether the exercise of jurisdiction comports with traditional notions of fair play and substantial justice." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F. 3d 560, 573 (2d Cir. 1996) (quotation omitted). "The factors are (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies." *Braskem*, 246 F. Supp. 3d at 768; *see Eades*, 799 F.3d at 169.

The exercise of jurisdiction would impose significant burdens on the BComm Individual Defendants. The BComm Individual Defendants are current or former executives of BComm, an Israeli company that has its headquarters and principal (and only) place of business in Israel.

10

Compl. ¶¶ 6, 16, 26-28. Each of the BComm Individual Defendants is a resident of Israel, and none of them work or reside in the United States. Turgeman Decl. ¶ 2; Tadmor Decl. ¶ 2; Yahalom Decl. ¶ 2. Israel is the locus of the Bezeq-Yes Transaction, which is at the center of the allegations in the Complaint (*see* Compl. ¶ 6), so witnesses and documents relevant to the BComm Individual Defendants' defense of these claims are located in Israel.

New York's interest in adjudicating the case is limited. The plaintiffs do not allege that they are citizens of New York, and (outside of SEC filings) none of the alleged conduct that underlies the Complaint occurred in New York, or even in the United States. *Metro. Life*, 84 F. 3d at 574.

While the Plaintiffs have an interest in obtaining convenient and effective relief, they do not allege that New York would be a more convenient forum than any other location, particularly since Plaintiffs do not appear to be New York residents and the witnesses and evidence relating to the underlying fraud allegations are located in Israel. *See id.*

The fourth factor, the efficient administration of justice, also favors dismissal. "In evaluating this factor, courts generally consider where witnesses and evidence are likely to be located." *Id.* As noted above, the witnesses and evidence relevant to the underlying fraud allegations are located in Israel. As to the fifth factor, the Complaint does not identify any policy issues that would be furthered by permitting this case to be heard in New York. Accordingly, the Plaintiffs fail to meet their burden of demonstrating that the exercise of personal jurisdiction over the BComm Individual Defendants is proper.

8245363.13

## POINT II
### THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM AGAINST THE BCOMM INDIVIDUAL DEFENDANTS

**A.      Standard for Rule 12(b)(6) Motion to Dismiss**

To survive a motion to dismiss pursuant to Rule 12(b)(6), the Complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Wilson v. Merrill Lynch & Co, Inc.*, 671 F.3d 120, 128 (2d Cir. 2011).  The claim must rest on "[f]actual allegations [sufficient to] raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A pleading that only offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  *Id.*

A securities fraud complaint must satisfy the heightened pleading standards of Rule 9(b) and the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4(b)(1)-(2).  *Ind. Pub. Ret. Sys. v. SAIC, Inc.*, 818 F.3d 85, 92-93 (2d Cir. 2016).  Plaintiffs "must do more than say that the statements . . . were false and misleading; they must demonstrate with specificity why and how that is so."  *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 750 F.3d 227, 236 (2d Cir. 2014) (internal citation omitted).  A complaint must "(1) specify each statement alleged to have been misleading and the reason or reasons why the statement is misleading, and (2) state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Menaldi v. Och-Ziff Capital Mgmt. Grp. LLC*, 277 F. Supp. 3d 500, 509 (S.D.N.Y. 2017) (Oetken, J.) (internal citations omitted); *see Ind. Pub. Ret. Sys.*, 818 F.3d at 93 (requiring that the defendant acted "consciously and recklessly in omitting or misrepresenting financial information").

12

**B.      Count I Should be Dismissed Because it Fails to State a Claim for Securities Fraud**

Count I of the Complaint alleges that the BComm Individual Defendants violated Section

10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j, and SEC Rule 10b-5 promulgated

thereunder.  Compl ¶ 1.  To allege a violation of Section 10(b), Plaintiffs must plead: "(1) a

material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between

the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the

misrepresentation or omission; (5) economic loss; and (6) loss causation." *Stoneridge Inv.*

*Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148, 157 (2008); *GAMCO Investors, Inc. v. Vivendi*

*Universal, S.A.*, 838 F.3d 214, 217 (2d Cir. 2016).  Count I fails to state a claim because it does

not adequately allege (1) the BComm Individual Defendants' scienter, (2) that any BComm

Individual Defendant knowingly made a material misrepresentation or omission, or (3) loss

causation.

