**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| REX AND ROBERTA LING LIVING TRUST U/A DECEMBER 6, 1990, as amended, JOHN TAYLOR JONES, and DAVID THOMAS JONES, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> - against - <br><br> B COMMUNICATIONS LTD., EUROCOM COMMUNICATIONS LT., D.B.S SATELLITE SERVICES (1998) LTD., SHAUL ELOVITCH, OR ELOVITCH, RON EILON, STELLA HANDLER, DAVID MIZRAHI, MICKY NEIMAN, ALLON RAVEH, ITZIK TADMOR, DORON TURGEMAN, EHUD YAHALOM, and LINOR YOCHELMAN, <br><br> Defendants. | NO. 1:17-cv-04937 (JPO) |

**DEFENDANTS STELLA HANDLER, DAVID MIZRAHI, ALLON RAVEH, AND LINOR YOCHELMAN'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

## <u>TABLE OF CONTENTS</u>

Page

PRELIMINARY STATEMENT ............................................................................................. 1

FACTUAL BACKGROUND ................................................................................................ 3

    A.    The Relevant Securities Filings. ................................................................. 3

    B.    Alleged Statements by the Bezeq Defendants. ........................................... 3

        1.    Bezeq's Consolidated Financial Statements. ................................. 3

        2.    Statements by Handler, Mizrahi, and Raveh About Disclosure
            Protocols and Internal Controls. .................................................... 4

        3.    Statements by Yochelman and Handler Regarding the Special
            Committee. ..................................................................................... 7

ARGUMENT ...................................................................................................................... 10

I.    THE BEZEQ DEFENDANTS SHOULD BE DISMISSED FROM THE
     CASE FOR LACK OF PERSONAL JURISDICTION. .............................................. 10

II.    PLAINTIFFS FAIL TO STATE A CLAIM AGAINST THE BEZEQ
     DEFENDANTS FOR SECURITIES FRAUD UNDER SECTION 10(B) OR
     RULE 10B-5. ................................................................................................................. 11

    A.    Plaintiffs Have Not Stated A Claim Against Raveh or Mizrahi. ......................... 13

        1.    Plaintiffs Fail to Plead A Material Misrepresentation or Omission
            by Raveh or Mizrahi. ...................................................................... 13

        2.    Plaintiffs Fail to Plead Facts Giving Rise to A Strong Inference of
            Scienter for Raveh or Mizrahi ...................................................... 16

    B.    Plaintiffs Have Not Stated A Claim Against Handler or Yochelman .................. 18

        1.    Plaintiffs Fail to Plead A Material Misrepresentation or Omission
            by Handler or Yochelman. .............................................................. 18

        2.    Plaintiffs Fail to Plead Facts Giving Rise to A Strong Inference of
            Scienter for Handler or Yochelman. ............................................... 20

III.    PLAINTIFFS FAIL TO STATE A CLAIM AGAINST THE BEZEQ
      DEFENDANTS FOR CONTROL PERSON LIABILITY UNDER
      SECTIONS 20(A) AND 20(B). ................................................................................. 22

IV.    IF THE BEZEQ DEFENDANTS' MOTION IS NOT GRANTED IN ITS
      ENTIRETY, THE COURT SHOULD STAY THIS ACTION. ................................. 24

**CONCLUSION** ...................................................................................................................... **24**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Battery Techs, Inc. v. Bagel, Josephs, Levine & Co., LLC*,
    781 F.3d 638 (2d Cir. 2015)................................................................15, 16

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
    568 U.S. 455 (2013)...........................................................................10

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...........................................................................10

*ATSI Commc'ns, Inc. v. Shaar Fund Ltd.*,
    493 F.3d 87 (2d Cir. 2007)..................................................................21

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)...........................................................................10

*C.D.T.S. No. 1 v. UBS AG*,
    No. 12 Civ. 4924(KBF), 2013 WL 6576031 (S.D.N.Y. Dec. 13, 2013), *aff'd sub nom.
    Westchester Teamsters Pension Fund v. UBS AG*, 604 F. App'x 5 (2d Cir. 2015)..........11, 21

*Calfo v. Messina*,
    No. 15 Civ. 4010(LGS), 2016 WL 3661548 (S.D.N.Y. July 5, 2016) ...................11

*Chill v. Gen. Elec. Co.*,
    101 F.3d 263 (2d Cir. 1996)..................................................................16

*City of Austin Police Ret. Sys. v. Kinross Gold Corp.*,
    957 F. Supp. 2d 277 (S.D.N.Y. 2013)......................................................10

*City of Monroe Emps. Ret. Sys. v. Hartford Fin. Servs. Grp. Inc.*,
    No. 10 Civ. 2835 (NRB), 2011 WL 4357368 (S.D.N.Y. Sept. 19, 2011) ...............13

*City of Rockton Ret. Sys. v. Avon Prods., Inc.*,
    No. 11 Civ. 4665 PGG, 2014 WL 4832321 (S.D.N.Y. Sept. 29, 2014).................20

*Cortina v. Anavex Life Scis. Corp.*,
    No. 15-CV-10162 (JMF), 2016 WL 7480415 (S.D.N.Y. Dec. 29, 2016) ..............11

*Decker v. Massey-Ferguson, Ltd.*,
    681 F.2d 111 (2d Cir. 1982)..................................................................16

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336 (2005)...........................................................................10

*ECA v. JP Morgan Chase Co.*,
   553 F.3d 187 (2d Cir. 2009)................................................................................11, 15

*Emps. Ret. Sys. of City. of Providence v. Embraer S.A.*,
   No. 16 Civ 6277 (RMB), 2018 WL 1725574 (S.D.N.Y. Mar. 30, 2018).........................12, 13

*Gamm v. Sanderson Farms, Inc.*,
   No. 16 Cv. 8420 (RMB), 2018 WL 1319157 (S.D.N.Y. Jan. 19, 2018) ...............................17

*In re Banco Bradesco S.A. Secs. Litig.*,
   277 F. Supp. 3d 600 (S.D.N.Y. 2017).................................................................2, 17

*In re Gentiva Secs. Litig.*,
   932 F. Supp. 2d 352 (E.D.N.Y. 2013) .............................................................13, 20

*In re Lululemon Secs. Litig.*,
   No. 13 Civ. 4596(KBF), 2014 WL 1569500 (S.D.N.Y. Apr. 18, 2014) ...............................10

*In re PetroChina Company Ltd. Securities Litigation.*,
   120 F. Supp. 3d 340 (S.D.N.Y. 2015)..................................................................12

*In re Tyson Foods, Inc. Secs. Litig.*,
   No. 5:16-cv-5340, 2018 WL 1598670 (W.D. Ark. Mar. 31, 2018)......................................18

*Janbay v. Canadian Solar, Inc.*,
   No. 10 Civ 4430, 2013 WL 1287326 (S.D.N.Y. Mar. 28, 2013) ........................................10