**1.      The Complaint Fails to Allege the BComm Individual Defendants' Scienter**

The claims against the BComm Individual Defendants should be dismissed because the

Complaint fails to allege that they were aware of the purported underlying scheme to inflate

Yes's Free Cash Flow or provide information from Bezeq's special committee to Elovitch.  An

Exchange Act claim should be dismissed where (1) the alleged facts are insufficient to create a

strong inference of scienter, or (2) an inference of scienter is not as compelling as any opposing

inference of non-fraudulent and non-reckless intent.  *S. Cherry St., LLC v. Hennessee Grp. LLC*,

573 F.3d 98, 110-11 (2d Cir. 2009); *Jackson v. Halyard Health, Inc.*, 2018 WL 1621539, at *6

(S.D.N.Y. Mar. 30, 2018) (dismissing complaint based on the plaintiffs' failure to plead scienter

as to each defendant individually).  Scienter means the defendant had an "intent to deceive,

manipulate, or defraud," or the defendant acted with "reckless disregard for the truth," *i.e.*, "a

state of mind *approximating actual intent*, and *not merely a heightened form of negligence.*" *S.*

13

*Cherry*, 573 F.3d at 109 (emphasis added).  "A strong inference of scienter can be established by allegations (1) showing that the defendants had the motive and opportunity to commit fraud; or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness." *Gruber v. Gilbertson*, 2018 WL 1418188, at *11 (S.D.N.Y. Mar. 20, 2018) (citing *ATSI Commc'ns, Inc. v. Shaar Fund Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007)).  "Conscious misbehavior 'encompasses deliberate illegal behavior and recklessness is conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care.'" *Fries v. N. Oil & Gas, Inc.*, 285 F. Supp. 3d 706, 721 (S.D.N.Y. 2018) (quoting *Novak v. Kasaks*, 216 F.3d 300, 308 (2d Cir. 2000)).  "Scienter must be separately pled and individually supportable as to each defendant; scienter is not amenable to group pleading." *C.D.T.S. No. 1 v. UBS AG*, No. 12 Civ. 4924(KBF), 2013 WL 6576031, at *6 (S.D.N.Y. Dec. 13, 2013), *aff'd sub nom. Westchester Teamsters Pension Fund v. UBS AG*, 604 F. App'x 5 (2d Cir. 2015).

The Complaint fails to adequately allege that the BComm Individual Defendants (i) had actual knowledge of or participated in the alleged scheme, (ii) had motive and opportunity to commit fraud, or (iii) acted recklessly.

### i.  *No Specific Allegation of the BComm Individual Defendants' Actual Knowledge of or Participation in the Underlying Scheme*

The Complaint lacks any specific allegations of conscious or deliberate illegal behavior by the BComm Individual Defendants. *Fries*, 285 F. Supp. 3d at 720-21.  Where a defendant is alleged to have participated in a fraudulent scheme, a court must determine whether the defendant's participation has been pled with particularity. *Gamm v. Sanderson Farms, Inc.*, 2018 WL 1319157, at *3 (S.D.N.Y. Jan. 19, 2018) (where the allegation in a securities fraud claim is that a defendant participated in a conspiracy, "the plaintiffs must plead the facts of the alleged conspiracy with particularity.") (internal quotations and amendments omitted); *Banco*

14

*Bradesco*, 277 F. Supp. 3d at 631-32 ("the Court must determine at the outset whether Plaintiff has adequately alleged any or all of those schemes"). Scienter is lacking where, as here, a complaint fails to specifically allege that the particular defendant knew about the scheme and intended to deceive investors. *See Menaldi*, 277 F. Supp. 3d at 516; *In re Express Scripts Holding Co. Sec. Litig.*, 2018 WL 2324065, at \*9 (S.D.N.Y. May 21, 2018) ("the problem with Plaintiff's claim is . . . Plaintiff has failed to point to any evidence that Defendants knew their public statements . . . in SEC filings . . . were incorrect.");.