*Janbay v. Canadian Solar, Inc.*,
   No. 10 Civ. 4430 (RWS), 2012 WL 1080306 (S.D.N.Y. Mar. 30, 2012) .............................12

*Janus Capital Group, Inc. v. First Derivative Traders*,
   564 U.S. 135 (2011)........................................................................................14

*Kalnit v. Eichler*,
   264 F.3d 131 (2d Cir. 2001)................................................................................15

*La Pietra v. RREEF Am., L.L.C.*,
   738 F. Supp. 2d 432 (S.D.N.Y. 2010)....................................................................13

*Lipow v. Net1 UEPS Techs., Inc.*,
   131 F. Supp. 3d 144 (S.D.N.Y. 2015)....................................................................20

*Novak v. Kasaks*,
   216 F.3d 300 (2d Cir. 2000)..........................................................................16, 17

*Pub. Employees' Ret. Sys. of Miss. v. Merrill Lynch & Co. Inc.*,
   714 F. Supp. 2d 475 (S.D.N.Y. 2010)....................................................................22

*R.W. Grand Lodge of Free & Accepted Masons of Pa. v. Meridian Capital Partners, Inc.,*
    634 F. App'x 4 (2d Cir. 2015) ................................................................................16

*S. Cherry St., LLC v. Hennessee Grp. LLC,*
    573 F.3d 98 (2d Cir. 2009)......................................................................................10

*S.E.C. v. First Jersey Secs.,*
    101 F.3d 1450 (2d Cir. 1996)..................................................................................22

*San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos., Inc.,*
    75 F.3d 801 (2d Cir. 1996)................................................................................15, 19

*Sinay v. CNOOC Ltd.,*
    No. 12 Civ. 1513 (KBF), 2013 WL 1890291 (S.D.N.Y. May 6, 2013) .................16

*Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.,*
    33 F. Supp. 3d 401 (S.D.N.Y. 2014).......................................................................21

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
    551 U.S. 308 (2007).............................................................................................10, 11

*U.S. ex rel. Mooney v. Americare, Inc.,*
    No. 06-CV-1806 (FB)(VVP), 2013 WL 1346022 (E.D.N.Y. Apr. 3, 2013) ..........17

*Wexner v. First Manhattan Co.,*
    902 F.2d 169 (2d Cir. 1990)....................................................................................19

**Statutes**

15 U.S.C. § 78u-4(b)(1)(B)................................................................................................10

15 U.S.C. § 78u-4(b)(2)(A)................................................................................................11

**Rules**

Fed. R. Civ. P. 9(b) ......................................................................................................10, 17

# PRELIMINARY STATEMENT

The Amended Complaint should be dismissed as to Defendants Stella Handler ("Handler"), Linor Yochelman ("Yochelman"), David Mizrahi ("Mizrahi"), and Allon Raveh ("Raveh") (together, the "Bezeq Defendants"). As a threshold matter, Plaintiffs have failed to plead a basis for asserting personal jurisdiction over the Bezeq Defendants. Further, Plaintiffs have not pleaded a misrepresentation or omission by any Bezeq Defendant, nor do they plead that any of them acted with scienter.[1]

The Amended Complaint says almost nothing about defendants Raveh and Mizrahi, except that they each served as CFO of Bezeq—***not*** the issuer-defendant, B Communications Ltd. ("BComm")—for some portion of the class period and that they each signed statements certifying that Bezeq had adequate disclosure controls. The Amended Complaint does not plead that these certifications were false, as Plaintiffs fail to allege that any material weakness in Bezeq's controls existed during the class period. Further, Plaintiffs do not plead facts creating a strong inference of scienter for these defendants. They do not allege that Raveh or Mizrahi had motive or opportunity to defraud BComm's shareholders, nor do they plead facts showing that Raveh or Mizrahi knew of Yes's alleged inflation of free cash flows or that any members of the Special Committee, as defined below, had engaged in any misconduct. Under settled law, Plaintiffs' allegations therefore fail to state a claim against these two defendants.

The Amended Complaint says little more about Handler and Yochelman, who also held positions with Bezeq, not BComm. Plaintiffs point to certain statements made by these

---

[1] The Amended Complaint arises out of the acquisition of a controlling interest in D.B.S. Satellite Services (1998) Ltd. ("Yes") by Bezeq The Israeli Telecommunication Corp. Ltd. ("Bezeq"), which was consummated on June 24, 2015 (the "Bezeq-Yes Transaction") and approved by a sub-committee of BComm's board of directors (the "Special Committee").

defendants indicating that Bezeq's board had established a sub-committee (the "Special Committee") to evaluate its acquisition of Yes, and then assert in conclusory fashion that Yochelman and Handler "were actively and systematically siphoning confidential information" from the Special Committee to the Elovitch defendants and unspecified "others."  (Am. Compl. ¶ 42.)  These allegations fall far short of the high bar set by Rule 9(b) and the Private Securities Litigation Reform Act of 1998 ("PSLRA"), which requires Plaintiffs to plead with particularity: (1) facts showing the falsity of the alleged misrepresentations or omissions; and (2) facts that give rise to a strong inference of scienter.  *See In re Banco Bradesco S.A. Secs. Litig.*, 277 F. Supp. 3d 600, 629 (S.D.N.Y. 2017).  Here, Plaintiffs' threadbare allegation that Yochelman and Handler "siphoned" information—while providing ***no*** specifics regarding the information allegedly "siphoned," whether it was material, whether it was available from other sources, whether the defendants were authorized by the Special Committee to disclose it, and whether the information was even acted upon—does not come close to satisfying these stringent requirements.  Plaintiffs also plead that Yochelman and Handler, like Raveh and Mizrahi, signed certifications regarding Bezeq's internal controls.  But again, Plaintiffs do not plead that any material weakness in controls existed at Bezeq or that such a weakness was known to any defendant.

Finally, Plaintiffs assert claims for "control person" liability under Section 20 of the Exchange Act against each of the "Individual Defendants."  These allegations fail against Raveh, Mizrahi, Yochelman, and Handler, as Plaintiffs do not allege that any of the Bezeq Defendants held any position of authority over the issuer-defendant, BComm, which is the controlling shareholder of Bezeq.

For each of these reasons, the Amended Complaint should be dismissed in its entirety as against defendants Raveh, Mizrahi, Yochelman, and Handler.