The Complaint is based entirely on allegations that people other than the BComm Individual Defendants were actively involved in the alleged scheme. The Complaint alleges that (a) one or more of Bezeq's officers leaked information from the committee reviewing the proposed Bezeq-Yes Transaction to Shaul Elovitch and (b) Yes's officers inflated Yes's Free Cash Flow to increase the consideration Bezeq paid to acquire Yes. Compl. ¶¶ 42-43, 148-149. There are no specific allegations in the Complaint that any of the BComm Individual Defendants actually knew about, much less participated in, the alleged leaks of information by certain of Bezeq's officers or the alleged inflation of Yes's Free Cash Flow by Yes's officers. The Complaint refers to Bezeq's former CEO Handler (who was not a member of the Bezeq committee[6] or an officer or employee of BComm) as a supposed source of leaked information from the committee, but does not allege any communications between Handler and any of the BComm Individual Defendants. *See id.* ¶ 42(a).[7]

---

[6] *See* Dkt. No. 53-4 at ¶ 4.3.1 (Bezeq, Immediate report on the convening of a special meeting (Mar. 12, 2015)).
[7] The knowledge of Shaul Elovitch or others who supposedly participated in the scheme cannot be imputed to the BComm Individual Defendants. *See Banco Bradesco*, 277 F. Supp. 3d at 664-66 (holding that in a "case involving multiple defendants, plaintiffs must plead circumstances providing a factual basis for scienter for each defendant; guilt by association is impermissible" and dismissing officer who had no knowledge of alleged bribery scheme) (internal quotation and citation omitted).

###### ii.     *No Specific Allegations of the BComm Individual Defendants' Motive and Opportunity to Commit Fraud*

To show motive and opportunity, plaintiffs must allege that the defendants "benefitted in some concrete and personal way from the purported fraud." *ECA & Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009); *In re Mylan N.V. Sec. Litig.*, 2018 WL 1595985, at *11 (S.D.N.Y. Mar. 28, 2018) (Oetken, J.).  Motives common to all corporate officers, such as the desire for the company to appear profitable, to keep stock prices high, for higher compensation or to complete announced initiatives, are insufficient to allege scienter.  *Braskem*, 246 F. Supp. 3d at 764.  To suffice, the complaint must show that the defendants' "financial incentives were unique and substantial." *Gruber*, 2018 WL 1418188, at *11.  Here, the Complaint makes no claim that the BComm Individual Defendants had any motive or opportunity to gain from making the alleged misrepresentations, either for themselves individually or for BComm.  In fact, the Complaint asserts that the purported scheme benefitted Eurocom and Mr. Elovitch alone.  *See* Compl. ¶¶ 51-52.  Moreover, according to the Complaint, the alleged scheme to inflate Yes's Free Cash Flow would be detrimental to the BComm Individual Defendants' apparent interest in improving the financial position of BComm since it would cause BComm's subsidiary Bezeq to increase the purchase price paid to Eurocom for Yes by up to NIS 170 million, decreasing its working capital.  *Id.* ¶ 43.

###### iii.     *No Specific Allegations of the BComm Individual Defendants' Recklessness*

The Complaint's general allegations that the BComm Individual Defendants were reckless are insufficient to establish scienter.  To establish recklessness, a complaint must allege:

> conduct that at the least is highly unreasonable and which represents an extreme departure from the standards of ordinary care to the extent that *the danger was either known to the defendant or so obvious that the defendant must have been aware of it*, or . . . that the defendants failed to review or check *information that*

16

*they had a duty to monitor*, or ignored *obvious* signs of fraud, and hence should
have known that they were misrepresenting material facts.

*S. Cherry St.*, 573 F.3d at 109 (quotations omitted).  "[W]here, as here, motive is not apparent . .
. the strength of the circumstantial allegations [of recklessness] must be correspondingly
greater."  *In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 270 (S.D.N.Y. 2008)
(internal citation and quotation omitted).