## FACTUAL BACKGROUND

### A.    The Relevant Securities Filings.

The Bezeq Defendants were not employed by BComm, did not sign any of its securities filings, and are not alleged to have made any statements about BComm.[2]  Nor do Plaintiffs allege that any of the Bezeq Defendants signed or drafted any financial statements at Yes, the entity where cash flows were allegedly overstated.  Instead, Plaintiffs' claims against the Bezeq Defendants turn on translations of filings made in Hebrew with Israeli authorities that BComm later attached as exhibits to four Form 6-Ks filed with the SEC in connection with its NASDAQ-traded securities.  The relevant Form 6-Ks were filed with the SEC on March 18, 2015 (the "March 2015 Form 6-K"); April 24, 2015 (the "April 2015 Form 6-K"); April 5, 2016 (the "2016 Form 6-K"); and April 20, 2017 (the "2017 Form 6-K").  (Am. Compl. ¶¶ 72, 74, 82, 96.)  The statements included in those exhibits relate to two broad categories of information: (i)  descriptive statements about the Special Committee that approved the Bezeq-Yes Transaction; and (ii) statements about the adequacy of Bezeq's disclosure protocols and internal controls.  (*Id*. ¶¶ 72, 74, 82, 84, 96-97.) The exhibits are variously attributed to Handler, Yochelman, Mizrahi, and Raveh.  (*Id*.)  The statements at issue are summarized below.

### B.    Alleged Statements by the Bezeq Defendants.

#### 1.    *Bezeq's Consolidated Financial Statements.*

Plaintiffs allege that Bezeq's consolidated financial statements, which incorporated the financials of Yes, were materially false or misleading because Yes's free cash flows were

---

[2]    Bezeq, whose securities are not at issue in this case, did not file any related reports with the SEC.

"artificially and materially inflated." (Am. Compl. ¶¶ 56, 54(a).) But Plaintiffs do not identify any specific statement regarding cash flows in Bezeq's financials that they attribute to Handler, Yochelman, Mizrahi, or Raveh. Instead, Plaintiffs lump all of the Defendants together and assert without explanation that they "artificially and materially inflated Yes' Free Cash Flows." (Am. Compl. ¶¶ 4, 54.) Plaintiffs do not plead the amount by which they claim free cash flows were overstated. Nor do Plaintiffs plead facts showing that any of the Bezeq Defendants knew of any alleged overstatement of cash flows at Yes, instead asserting broadly that numerous defendants were responsible for "[m]onitoring" Yes's cash flows. (*Id.* ¶ 151.)

### 2. *Statements by Handler, Mizrahi, and Raveh About Disclosure Protocols and Internal Controls.*

For their claims against Handler, Mizrahi, and Raveh, Plaintiffs rely on statements included in exhibits attached by BComm to its 2016 Form 6-K or 2017 Form 6-K. (Am. Compl. ¶¶ 82, 84, 96-97.) These statements relate solely to the disclosure protocols and internal controls of Bezeq.

First, Plaintiffs highlight statements included in Exhibit 99.6 to BComm's 2016 Form 6-K. (*Id.* ¶ 84.) The attached exhibit is a Report Concerning Effectiveness of Internal Controls, which was signed by Handler and Mizrahi. (Declaration of Nathaniel J. Kritzer dated July 12, 2018 ("Kritzer Decl."), Ex. D, Exhibit 99.6 to BComm's 2016 Form 6-K.) The report was filed with Israeli authorities as part of Bezeq's Periodic Report for fiscal year 2015 as required by Israel's securities laws and regulations. (*Id.*) Plaintiffs quote the following statements contained in the English translation of that filing:

**Disclosure Controls and Procedures**

We maintain disclosure controls and procedures that are designed to ensure that information required to be disclosed in our periodic report (hereinafter – 'the Report') is documented, processed, summarized and reported within the time periods specified in the law, and that such information is summarized and

communicated to our chief executive officer and chief financial officer to allow timely decisions regarding required disclosure. The management, including the chief executive officer and chief financial officer, conducted an evaluation of our disclosure controls and procedures, as defined under United States Rule 13a-15(e) of the Exchange Act of 1934, as of December 31, 2015. Based upon that evaluation, the chief executive officer and chief financial officer have concluded that, as of such date, our disclosure controls and procedures are effective.

**Management's Annual Report on Internal Control Over Financial Reporting**

The management, including the chief executive officer and chief financial officer, is responsible for establishing and maintaining adequate internal control over financial reporting, as defined under United States Rules 13a-15(f) and 15d-15(f) of the Exchange Act of 1934. Internal control over financial reporting is a process designed to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with International Financial Reporting Standards (IFRS). Internal control over financial reporting includes those policies and procedures that: (i) pertain to the maintenance of records that, in reasonable detail, accurately and fairly reflect the transactions and dispositions of our assets; (ii) provide reasonable assurance that transactions are recorded as necessary to permit preparation of financial statements in accordance with generally accepted accounting principles, and that the company's receipts and expenditures are being made only in accordance with appropriate authorization; and (iii) provide reasonable assurance regarding prevention or timely detection of unauthorized acquisition, use, or disposition of our assets that could have a material effect on the financial statements.

*** 

[Bezeq's] management assessed the effectiveness of the internal control over financial reporting as of December 31, 2015. In conducting its assessment of internal control over financial reporting, the management based its evaluation on the framework in 'Internal Control – Integrated Framework (2013)' issued by the Committee of Sponsoring Organizations, or the COSO, of the Treadway Commission. Based on this assessment, [Bezeq's] management has concluded that [Bezeq's] internal control over financial reporting is effective as of December 31, 2015.

*** 

Changes in Internal Control over Financial Reporting

[T]here were no changes in our internal control over financial reporting during the period covered by the Report that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

5

(Am. Compl. ¶ 84; "Kritzer Decl.", Ex. D, Exhibit 99.6 to BComm's 2016 Form 6-K, at 2-3.)

Also, Plaintiffs cite to the following additional statement contained in the same document:

> Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;
>
> \*\*\*
>
> Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the company as of, and for, the periods presented in this report;
>
> \*\*\*
>
> The company's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the company's auditors and the audit committee of the company's board of directors (or persons performing the equivalent function[]):
>
> \*\*\*
>
> Any fraud, whether or not material, that involves management or other employees who have a significant role in the company's internal control over financial reporting.

(Am. Compl. ¶ 86; Kritzer Decl., Ex. D, Exhibit 99.6 to BComm's 2016 Form 6-K, at 4-5.)

Plaintiffs contend that these statements were materially false or misleading for the reasons set forth in paragraph 54 of the Amended Complaint. (Am. Compl. ¶¶ 85, 87.) In turn, the only relevant section of paragraph 54 is a conclusory allegation that "Defendants issued statements that were materially false and misleading because they misrepresented and/or failed to disclose adverse facts pertaining to [BComm's] business, operational, and financial results, which were known to the Defendants or recklessly disregarded by them."[3] (Am. Compl. ¶ 54.)

---

[3]   It should be noted that subsection (d) of paragraph 54 in the Amended Complaint is inapplicable to the Bezeq Defendants. The quoted statements do not relate to BComm's internal controls and make no reference to compliance with Israeli securities laws and penal laws. Moreover, the Bezeq Defendants were not subject to

Second, Plaintiffs point to identical language contained in Exhibit 99.6 to BComm's 2017 Form 6-K.  (Am. Compl. ¶¶ 96, 97.)  The attached exhibit is a Report Concerning Effectiveness of Internal Controls, which was signed by Handler and Raveh.  (Kritzer Decl., Ex. E, Exhibit 99.6 to BComm's 2017 Form 6-K.)  Again, this report was filed with Israeli authorities as part of Bezeq's Periodic Report for fiscal year 2016 as required by Israeli securities laws and regulations.  (*Id.*)  And again, Plaintiffs argue these statements were materially false or misleading based on the conclusory allegations in paragraph 54 of the Amended Complaint. (Am. Compl. ¶ 98.)