"[W]here plaintiffs contend defendants had access to contrary facts, they must
specifically identify the reports or statements containing this [contrary] information."  *Teamsters
Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*, 531 F.3d 190, 196 (2d Cir. 2008)
(quotation omitted); *Wilbush v. Ambac Fin. Grp., Inc.*, 271 F. Supp. 3d 473, 494 (S.D.N.Y.
2017) (Plaintiffs must "allege that defendants had access to non-public information contradicting
their public statements.") (alterations and quotation omitted); *see also Jackson*, 2018 WL
1621539, at *6 ("An allegation that a defendant merely ought to have known about reports or
statements containing contrary facts is not sufficient to allege recklessness.") (quotation
omitted).  Similarly, a complaint must allege more than a parent company's (let alone its
officers') failure to correctly interpret its subsidiary's financials or to investigate further:

> [T]he allegation that a parent company had failed to interpret its subsidiary's
> "unprecedented and dramatically increasing profitability" in a particular form of
> trading as a sign of problems, and thus had failed to investigate further, did not
> adequately plead reckless disregard amounting to scienter.

*S. Cherry St.*, 573 F.3d at 110 (quoting *Chill v. GE*, 101 F.3d 263, 269-70 (2d Cir. 1996)); *see
also Novak*, 216 F.3d at 300.  Without more, the Court must presume that "the statements either
were not misleading or were the result of merely careless mistakes at the management level
based on false information fed it from below," rather than a knowing misrepresentation or even
recklessness by the officers of the parent corporation.  *Teamsters*, 531 F.3d at 197 (quotation

17

omitted).  In any event, "abdication of responsibility do[es] not establish fraudulent intent as opposed to mere mismanagement." *Fries*, 285 F. Supp. 3d at 722.

The Complaint makes conclusory allegations that the defendants collectively acted recklessly. *E.g.*, Compl. ¶¶ 54, 151, 166, 170, 175.  It also makes the general allegation that BComm CFOs Tadmor and Yahalom (but not BComm's CEO Turgeman) "knew about or recklessly disregarded the scheme." *Id.* ¶ 151.  However, the Complaint does not specifically allege any supporting facts for these general allegations of recklessness.  For example, despite labeling it Messrs. Tadmor's and Yahalom's "responsibility" to monitor Yes's Free Cash Flow (*id.*), the Complaint fails to adequately allege what legal obligation they had to investigate the audited finances of BComm's partially owned subsidiary, Bezeq, or Bezeq's subsidiary, Yes, or how BComm's reliance on a partially owned subsidiary's financial information constitutes scienter regarding the alleged underlying fraud. *Chill*, 101 F.3d at 270 ("Fraud cannot be inferred simply because [the parent] might have been more curious or concerned about the activity at [the subsidiary]"); *Banco Bradesco*, 277 F. Supp. 3d at 666 ("Although Plaintiff makes a fleeting argument that Abreu failed to check information that he had a duty to monitor, that argument fails the particularity test because Plaintiff has not identified any specific information that could have been uncovered by Abreu in the course of a reasonable investigation at that time."); *see Higginbotham v. Baxter Int'l, Inc.*, 495 F.3d 753, 757 (7th Cir. 2007) (declining to impute subsidiary's intent to parent because plaintiffs did "not proffer concrete evidence that anyone at [the parent] knew of the shenanigans [at the subsidiary]").

Since the Complaint fails to allege scienter,[8] Count I should be dismissed for failure to state a claim against the BComm Individual Defendants.

---

[8]  Even if the Complaint alleged scienter (which it does not), the inference of scienter here is not as compelling as opposing inferences that the BComm Individual Defendants acted properly or that there were mere oversights. "[I]t

18

2.    **The Complaint Fails to Allege any Material Misrepresentation or Omission with Respect to Specific Statements by the BComm Individual Defendants**

The BComm Individual Defendants incorporate by reference and join in the portion of the BComm Motion that argued that none of the alleged material misrepresentations or omissions in the Complaint are sufficient to state a claim and that the Complaint fails to allege any wrongdoing in connection with the sale of any security actually issued by BComm, including because (a) BComm's Code of Ethics is aspirational or "puffery" and does not describe specific initiatives or make assurances of efficacy, (b) statements about the committee of Bezeq's directors reviewing the Bezeq-Yes Transaction were accurate, and (c) the Complaint does not specifically allege inadequacies in BComm's internal controls or that the BComm Individual Defendants knew of any inadequacies at the time they signed any SEC filings. *See* BComm MOL at 16-25; Reply Memorandum of Law in Further Support of Defendant B Communications Ltd.'s Motion to Dismiss or Stay, dated May 18, 2018 (Dkt. No. 54) ("BComm Reply MOL"), at 7-14.