### 3. *Statements by Yochelman and Handler Regarding the Special Committee.*

Plaintiffs highlight statements regarding the Special Committee in two reports that BComm attached to the March 2015 Form 6-K, April 2015 Form 6-K, or 2016 Form 6-K that it filed with the SEC.

First, Plaintiffs point to Exhibit 99.1 to the March 2015 Form 6-K.  (Am. Compl. ¶ 72.) The attached exhibit is an English translation of an Immediate Report for Bezeq that was filed with Israeli authorities as required by applicable Israeli laws and regulations.  (Kritzer Decl., Ex. A, Exhibit 99.1 to BComm's March 2015 Form 6-K.)  There is no indication that the report was prepared for purposes of any SEC filing.  It states that the representative for purposes of the report was Yochelman.  (*Id.* at 31.)  Plaintiffs quote the following language from the report:

> [T]he board of directors formed a subcommittee composed of members who are all outside or independent directors, to address the matter ('the Ad Hoc Committee' or 'the Committee'), since the possibility that the [Bezeq-Yes Transaction] would involve a transaction with [Bezeq's] controlling shareholder was taken into account.

---

BComm's Code of Ethics.  Therefore, there is no basis for connecting the allegations of paragraph 54(d) to the Bezeq Defendants.

*** 

After the committee reviewed the Valuation, Fairness Opinions, and summary documents submitted by the other advisors, on February 10, 2015, the committee resolved to recommend the approval of the [Bezeq-Yes Transaction], under the main terms in this report, and submitted its recommendations to the audit committee and board of directors.

*** 

After reviewing the above alternatives, the committee concluded that for the benefit of [Bezeq] and all its shareholders, the [Bezeq-Yes Transaction], meaning, acceptance of the Merger Terms, exercise of the options, acquisition of the Sale Shares and the Acquired Shareholder Loans, are in the best interest of [Bezeq] at this time, since this will allow [Bezeq] to fully merge with Yes in the future, thereby taking full advantage of the synergies (particularly the expense synergies), and since at this time, in view of the [Israel Antitrust Authority] Commissioner's decision regarding the Merger Terms, there is a window of opportunity for [Bezeq] to realize this course of action.

*** 

The consideration to be paid by [Bezeq] for the Sale Shares and the Acquired Shareholder Loans was established in negotiations between the committee members and Eurocom DBS, taking into account the opinion of its advisors. Prior to the start of the negotiations, the committee received the essential information regarding the value components of the other matters discussed in the valuation.

(Am. Compl. ¶ 72; Kritzer Decl., Ex. A, Exhibit 99.1 to BComm's March 2015 Form 6-K, at 9-10, 14, 25.)

Plaintiffs plead in conclusory fashion that the Special Committee was "anything but independent," due to "systematic leaks" of unidentified "confidential information" and because unidentified "Individual Defendants instructed those carrying out the leaks to unlawfully taint [the committee's] deliberations" by unspecified means.  (Am. Compl. ¶ 54(b).)  Based on these assertions, Plaintiffs allege that Yochelman made materially false or misleading statements.  (*Id.* ¶ 73.)

Second, Plaintiffs identify substantially similar language included in Exhibit 99.1 to BComm's April 2015 Form 6-K.  (Am. Compl. ¶ 74.)  The attached exhibit is an English version

of Bezeq's Periodic Report for fiscal year 2014, which was signed by Handler and filed by

Bezeq with Israeli authorities as required by Israel's securities laws and regulations.  (Kritzer

Decl., Ex. B, Exhibit 99.1 to BComm's April 2015 Form 6-K.)  There is no indication the report

was prepared for purposes of BComm's SEC filing, and it makes no reference to U.S. securities

laws or regulations.  Therein, Plaintiffs quote the following language:

> Through the Board of Directors sub-committee which was set up to handle the
> [Bezeq-Yes Transaction] in October 2013 (in this section - 'the Sub Committee'),
> and with the help of external consultants selected by the committee, [Bezeq]
> worked to review the feasibility of the merger and the options open to it in light of
> the [Israel Antitrust Authority] Commissioner's aforementioned decision and its
> conditions, including the purchase of [Yes's] shares that are held by Eurocom
> [DBS], as well as other options.  As part of this review, [Bezeq] conducted a due
> diligence of [Yes] with the help of external consultants.
>
> ***
>
> Subsequently, on February 10, 2015, the Sub-Committee, Audit Committee and
> Board of Directors approved the transaction between [Bezeq] and Eurocom DBS
> in which [Bezeq] will acquire all the holdings of Eurocom DBS in [Yes][.]

(Am. Compl. ¶ 74; Kritzer Decl., Ex. B, Exhibit 99.1 to BComm's April 2015 Form 6-K, at A-

9.)  Once again, Plaintiffs argue the statements were materially false or misleading because the

Special Committee was not independent due to unidentified persons allegedly leaking

confidential information and tainting the committee's deliberations.  (Am. Compl. ¶¶ 75, 54(b).)

Finally, Plaintiffs cite to a nearly identical statement included Exhibit 99.1 to BComm's

2016 Form 6-K.  (*Id*. ¶ 82.)  The attached exhibit is an English version of Bezeq's Periodic

Report for fiscal year 2015.  (Kritzer Decl., Ex. C, Exhibit 99.1 to BComm's 2016 Form 6-K.)

The report was signed by Handler and filed with Israeli authorities as required by Israel's

securities laws and regulations.  (*Id*.)  The report was not prepared for purposes of BComm's

SEC filing, and it includes no reference to U.S. securities laws or regulations.  Plaintiffs quote

the following passage:

A sub-committee of the Board of Directors that was set up to deal with the [Bezeq-Yes Transaction], and the Audit Committee and Board of Directors as well as General Meeting of the shareholders (on February 10, 2015 and March 23, 2015, respectively), approved the transaction between [Bezeq] and Eurocom DBS to acquire all the holdings of Eurocom DBS in [Yes][.]

(Am. Compl. ¶ 82; Kritzer Decl., Ex. C, Exhibit 99.1 to BComm's 2016 Form 6-K, at A-9.)

Plaintiffs contend this statement was materially false or misleading for the same reasons explained above.  (Am. Compl. ¶¶ 83, 54(b).)