In addition, Defendant Yahalom signed only one SEC filing containing allegedly misleading statements or omissions. *See* Compl. ¶ 76.  That filing on April 27, 2015 stated that:

> A sub-committee of the Board of Directors of Bezeq was established to deal with the possible merger in October 2013 and with the help of external consultants selected by the sub-committee, Bezeq reviewed the feasibility of the merger and the options open to it in light of the Commissioner's decision, including the purchase of the DBS shares held by Eurocom.

> On February 10, 2015, the sub-committee, Audit Committee and Board of Directors of Bezeq approved a transaction between Bezeq and Eurocom DBS in which Bezeq will acquire all the holdings of Eurocom DBS in DBS[.]

---

is not enough to set out facts from which, if true, a reasonable person <u>could</u> infer that the defendant acted with the required intent," rather "[t]he inference of scienter must be cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Advanced Battery Techs., Inc. v. Bagell*, 781 F.3d 638, 644 (2d Cir. 2015) (emphasis in original and quotation omitted).

19

*Id.* The Complaint alleges that this statement was materially misleading because it falsely stated that the Bezeq sub-committee was independent when there allegedly were leaks from the sub-committee to Shaul Elovitch. *Id.* ¶¶ 77, 54(b). A simple review of the statement, however, demonstrates that it does not make any representations about the independence of the Bezeq sub-committee. Since this is the sole SEC filing signed by Defendant Yahalom about which the Plaintiffs complain (or which occurred while Mr. Yahalom was the CFO and could arguably have been a control person), the claims against him must be dismissed in their entirety.[9]

### 3. The Complaint Fails to Plead Loss Causation

Plaintiffs also fail to plead loss causation, the "causal connection between the material misrepresentation and the loss." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005). To satisfy this pleading standard, "something beyond the mere possibility of loss causation must be alleged." *Twombly*, 550 U.S. at 557-58. Plaintiffs must allege "the *subject* of the fraudulent statement or omission was the cause of the actual loss suffered . . . ." *Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 173 (2d Cir. 2005) (quotation omitted). To do so, plaintiffs must plead "(1) a corrective disclosure or (2) a materialization of a concealed risk." *Prime Mover Capital Partners L.P. v. Elixir Gaming Techs., Inc.*, 898 F. Supp. 2d 673, 685 (S.D.N.Y. 2012).

By no means a model of clarity, the Complaint apparently relies on a theory of corrective disclosure (Compl. ¶¶ 14-15), which requires Plaintiffs to identify the relevant disclosures and plausibly allege that they corrected a prior falsehood. *Fila v. Pingtan Marine Enter. Ltd.*, 195 F. Supp. 3d 489, 496 (S.D.N.Y. 2016). The corrective disclosure must "provide notice to an investor" of the "specific fraudulent [] practices that Plaintiffs allege" (*Police & Fire Ret. Sys. v.*

---

[9] The Complaint alleges that the same SEC filing is also materially misleading because it incorporated by reference BComm's code of ethics and included a SOX certification signed by Mr. Yahalom. As demonstrated in the BComm Motion, claims based on the code of ethics fail because the code of ethics is aspirational and could not be relied upon by a reasonable investor and there are no concrete allegations that the SOX certification was inaccurate or misleading. BComm MOL at 19-25; BComm Reply MOL at 7-14; *see Mylan*, 2018 WL 1595985, at *10.

*SafeNet, Inc.*, 645 F. Supp. 2d 210, 231 (S.D.N.Y. 2009)), and "reveal some then-undisclosed

fact with regard to the specific misrepresentations alleged in the complaint." *Central States, Se.*

*& Sw. Areas Pension Fund v. Fed. Home Loan Mortg. Corp.*, 543 Fed. App'x 72, 75 (2d Cir.

2013) (quoting *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 511 (2d Cir. 2010)).  Here,

plaintiffs fail to adequately allege any corrective disclosure.