## ARGUMENT

## I.   THE BEZEQ DEFENDANTS SHOULD BE DISMISSED FROM THE CASE FOR LACK OF PERSONAL JURISDICTION.

As a threshold matter, Plaintiffs have failed to plead jurisdiction over the Bezeq Defendants.  For brevity, the Bezeq Defendants incorporate by reference (and do not repeat here) the case law and arguments in the briefs filed by defendants Tadmor, Turgeman, and Yahalom, and separately by defendants D.B.S. Satellite Services (1998) Ltd., Ron Eilon and Michael Neumann.  In sum, for the same reasons that exercising jurisdiction over those defendants would violate due process, the Court lacks jurisdiction over the Bezeq Defendants as well.  Each of the Bezeq Defendants is an Israeli citizen employed by an Israeli company.  (Am. Compl. ¶¶ 6, 16, 22-23, 25, 29; ECF Nos. 44, 47-49.)  The exhibits attributed to the Bezeq Defendants were written in Hebrew and originally filed with the relevant Israeli authorities, and were only later filed by BComm with the SEC.  *See* Kritzer Decl. Ex. A at 43, Ex. C at 1, Ex. F at 1.  Exercising jurisdiction over the Bezeq Defendants would be inconsistent with the Due Process clause of the Fifth Amendment and they should be dismissed from this case on this threshold ground.

## II.   PLAINTIFFS FAIL TO STATE A CLAIM AGAINST THE BEZEQ DEFENDANTS FOR SECURITIES FRAUD UNDER SECTION 10(B) OR RULE 10B-5.

To state a claim under Section 10(b) or Rule 10b-5, Plaintiffs must allege that each of the Bezeq Defendants: (1) made a material misrepresentation or omission; (2) with scienter; (3) in connection with the purchase or sale of a security; (4) upon which Plaintiff relied; (5) that caused Plaintiffs' economic loss; and (6) is causally connected to the material misrepresentation.  *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005); *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 460-61 (2013).   "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The PSLRA imposes heightened pleading requirements on securities fraud actions.  *S. Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98, 110 (2d Cir. 2009).  To plead a material misrepresentation, the PSLRA and Fed. R. Civ. P. 9(b) require a plaintiff to "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1)(B).  This is a demanding standard.  First, the statement must have been false when made.  *See In re Lululemon Secs. Litig.*, No. 13 Civ. 4596(KBF), 2014 WL 1569500, at *10 (S.D.N.Y. Apr. 18, 2014); *see also Janbay v. Canadian Solar, Inc.*, No. 10 Civ. 4430, 2013 WL 1287326, at *9 (S.D.N.Y. Mar. 28, 2013) (plaintiff must allege that "adverse circumstances existed and were known to the [Defendants] at the time the statements were made").  Second, Plaintiffs may not state mere conclusions and "must demonstrate with

specificity why and how" the statement was false or misleading. *City of Austin Police Ret. Sys. v. Kinross Gold Corp.*, 957 F. Supp. 2d 277, 291 (S.D.N.Y. 2013).

Scienter is "a mental state embracing intent to deceive, manipulate, or defraud." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007). To plead scienter, the PSLRA requires that the complaint "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A). "To qualify as 'strong' within the intendment of [the PSLRA] . . . an inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc.*, 551 U.S. at 314. Thus, when weighing the adequacy of Plaintiffs' allegations, this Court should consider both "the inferences urged by the plaintiff" and "any competing inferences rationally drawn from all the facts alleged." *ECA v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009).

Critically, "[s]cienter must be separately pled and individually supportable as to each defendant; scienter is not amenable to group pleading." *C.D.T.S. No. 1 v. UBS AG*, No. 12 Civ. 4924(KBF), 2013 WL 6576031, at *6 (S.D.N.Y. Dec. 13, 2013), *aff'd sub nom. Westchester Teamsters Pension Fund v. UBS AG*, 604 F. App'x 5 (2d Cir. 2015); *accord Cortina v. Anavex Life Scis. Corp.*, No. 15-CV-10162 (JMF), 2016 WL 7480415, at *8-9 (S.D.N.Y. Dec. 29, 2016). Thus, allegations of Elovitch's motive cannot be imputed to the Bezeq Defendants: each defendant requires his or her own scienter allegations. *See Calfo v. Messina*, No. 15 Civ. 4010(LGS), 2016 WL 3661548, at *10 (S.D.N.Y. July 5, 2016) ("Plaintiffs' argument that R. Cassera's motive be imputed to the other Defendants because they were 'beholden to R. Cassera' is misplaced. Scienter must be pleaded for each defendant individually.").

Under these controlling standards, Plaintiffs have failed to state a claim against any of the Bezeq Defendants.

### A.   Plaintiffs Have Not Stated A Claim Against Raveh or Mizrahi.

#### 1.   Plaintiffs Fail to Plead A Material Misrepresentation or Omission by Raveh or Mizrahi.

Based on certifications that were attached as exhibits to BComm's SEC filings, Plaintiffs claim that Raveh and Mizrahi issued false or misleading statements regarding the adequacy of Bezeq's disclosure protocols and internal controls over financial reporting.  (Am. Compl. ¶¶ 84, 86, 96-97, 151.)  But Plaintiffs fail to plead any flaw in either.  Rather, Plaintiffs' theory apparently rests on hindsight analysis:  if the disclosure protocols and internal controls were effective, then Bezeq should have discovered Yes's allegedly overstated cash flows.

Courts have consistently rejected that argument.  In one illustrative case, *In re PetroChina Company Ltd. Securities Litigation.*, 120 F. Supp. 3d 340 (S.D.N.Y. 2015), this Court addressed similar allegations.  There, the plaintiffs alleged that the defendants' certifications in compliance with Sarbanes-Oxley Act ("SOX certifications") were false or misleading because the company's "disclosure controls and procedures and internal controls over financial reporting were not 'effective.'"  *Id*. at 358.  The Court dismissed these allegations, reasoning:

> The [complaint] does not claim that [the company] failed to evaluate its internal controls or disclose any weaknesses to its auditors.  It does not assert that the certifying officers neglected to inform [the company's] auditor of any relevant fraud.  And it does not establish that [the company's] internal controls in relation to *financial reporting* were insufficient; much less does the [complaint] make any allegation as to how or why [the company's] internal controls were inadequate.

*Id*. at 359.  Other decisions are in accord.  *See, e.g.*, *Emps. Ret. Sys. of City. of Providence v. Embraer S.A.*, No. 16 Civ 6277 (RMB), 2018 WL 1725574, at *9 (S.D.N.Y. Mar. 30, 2018) ("Where plaintiffs allege that internal controls are deficient, courts have consistently required

plaintiffs to allege specific facts concerning the purported deficient internal controls, including how they were deficient, when and why.") (internal quotations omitted); *Janbay v. Canadian Solar, Inc.*, No. 10 Civ. 4430 (RWS), 2012 WL 1080306, at *9 (S.D.N.Y. Mar. 30, 2012) (dismissing claim where plaintiffs "failed to allege specific facts concerning the purportedly deficient internal controls, including how they were deficient, when and why."); *accord City of Monroe Emps. Ret. Sys. v. Hartford Fin. Servs. Grp. Inc.*, No. 10 Civ. 2835 (NRB), 2011 WL 4357368, at *22 (S.D.N.Y. Sept. 19, 2011); *La Pietra v. RREEF Am., L.L.C.*, 738 F. Supp. 2d 432, 443 (S.D.N.Y. 2010); *In re Gentiva Secs. Litig.*, 932 F. Supp. 2d 352, 370-371 (E.D.N.Y. 2013) (holding defendants' SOX certifications "cannot constitute a misstatement or omission[] for purposes of 10b-5 liability" where the complaint did not discuss the relevant internal controls or plead particularized facts suggesting that defendants did not take the steps described in the certifications).  Simply put, to allege that statements contained in SOX certifications are false or misleading, Plaintiffs are required to plead particularized facts establishing how the internal controls failed, when they failed, and why they were inadequate.  *See Embraer*, 2018 WL 1725574, at *10.  The Amended Complaint does not do this.