      The allegedly corrective disclosures merely describe developments in the Israel Securities

Authority investigation (Compl. ¶¶ 105-123) and do not bear on the accuracy of the BComm

Individual Defendants' prior statements.  Rather, they provide a tenuous link between Plaintiffs'

alleged loss and the purported fraud, leaving unclear what the market supposedly reacted to, if at

all.  *See id.*  Although the disclosure of an investigation may suffice when it specifically relates

to a defendant's fraudulent practices, where, as here, the disclosure is vague and presents no

clear nexus to the misrepresentations or omissions alleged in the complaint, loss causation is not

adequately pled.[10]  *See, e.g., SafeNet*, 645 F. Supp. at 231 ("reference to an SEC investigation

into 'certain accounting policies and practices' is too vague" because the "non-specific language

does not provide notice to an investor that [defendant] engaged in the type of specific fraudulent

[] practices that Plaintiffs allege"); *see also Janbay v. Canadian Solar, Inc.*, 2012 WL 1080306,

at *14–16 (S.D.N.Y. Mar. 30, 2012) ("A disclosure . . . must link the subpoena or investigation

to the actual fraudulent conduct alleged in the complaint.").  Because the allegedly corrective

disclosures do not suggest how BComm's prior statements were false, Plaintiffs fail to plead loss

causation by corrective disclosure.[11]

---

[10] Compounding this deficiency, the allegedly corrective disclosures largely concern Eurocom, Bezeq, and Yes, rather than BComm or the BComm Individual Defendants.

[11] Plaintiffs do not attempt to plead loss causation under the materialization of risk theory (which requires showing their loss was foreseeable and caused by the materialization of a risk concealed by the BComm Individual Defendants (*see Janbay*, 2012 WL 1080306, at *16)) because the Complaint does not identify a risk concealed by the BComm Individual Defendants, does not allege that Plaintiffs' loss was foreseeable, and provides countless non-fraudulent explanations for the alleged drop in stock price, including derivative claims filed against Bezeq (Compl. ¶

**C.      Count II Should be Dismissed Because the Complaint Fails to Allege Control Person Liability**

Count II asserts that all defendants other than BComm violated Section 20(a)-(b) of the Exchange Act.  Compl. ¶ 179.  "In order to plead a violation of Section 20(a), a plaintiff must allege adequate facts showing that (1) there was an underlying primary violation, (2) the defendant exercised control over the primary violator, and (3) the defendant culpably participated in the primary violation."  *Take-Two Interactive*, 551 F. Supp. 2d at 306; *Menaldi v. Och-Ziff Capital Mgmt. Grp. LLC*, 277 F. Supp. 3d at 520 (Oetken, J.) ("To state a § 20(a) claim, a Plaintiff must allege facts showing (1) an underlying primary violation of the securities laws by the controlled person; (2) control over the controlled person; and (3) that the controlling person was, in some meaningful sense, a culpable participant in the controlled person's primary violation.") (internal quotations omitted).  The Complaint fails to allege a primary violation or that the BComm Individual Defendants culpably participated in the primary violation.

"Any claim for 'control person' liability under § 20(a) of the Exchange Act must be predicated on a primary violation of securities law."  *Pacific Inv. Mgmt. Co. v. Mayer Brown LLP*, 603 F.3d 144, 160 (2d Cir. 2010).  Since, as set forth above and in the BComm Motion, the Complaint fails to state a primary violation by a controlled corporation, there can be no liability for the persons in control.  *Carpenters*, 750 F.3d at 236.

Count II also must be dismissed because the Complaint fails to allege an essential element of control person liability, namely, "that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud."  *Id.* (quoting *ATSI Communs.*, 493 F.3d at

---

110), negative journalistic reports interpreting publicly available information (*id.* ¶ 119), and the "unlikely chances of the Bezeq-Yes merger closing in 2017" (*id.* ¶ 121), and BComm's public filings also reflect revenue declines suffered by Bezeq and its competitors in Israel due to market conditions (*see, e.g.,* Boxer Decl. Ex. C (BComm, 2016 Annual Report (Form 20-F), at 77, 99 (April 26 , 2017)); Ex. D (BComm, 2017 Annual Report (Form 20-F), at 105 (May 15, 2018)).