Plaintiffs' reliance on statements included in the exhibit attached by BComm to its 2016 Form 6-K is particularly misplaced.  The attached exhibit does not speak to internal controls related to Yes's financial statements.  To the contrary, the attached exhibit specifically warns that Bezeq's "management ***excluded the assessment of internal controls over the financial reporting of [Yes] in this report***."  (Kritzer Decl., Ex. D, Exhibit 99.6 to BComm's 2016 Form 6-K, at 3 (emphasis added).)  Accordingly, the certifications relate solely to Bezeq's own internal controls, not those of Yes, the entity where cash flows were allegedly overstated.

14

Plaintiffs similarly fail to show that the statements included in the exhibit attached by BComm to its 2017 Form 6-K were false or misleading.  The attached exhibit discusses the adequacy of Bezeq's disclosure protocols and internal controls.  (Kritzer Decl., Ex. E, Exhibit 99.6 to BComm's 2017 Form 6-K.)  Both Handler and Raveh certified they were adequate and effective—a conclusion that was supported by independent auditors from KPMG International.  (*Id*. at 4-5.)  Indeed, the independent auditor attested to the fact that KPMG International:

> audited, in accordance with generally accepted auditing principles in Israel, the consolidated balance sheets of [Bezeq] ***and its subsidiaries*** as of December 31, 2016, and 2015, and the related consolidated statements of operations, comprehensive income, changes in stockholders' equity ***and cash flows*** for each of the three years in the period ended December 31, 2016, and our report dated March 29, 2017 expressed ***an unqualified opinion*** on those consolidated financial statements[.]

(Kritzer Decl., Ex. E, Exhibit 99.6 to BComm's 2017 Form 6-K, at 3 (emphasis added).)  Despite this, Plaintiffs allege the internal controls were deficient because Yes's alleged fraud went undiscovered by the Bezeq Defendants.  (Am. Compl. ¶ 54.)  Again, Plaintiffs do not identify *any* actual flaw in Bezeq's internal controls, nor do Plaintiffs explain when or why Bezeq's internal controls were deficient.

Plaintiffs allege that Yes misrepresented its free cash flow and that these misrepresentations were consolidated into Bezeq's financial statements.  (Am. Compl. ¶ 43-45.)  But Plaintiffs do not allege that Mizrahi, Raveh, or any of the Bezeq Defendants made any statement regarding that subsidiary's cash flows.  As the U.S. Supreme Court made clear in *Janus Capital Group, Inc. v. First Derivative Traders*, 564 U.S. 135 (2011), "[f]or purposes of Rule 10b-5, the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it."  *Id*. at 142.  That is simply not true of any of the Bezeq Defendants regarding Yes's free cash flow, as Plaintiffs do not allege that any of them held any position at Yes or were in any way involved in preparing its

15

financial statements.  Thus, unsurprisingly, Plaintiffs fail to identify *any* statement made by the Bezeq Defendants regarding Yes's cash flows.  Plaintiffs instead cobble together a chart of Yes, Bezeq, and BComm cash flows, then assert that the chart of their own making is false or misleading.  (Am. Compl. ¶¶ 56-57.)  Thus, in contravention of the PSLRA and *Janus*, Plaintiffs have failed to identify specific statements regarding Yes's cash flows that are attributable to any Bezeq defendant.  That is insufficient to plead a claim.

### 2. *Plaintiffs Fail to Plead Facts Giving Rise to A Strong Inference of Scienter for Raveh or Mizrahi.*

Plaintiffs have also failed to plead scienter on the part of Mizrahi or Raveh.  Scienter may be established by alleging "either (1) that defendants had the motive and opportunity to commit fraud, or (2) strong circumstantial evidence of conscious misbehavior or recklessness."  *ECA*, 553 F.3d at 198; *San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos., Inc.*, 75 F.3d 801, 813 (2d Cir. 1996).  Plaintiffs do neither.  The Second Circuit has explained that "to raise a strong inference of scienter through motive and opportunity to defraud, Plaintiffs must allege that [defendants] benefitted in some concrete and personal way from the purported fraud" and that "[m]otives that are common to most corporate officers, such as the desire for the corporation to appear profitable and the desire to keep stock prices high to increase officer compensation, do not constitute 'motive' for purposes of this inquiry."  *ECA*, 553 F.3d at 198 (internal citations omitted).  Here, Plaintiffs' only allegation of motive for the Bezeq Defendants is the conclusory statement that all "10(b) Defendants were motivated to make false statements." (Am. Compl. ¶ 172.)  This bare, conclusory allegation is insufficient to plead scienter under the PSLRA and *Tellabs*.

Where, as here, Plaintiffs fail to plead motive and opportunity, their allegations regarding conscious misbehavior or recklessness "must be correspondingly greater" to adequately allege

scienter. *Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001). "In the securities fraud context, recklessness must be conduct that is highly unreasonable, representing an extreme departure from the standards of ordinary care, not merely a heightened form of negligence." *Advanced Battery Techs, Inc. v. Bagel, Josephs, Levine & Co., LLC*, 781 F.3d 638, 644 (2d Cir. 2015) (internal citations and quotation marks omitted); *Sinay v. CNOOC Ltd.*, No. 12 Civ. 1513 (KBF), 2013 WL 1890291, at *7 (S.D.N.Y. May 6, 2013). To plead conscious misbehavior, Plaintiffs must allege with particularity that the Bezeq Defendants engaged in "deliberate illegal behavior." *Novak v. Kasaks*, 216 F.3d 300, 308 (2d Cir. 2000).