8245363.13

108); *see In re Inv. Tech. Grp., Inc. Sec. Litig.*, 2018 WL 1449206, at *7-8 (S.D.N.Y. Mar. 23, 2018) (despite sustaining primary §10(b) claim, dismissing § 20(a) control person liability claim where there were no allegations that control persons were culpable participants).  As discussed above, there are no allegations that any of the BComm Individual Defendants participated in or knew of the alleged scheme.  Even if allegations of recklessness are sufficient to meet the culpable participant standard (*see, e.g.*, *Take-Two Interactive*, 551 F. Supp. 2d at 308 n.47; *In re CannaVest Corp. Sec. Litig.*, 2018 WL 1633847, at *22-23 (S.D.N.Y. Mar. 31, 2018)), the Complaint does not adequately allege that the BComm Individual Defendants acted recklessly.[12]  *See* Point II.B.1.iii., above.[13]

## POINT III
## THIS ACTION SHOULD BE STAYED PENDING THE OUTCOME OF THE ISRAELI CRIMINAL INVESTIGATION

The BComm Individual Defendants incorporate by reference and join in the BComm Motion seeking a stay of this action pending the outcome of the Israeli criminal investigation.  BComm MOL at 25-35; BComm Reply MOL at 14-15.  Although none of the BComm Individual Defendants are targets of the criminal investigation (*see* Compl. ¶ 128), this case significantly overlaps with the criminal investigations in Israel and the Israeli criminal authorities have supported stays of similar civil cases in Israel.  *See* BComm Reply MOL at 14.  The

---

[12] Defendant Yahalom was no longer a control person of BComm after he stepped down as CFO on May 3, 2015, just six weeks into the alleged class period. Accordingly, claims against him relating to control person liability for any filings on or after May 3, 2015 must be dismissed.

[13] To the extent that the Complaint alleges that the BComm Individual Defendants violated Section 20(b) of the Exchange Act, that provision apparently does not provide for any private right of action since, unlike Section 20(a), it contains no language concerning a defendant's liability. *See* 15 U.S.C. § 78t(b) ("It shall be unlawful for any person, directly or indirectly, to do any act or thing which it would be unlawful for such person to do under the provisions of this chapter or any rule or regulation thereunder through or by means of any other person."); *see generally SEC v. Stringer*, 2003 WL 23538011, at *6 (D. Or. Sep. 3, 2003) ("the only way to harmonize the provisions at issue here is to read § 20(a) as a private claim and § 20(b) as an enforcement claim."); *but see City of Pontiac Gen. Emps.' Ret. Sys. v. Lockheed Martin Corp.*, 875 F. Supp. 2d 359, 375 n. 4 (S.D.N.Y. 2012) (declining to resolve whether Section 20(b) provides a private right of action).  Even if there was a private right of action, a Section 20(b) claim fails where, as here, the Complaint fails to state a claim under Section 20(a). *See id.* at 375 (dismissing Sections 20(a) and 20(b) claims without distinguishing between them).

8245363.13

BComm Individual Defendants will be unduly prejudiced absent a stay because they will be unable to obtain material assistance or testimony from certain Individual Defendants who are barred by Israeli law from testifying or discussing this matter or who likely will assert privileges against self-incrimination.  BComm MOL at 29-31.

## CONCLUSION

For the foregoing reasons, the BComm Individual Defendants ask that the Court dismiss the claims against them or stay this action pending the outcome of the Israeli criminal proceedings and grant such other and further relief as is just and equitable.

Dated: New York, New York
      July 12, 2018

                Respectfully submitted by,
                CARTER LEDYARD & MILBURN LLP

                By: _____
                    Jeffrey S. Boxer
                    Jacob H. Nemon
                    Dylan L. Ruffi
                Two Wall Street
                New York, New York 10005
                Tel. (212) 732-3200
                Fax (212) 732-3232
                Email boxer@clm.com/ nemon@clm.com/ ruffi@clm.com
                *Attorneys for Defendants Itzik Tadmor,*
                *Doron Turgeman and Ehud Yahalom*

8245363.13