Plaintiffs allege that Mizrahi and Raveh "knew about or recklessly disregarded the scheme" because "[m]onitoring of Yes' Free Cash Flow . . . fell squarely within the responsibility of Defendants Mizrahi, Neiman, Raveh, Tadmor, and Yahalom." (Am. Compl. ¶ 151.) Not only does the Complaint fail to establish knowledge of the underling scheme, but the alleged conduct is nowhere close to being "highly unreasonable" or "representing an extreme departure from the standards of ordinary care" required for scienter through recklessness. *See Advanced Battery*, 781 F.3d at 644. "[T]here are limits to the scope of liability for failure adequately to monitor the allegedly fraudulent behavior of others." *Novak*, 216 F.3d at 309; *see also Chill v. Gen. Elec. Co.*, 101 F.3d 263, 270 (2d Cir. 1996) (finding that parent company was not reckless under securities laws for failing to investigate subsidiary's extraordinary performance); *Decker v. Massey-Ferguson, Ltd.*, 681 F.2d 111, 120 (2d Cir. 1982) (finding that accounting firm's failure to identify problem with company's internal controls and accounting practices was insufficient for Section 10(b) liability). Courts do not find recklessness for purposes of showing scienter "based upon a failure of due diligence" to uncover red flags or

fraud by "hindsight." *R.W. Grand Lodge of Free & Accepted Masons of Pa. v. Meridian Capital Partners, Inc.*, 634 F. App'x 4, 8 (2d Cir. 2015); *Novak*, 216 F.3d at 309.

Furthermore, Plaintiffs' allegations regarding Mizrahi's and Raveh's knowledge or recklessness are wholly conclusory.  The Amended Complaint contains no specific allegations that any evidence of any scheme was available to or disregarded by Mizrahi and Raveh.  *See Novak*, 216 F.3d at 309 ("Corporate officials need not be clairvoyant; they are only responsible for revealing those material facts reasonably available to them.").  Thin and conclusory allegations, such as those pled by the Amended Complaint, do not provide a sufficient basis for imposing securities fraud liability based on recklessness.

**B.     Plaintiffs Have Not Stated A Claim Against Handler or Yochelman.**

   ***1.     Plaintiffs Fail to Plead A Material Misrepresentation or Omission by Handler or Yochelman.***

Plaintiffs fail to plead that Yochelman or Handler made any material misrepresentation or omission.  The Amended Complaint points to statements that Bezeq established the Special Committee for the Yes transaction and then alleges in conclusory fashion that Yochelman and Handler "subverted the purportedly Independent Committees by acting as undisclosed moles" by "actively and systematically siphoning confidential information" to Eurocom executives.  (Am. Compl. ¶ 150.)  Plaintiffs further allege that Yochelman and Handler carried out orders from Eurocom executives to initiate unspecified "moves" and purportedly "thwart" unnamed "others," all to "unlawfully promote Eurocom's interests" in the Bezeq-Yes Transaction.  (*Id.*)

These allegations fail to plead the basic elements required by Rule 9(b); *i.e.*, the "who, what, when, where and how" of the purported fraud.  *U.S. ex rel. Mooney v. Americare, Inc.*, No. 06-CV-1806 (FB)(VVP), 2013 WL 1346022, at *2 (E.D.N.Y. Apr. 3, 2013); *see also Gamm v. Sanderson Farms, Inc.*, No. 16 Cv. 8420 (RMB), 2018 WL 1319157, at *3 (S.D.N.Y.

Jan. 19, 2018) (finding that plaintiffs failed to support their conspiracy allegations because they failed to allege particularized facts about dates, amounts, reasons, and methods); *In re Banco Bradesco S.A. Sec. Litig.*, 277 F. Supp. 3d 600, 632 (S.D.N.Y. 2017) (finding that "[b]lanket allegations that payments were made 'to Leite and Pagnozzi,' standing alone, do not satisfy Rule 9(b)'s requirement to plead the 'who, what, when, where, and how' of the alleged transactions"); *In re Tyson Foods, Inc. Secs. Litig.*, No. 5:16-cv-5340, 2018 WL 1598670, at *9 (W.D. Ark. Mar. 31, 2018) (finding that "Plaintiffs have not adequately pleaded the 'how' of the underlying antitrust conspiracy because they fail to support their allegations with particularized facts"). Specifically, Plaintiffs do not attempt to explain *what* actions Yochelman or Handler took with any particularity, *how* these actions were carried out, or *why* Yochelman or Handler would take such unspecified steps.  Nor does Plaintiff explain *how* the decisions of the Special Committee were influenced, *what* decisions were influenced, or *why* independent and external directors were susceptible to the influence of Yochelman and/or Handler.  Indeed, beyond conclusory allegations, Plaintiffs' rationale for Yochelman's or Handler's involvement in this case is left to the parties' collective imaginations.  That is insufficient to plead a misrepresentation, omission, or scienter.

Plaintiffs' allegations regarding similar statements attributed to Handler are equally problematic.  Notably, the exhibit attached to BComm's April 2015 Form 6-K simply states that a sub-committee "was set up to handle" the Bezeq-Yes Transaction, that it and Bezeq's audit committee reviewed the proposed transaction and performed due diligence, and the transaction was approved.  (Am. Compl. ¶ 74; Kritzer Decl., Ex. B, Exhibit 99.1 to BComm's April 2015 Form 6-K, at A-9.)  Even taking Plaintiffs' allegations as true, those statements are all factually correct, and there is no statement describing the committee as "independent" anywhere in the

attached exhibit.  Plaintiffs' conclusory allegations do not (and cannot) show that these statements were false or misleading.

The same is true of the statement included in the exhibit attached to BComm's 2016 Form 6-K.  (Am. Compl. ¶ 82; Kritzer Decl., Ex. C, Exhibit 99.1 to BComm's 2016 Form 6-K, at A-9.)  That statement, also attributed to Handler, merely provides that the Special Committee and Bezeq's audit committee authorized the Bezeq-Yes Transaction.  (Kritzer Decl., Ex. C, Exhibit 99.1 to BComm's 2016 Form 6-K, at A-9.)  Again, this statement is indisputably true. No one contests that the Special Committee approved the transaction, and Plaintiffs' conclusory allegations fail to show that any further disclosures were required.  Thus, there is no basis for finding this statement to be false or misleading.

Finally, for the same reasons stated in Part II.A above, Plaintiffs have failed to state any claim against Yochelman or Handler based on Yes's free cash flows or Handler's 2016 or 2017 certification regarding Bezeq's disclosure controls.

## 2.   *Plaintiffs Fail to Plead Facts Giving Rise to A Strong Inference of Scienter for Handler or Yochelman.*

Plaintiffs' claims against Handler and Yochelman should also be dismissed for failure to plead scienter.  As an initial matter, Plaintiffs' allegation that "Handler and Yochelman subverted the purportedly Independent Committees by acting as undisclosed moles" and "leak[ing]" confidential information are insufficient to support scienter because they are wholly conclusory and do not include any factual basis.  Am. Compl. ¶¶ 150, 152; *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir. 1990) (rejecting scienter claims based on unsupported claim of "leaked" confidential information where "[c]onspicuously absent . . . are any allegations as to who leaked Wexner's plans, or when and to whom the information was leaked").  For example, the Amended Complaint does not explain why Plaintiffs allege any

details about the "leaks," such as when, where, how, or what specifically was "leaked." (*See* Am. Compl. ¶¶ 42, 150, 152.)  Scienter cannot be based on such conclusory and unfounded claims.  *See San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Companies, Inc.*, 75 F.3d 801, 813 (2d Cir. 1996) (quoting *Wexner*, 902 F.2d at 172) ("Plaintiffs do not . . . enjoy a 'license to base claims of fraud on speculation and conclusory allegations.'").

Plaintiffs next attempt to plead scienter for Handler and Yochelman through the ISA's ongoing investigation.  (Am. Compl. ¶ 124, 140-145.)  But "the existence of an investigation alone is not sufficient to give rise to a requisite cogent and compelling inference of scienter . . . ." *City of Rockton Ret. Sys. v. Avon Prods., Inc.*, No. 11 Civ. 4665 PGG, 2014 WL 4832321, at *23 (S.D.N.Y. Sept. 29, 2014) (quoting *In re Gentiva Sec. Litig.*, 932 F. Supp. 2d 352, 380 (E.D.N.Y. 2013) (ellipses in original).  Plaintiffs cannot lean on the ISA investigation to make up for shortcomings in their own allegations of scienter.  *See Lipow v. Net1 UEPS Techs., Inc.*, 131 F. Supp. 3d 144, 167 (S.D.N.Y. 2015) ("[G]overnment investigations cannot bolster allegations of scienter that do not exist, and, as currently plead, the government investigations are just that, investigations.").

Plaintiffs allege that the ISA has recommended criminal indictments against Handler, among others, but note that "[o]n the basis of the ISA's investigation, the Tel Aviv District Attorney's Office must decide whether to indict the individuals."  (Am. Compl. ¶ 140 & n.7.)  Plaintiffs do not allege that any such indictments have actually issued, or that the ISA recommended a criminal indictment against the other Bezeq Defendants.  Plaintiffs also allege that Handler and Yochelman, among others, have ***consented*** to be placed under house arrest, but that is a far cry from an actual criminal indictment or conviction.  (Am. Compl. ¶ 141.)  It would

21

be improper and against public policy to hold that the Bezeq Defendants' cooperation with Israeli law enforcement gives rise to a strong inference of scienter.

There are scant details on the ISA's investigation because, as Plaintiffs admit, "[a] substantial majority of the ISA's findings and evidence are confidential and under seal."  (Am. Compl. ¶ 140.)  The information from the ISA's investigation that Plaintiffs do provide is either not specific to the Bezeq Defendants or relates to allegations of obstructing the investigation, not scienter.  The ISA's disclosure of an evidentiary basis for criminal activity involving fraud is a general statement that is not directed to any individuals, let alone the Bezeq Defendants.  Vague group pleading such as this is insufficient to establish individual scienter.  *See C.D.T.S. No. 1 v. UBS AG*, No. 12 Civ. 4924 (KBF), 2013 WL 6576031 at *6 (S.D.N.Y Dec. 13, 2013).  The statements from the ISA and Israeli Magistrate Court that Plaintiffs quote regarding Handler and Yochelman individually concern allegations of obstruction, not their scienter relating to the alleged material misstatements.  (Am. Compl. ¶¶ 143, 145-146.)

## III. PLAINTIFFS FAIL TO STATE A CLAIM AGAINST THE BEZEQ DEFENDANTS FOR CONTROL PERSON LIABILITY UNDER SECTIONS 20(A) AND 20(B).

Count II of the Amended Complaint asserts a claim against all of the Individual Defendants, including the Bezeq Defendants, for control person liability under Section 20(a) and 20(b) of the Exchange Act.  To state a claim of control person liability under Section 20(a), "a plaintiff must show (1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud."  *ATSI Commc'ns, Inc. v. Shaar Fund Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007); *Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*, 33 F. Supp. 3d 401, 439 (S.D.N.Y. 2014) (stating that plaintiffs "must allege facts

indicating 'that the controlling person knew or should have known that the primary violator, over whom that person had control, was engaging in fraudulent conduct.'").

As a threshold matter, Plaintiffs' Section 20 claims against the Bezeq Defendants should be dismissed because Plaintiffs do not plead a primary violation against BComm. *See generally* BComm Mt'n to Dismiss (ECF No. 36).  Where Plaintiffs have failed to plead a primary violation, there can be no liability under Section 20.  *See ATSI*, 493 F.3d at 108.

Even if a primary violation were alleged, however, Plaintiffs' Section 20 claims also fail against the Bezeq Defendants, as they have not pled that those defendants had **control** over BComm, *Bezeq's* parent company and controlling shareholder.  Critically, Plaintiffs' Section 20 claims turn on alleged misstatements or omissions made by BComm, not Bezeq or the Bezeq Defendants.  The Bezeq Defendants are executives and officers of Bezeq, which is a subsidiary of BComm.  Plaintiffs' conclusory allegations regarding control (Am. Compl. ¶¶ 183-84) do not identify how the Bezeq Defendants could exercise control over the issuer of the alleged misrepresentations: BComm.  *See S.E.C. v. First Jersey Secs.*, 101 F.3d 1450, 1472 (2d Cir. 1996) ("[C]ontrol over a primary violator may be established by showing that the defendant possessed 'the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise.'").  Mere allegations of corporate relationships are insufficient to establish control by either the parent or the subsidiary.  *See Pub. Employees' Ret. Sys. of Miss. v. Merrill Lynch & Co. Inc.*, 714 F. Supp. 2d 475, 485 (S.D.N.Y. 2010) (dismissing control person claims against subsidiaries where "the Complaint does not even hint at how the other Merrill subsidiaries might have had control over Merrill Depositor," because "mere allegations of a corporate affiliation between defendants are insufficient to indicate control by one over another").  Moreover, the fact that the Bezeq

Defendants held senior management positions of entities controlled by BComm does not give

them control over BComm.  Without further allegations showing how the Bezeq Defendants'

purportedly control BComm, Plaintiffs' Section 20 claims fail.

## IV.   IF THE BEZEQ DEFENDANTS' MOTION IS NOT GRANTED IN ITS ENTIRETY, THE COURT SHOULD STAY THIS ACTION

In the event that their motion to dismiss is not granted in its entirety, the Bezeq

Defendants agree with BComm that, in the alternative, this case should be stayed pending

resolution of the Israeli proceedings.  *See* ECF No. 36 at 25-34.

## CONCLUSION

For the reasons set forth herein, the Bezeq Defendants respectfully request that the Court

dismiss Plaintiffs' Amended Complaint, in its entirety, with prejudice.

Dated: July 12, 2018
     New York, New York

                                    */s/ Nathaniel J. Kritzer*
                                    Jay P. Lefkowitz
                                    Nathaniel J. Kritzer
                                    KIRKLAND & ELLIS LLP
                                    601 Lexington Avenue
                                    New York, New York 10022
                                    Telephone: (212) 446-4800
                                    Facsimile: (212) 446-6460
                                    Email: lefkowitz@kirkland.com
                                    Email: nathaniel.kritzer@kirkland.com

                                    *Attorneys for Defendants Stella Handler,*
                                    *David Mizrahi, Allon Raveh, and Linor*
                                    *Yochelman*