**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| REX AND ROBERTA LING LIVING TRUST u/a DECEMBER 6, 1990, as AMENDED, JOHN TAYLOR JONES, and DAVID THOMAS JONES, Individually and on Behalf of All Others Similarly Situated, | No. 1:17-cv-04937 (JPO) |

Plaintiffs,

-against-

B COMMUNICATIONS LTD., EUROCOM
COMMUNICATIONS LTD., D.B.S.
SATELLITE SERVICES (1998) LTD.,
SHAUL ELOVITCH, OR ELOVITCH, RON
EILON, STELLA HANDLER, DAVID
MIZRAHI, MICKY NEIMAN, ALLON
RAVEH, ITZIK TADMOR, DORON
TURGEMAN, EHUD YAHALOM, and
LINOR YOCHELMAN,

Defendants.

<strong>YES DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR<br>MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT<br><u>OR STAY FURTHER PROCEEDINGS</u></strong>

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................... i

PRELIMINARY STATEMENT .............................................................................................. 1

BACKGROUND FACTS AND ALLEGATIONS ................................................................... 3

    A.    The Yes Defendants ................................................................................3

    B.    Yes's Current Ownership Structure ......................................................3

    C.    Bezeq Acquired A 100% Stake In Yes In 2015.....................................4

    D.    Alleged Misstatements And Omissions .................................................5

    E.    Proceedings in Israel .............................................................................7

    F.    This Action..............................................................................................7

ARGUMENT ............................................................................................................................ 8

    I.    THIS COURT DOES NOT HAVE PERSONAL JURISDICTION OVER YES,
        EILON OR NEUMANN .......................................................................... 8

        A.    Plaintiffs Do Not—And Could Not—Plead That The Yes Defendants Are
            Subject To General Jurisdiction In The United States ...............................9

        B.    The Yes Defendants Are Not Subject To Specific Jurisdiction..................9

    II.    PLAINTIFFS' SECTION 10(B) CLAIMS AGAINST EILON AND NEUMANN
        FAIL.......................................................................................................... 12

        A.    Eilon And Neumann Did Not Make Any Of The Alleged Misstatements
            Within The Meaning Of *Janus* ...............................................................13

        B.    Plaintiffs Fail To Plead Particularized Facts Raising The Requisite Strong
            Inference Of Scienter ..............................................................................16

    III.    PLAINTIFFS' SECTION 20 CLAIMS AGAINST THE YES DEFENDANTS
        FAIL.......................................................................................................... 20

        A.    Plaintiffs Fail To Plead The Yes Defendants Are Liable Under Section
            20(a) .......................................................................................................20

        B.    Plaintiffs Fail To State A Claim Against The Yes Defendants Under
            Section 20(b) ..........................................................................................22

    IV.    IN THE ALTERNATIVE, THIS ACTION SHOULD BE STAYED PENDING
        THE RESOLUTION OF RELATED LEGAL PROCEEDINGS IN ISRAEL .... 24

CONCLUSION....................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Rules and Statutes**

15 U.S.C. § 78t(a) ........................................................................................... 23

15 U.S.C. § 78t(b) ........................................................................................... 23

15 U.S.C. § 78aa ............................................................................................. 16

Fed. R. Civ. P. 9(b) ......................................................................................... 16

Fed. R. Civ. P. 10b-5 ...................................................................................... 2, 12

Securities Exchange Act Section 10(b) ............................................................ 2, 12

Securities Exchange Act Section 20(a) ............................................................ 3

Securities Exchange Act Section 20(b) ............................................................ 3

**Cases**

*City of Pontiac Gen. Emps.' Ret. Sys. v. Lockheed Martin Corp.*,
875 F. Supp. 2d 359 (S.D.N.Y. 2012) ............................................................. 23, 24

*Cohen v. Citibank, N.A.*,
954 F. Supp. 621 (S.D.N.Y. 1996) .................................................................. 23

*Cortec Indus., Inc. v. Sum Holding L.P.*,
949 F.2d 42 (2d Cir. 1991) .............................................................................. 6

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) ........................................................................................ 8, 9, 12

*DiFolco v. MSNBC Cable LLC*,
622 F.3d 104 (2d Cir. 2010) ............................................................................ 6

*DiVittorio v. Equidyne Extractive Indus., Inc.*,
822 F.2d 1242 (2d Cir. 1987) .......................................................................... 16-17

*Gavin/Solmonese LLC v. D'Arnaud-Taylor*,
68 F. Supp. 3d 530 (S.D.N.Y. 2014), *aff'd*, 639 F. App'x 664 (2d Cir. 2016) ................... 14

**Page(s)**

*Gucci Am., Inc. v. Weixig Li*,
768 F.3d 122 (2d Cir. 2014)...................................................................................... 11

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
466 U.S. 408 (1984).................................................................................................. 8-9

*In re Banco Bradesco, S.A. Sec. Litig.*,
277 F. Supp. 3d 600 (S.D.N.Y. 2018)...................................................................... 21, 22

*In re Barrick Gold Sec. Litig.*,
No. 13 Civ. 3851(SAS), 2015 WL 3486045 (S.D.N.Y. June 2, 2015)....................... 15

*In re Braskem S.A. Sec. Litig.*,
246 F. Supp. 3d 731 (S.D.N.Y. 2017)...................................................................... 10, 11

*In re ITT Educ. Servs., Inc. Sec. Litig.*,
34 F. Supp. 3d 298 (S.D.N.Y. 2014) ....................................................................... 19

*In re JPMorgan Chase & Co. Sec. Litig.*,
No. 12 Civ. 03852 (GBD), 2014 WL 1297446 (S.D.N.Y. Mar. 31, 2014) ................. 15

*In re Mylan N.V. Sec. Litig.*,
No. 16-CV-7926 (JPO), 2018 WL 1595985 (S.D.N.Y. Mar. 28, 2018)..................... 17

*In re Sotheby's Holdings, Inc.*,
2000 WL 1234601 (S.D.N.Y. Aug. 31, 2000)......................................................... 19

*In re World Wrestling Entm't, Inc. Sec. Litig.*,
180 F. Supp. 3d 157 (D. Conn. 2016)...................................................................... 23

*Janus Capital Grp., Inc. v. First Derivative Traders*,
564 U.S. 135 (2011)................................................................................................. 13, 14, 15

*Kalnit v. Eichler*,
264 F.3d 131 (2d Cir. 2001)...................................................................................... 18, 20

*Keeton v. Hustler Magazine, Inc.*,
465 U.S. 770 (1984).................................................................................................. 8

*Lentell v. Merrill Lynch & Co., Inc.*,
396 F.3d 161 (2d Cir. 2005)...................................................................................... 16

**Page(s)**

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
732 F.3d 161 (2d Cir. 2013)........................................................................... 11-12

*Lorenzo v. SEC*,
No. 17-1077, 2018 WL 646998 (U.S. June 18, 2018) ...................................... 16

*Marine Bank v. Weaver*,
455 U.S. 551 (1982)......................................................................................... 15

*Matrixx Initiatives, Inc. v. Siracusano*,
563 U.S. 27 (2011).......................................................................................... 13

*Menaldi v. Och-Ziff Capital Mgmt. Grp. LLC*,
164 F. Supp. 3d 568 (S.D.N.Y. 2016)........................................................... 20, 22

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
84 F.3d 560 (2d Cir. 1996) .............................................................................. 12

*Penguin Grp. (USA) Inc. v. Am. Buddha*,
609 F.3d 30 (2d Cir. 2010)................................................................................ 8

*Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank of Commerce*,
694 F. Supp. 2d 287 (S.D.N.Y. 2010)............................................................... 19

*Reich v. Lopez*,
858 F.3d 55 (2d Cir. 2017)................................................................................. 9

*Rothman v. Gregor*,
220 F.3d 81 (2d Cir. 2000)................................................................................. 6

*Rush v. Savchuk*,
444 U.S. 320 (1980).......................................................................................... 8

*SEC v. Coffey*,
493 F.2d 1304 (6th Cir. 1974) .......................................................................... 23

*SEC v. First Jersey Sec., Inc.*,
101 F.3d 1450 (2d Cir. 1996)............................................................................ 21

*SEC v. Kelly*,
817 F. Supp. 2d 340 (S.D.N.Y. 2011)............................................................. 15, 16

**Page(s)**

*SEC v. Sharef,*
924 F. Supp. 2d 539 (S.D.N.Y. 2013)........................................................................... 10, 11

*SEC v. Unifund SAL,*
910 F.2d 1028 (2d Cir. 1990)........................................................................................ 9

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.,*
552 U.S. 148 (2008)...................................................................................................... 15

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
551 U.S. 308 (2007)...................................................................................................... 17

*Union Cent. Life Ins. Co. v. Credit Suisse Sec. (USA), LLC,*
No. 11 Civ. 2327 (GBD), 2013 WL 1342529 (S.D.N.Y. Mar. 29, 2013) ...................... 23-24

*Walden v. Fiore,*
571 U.S. 277 (2014)...................................................................................................... 8

*World-Wide Volkswagen Corp. v. Woodson,*
444 U.S. 286 (1980)...................................................................................................... 11

*Youngers v. Virtus Inv. Partners Inc.,*
195 F. Supp. 3d 499 (S.D.N.Y. 2016)........................................................................... 21

D.B.S. Satellite Services (1998) Ltd. ("Yes"), Ron Eilon ("Eilon"), and Michael

Neumann[1] ("Neumann") (collectively, the "Yes Defendants") respectfully submit this

memorandum of law in support of their motion to dismiss the Amended Class Action Complaint

(the "Amended Complaint" or "ACAC") pursuant to Federal Rules of Civil Procedure 9(b),

12(b)(2), 12(b)(6) and the Private Securities Litigation Reform Act ("PSLRA"), or in the

alternative, to stay further proceedings.

## PRELIMINARY STATEMENT

Plaintiffs, owners of BComm securities, allege that they were fraudulently induced to

purchase BComm securities based on false and misleading statements issued by BComm, an

Israeli company.  Yet, in blunderbuss fashion, they seek to recover not only against BComm and

its officers, but also against Yes—the privately-held Israeli subsidiary of the Israeli subsidiary of

BComm—and Yes's CEO and CFO.  However, Plaintiffs fail to assert the basic facts required to

obtain personal jurisdiction over the Yes Defendants, much less meet the stringent pleading

requirements of Rule 9(b) and the PSLRA.  Plaintiffs' claims against the Yes Defendants must

therefore be dismissed.

At the heart of this Action is the sale of shares in an Israeli company (Yes), by one Israeli

company (Eurocom) to another Israeli Company (Bezeq), which in turn was partially owned by

BComm.  Plaintiffs claim that this transaction between Eurocom and Bezeq was tainted by the

influence of Shaul Elovitch, whom Plaintiffs allege is BComm's ultimate controlling

shareholder.  Plaintiffs allege that Eurocom (the seller) and Elovitch caused Yes to delay

payments to vendors, thereby inflating Yes's free cash flow and—in turn and after Yes's cash

---

[1] Sued here as Micky Neiman.

flows were consolidated with those of Bezeq and BComm—BComm's free cash flow.

With regard to the Yes Defendants' conduct, Plaintiffs' strikingly sparse allegations boil down to this:  Yes and Eilon followed the directions of Eurocom and Elovitch.  Neumann, as Yes's CFO, knew or recklessly disregarded the purported inflation of Yes's cash flows.[2]

Plaintiffs fail to allege that the Yes Defendants had any role in preparing, approving or distributing BComm's U.S. filings.  And they fail to allege any facts showing that the Yes Defendants—at the bottom of BComm's corporate family tree—had any control over BComm's U.S. filings.  Plaintiffs also allege no facts showing scienter as to Eilon or Neumann, either by pleading some personal benefit for either Eilon or Neumann, or showing that they were reckless. Instead, they seek to rely on ongoing legal proceedings in Israel against Eilon, Neumann and others, while failing to plead even what Israeli laws Eilon and Neumann are alleged (in Israel) to have breached.  Plaintiffs' patchwork of selective quotations and bald accusations fails to state a claim for violations of the federal securities laws by the Yes Defendants.

In sum, as set forth below, the claims asserted against the Yes Defendants in the ACAC should be dismissed with prejudice for the following reasons:  *First*, Plaintiffs fail to meet their burden to demonstrate personal jurisdiction over the Yes Defendants.  *See infra* Part I.  *Second*, Plaintiffs fail to state a claim as to Eilon or Neumann for violations of Section 10(b) of the Securities Exchange Act (the "Exchange Act") and Rule 10b-5 because Plaintiffs fail to allege that either Eilon or Neumann made any of the alleged misstatements and because Plaintiffs fail to plead particularized facts raising a strong inference of scienter as to either Eilon and Neumann.  *See infra* Part II.  *Third*, Plaintiffs fail to state a claim as to any of the Yes Defendants

---

[2] Plaintiffs also seek to besmirch Eilon and Neumann by referring to ongoing legal proceedings in Israel against them, without identifying even what Israeli laws Eilon and Neumann are specifically alleged (in Israel) to have breached or how they support a claim here.

for violations of Sections 20(a)-(b) of the Exchange Act because Plaintiffs fail to plausibly allege any underlying violation of the securities laws by BComm, show that any of the Yes Defendants exercised actual control over BComm, or show that any of the Yes Defendants were culpable participants in BComm's alleged misstatements or omissions.  *See infra* Part III.  *Finally, and in the alternative*, if the Court were to sustain this action on the pleadings as to the Yes Defendants, the Action should be stayed pending the resolution of the related legal proceedings in Israel.  *See infra*  Part IV.

## BACKGROUND FACTS AND ALLEGATIONS

### A.    The Yes Defendants

Yes is a privately-owned Israeli satellite-television provider.  ACAC ¶ 18;  Declaration of Ron Eilon, dated July 12, 2018 ("Eilon Decl.") ¶ 2.  It is incorporated in Israel, and its principal place of business is in Israel.  Eilon Decl. ¶ 2.  None of Yes's securities are listed for trading in the United States.  Eilon Decl. ¶ 3.

Eilon was Yes's CEO during the Class Period and Neumann served as Yes's CFO. ACAC ¶¶ 21, 24.  Both continue in those roles today and both are Israeli citizens.  Eilon Decl. ¶¶ 1, 5; Declaration of Michael Neumann, dated July 12, 2018 ("Neumann Decl.") ¶¶ 1, 2. Throughout the entirety of the Class Period, Eilon and Neumann have resided in Israel.  Eilon Decl. ¶ 5; Neumann Decl. ¶ 2.  Neither Eilon nor Neumann is a citizen of the United States; at no relevant time have they resided in the United States; nor do they own property here.  Eilon Decl. ¶ 5; Neumann Decl. ¶ 2.

### B.    Yes's Current Ownership Structure

Since 2015, Yes has been a fully-owned subsidiary of Bezeq, the Israeli Telecommunication Corp. Ltd. ("Bezeq").  ACAC ¶¶ 16(a); 39.  Bezeq is a publicly-traded company listed on the Tel Aviv Stock Exchange ("TASE"); its securities are not listed on any

U.S. exchange and it is not a defendant in this Action.

In turn, B Communications Ltd. ("BComm") owns approximately 26% of Bezeq, and thus has an indirect minority interest in Yes.  ACAC ¶ 16.  BComm's securities trade on TASE and NASDAQ.  ACAC ¶ 16.[3]

BComm itself is majority-owned by Internet Gold-Golden Lines Ltd. (also not named as a defendant in this Action), which is in turn majority-owned by Eurocom Communications Ltd. ("Eurocom").  ACAC ¶ 32.  Shaul Elovitch ("Elovitch") and his family indirectly own a majority stake in Eurocom.  ACAC ¶ 32.  Plaintiffs do not specifically allege that Eilon or Neumann were officers, directors or employees of BComm, Bezeq or Eurocom.[4]

### C.    Bezeq Acquired A 100% Stake In Yes In 2015

Prior to 2015, Bezeq held approximately 49.8% of Yes's shares.  ACAC ¶ 32.  The rest of Yes's shares were owned by Eurocom.  *Id*. ¶ 39.  In 2015, Bezeq acquired Eurocom's interest in Yes and became Yes's sole shareholder (the "Bezeq-Yes Merger").  *Id*.  In exchange, Bezeq agreed to pay Eurocom New Israeli Shekels ("NIS") 680 million (approximately US$ 190 million).  *Id*.  Bezeq also agreed to pay up to NIS 170 million (approximately $47.5 million) in additional consideration if Yes met certain performance benchmarks with respect to its free cash flow from 2015 through 2017.  ACAC ¶¶ 39-41.

Plaintiffs allege several purported irregularities with respect to the Bezeq-Yes Merger.  In particular, Plaintiffs claim that certain members of the ad hoc committee of Bezeq's Board of Directors that oversaw the transaction process (the "Bezeq Board Committee") tainted the Bezeq

---

[3] Plaintiffs allege that they purchased BComm's American Depositary Receipts ("ADRs") during the Class Period.  ACAC ¶¶ 13-15.  However, BComm does not issue ADRs; rather its ordinary shares trade on NASDAQ.  Mem. of Law in Support of Def. B Commc'ns Ltd.'s Mot. to Dismiss or Stay at 2, ECF No. 36.

[4] Plaintiffs wrongly allege in paragraph 181 of the ACAC the conclusion that all the Individual Defendants are officers and directors of a publicly-traded company, but Eilon and Neumann are not, and the ACAC pleads no facts to the contrary.

Board Committee's deliberations and acted at the behest of Eurocom, Bezeq's counterparty in the Bezeq-Yes Merger. ACAC ¶ 42. None of the Yes Defendants is alleged to have been a member of the Bezeq Board Committee or to have had any role in the Bezeq Board Committee's deliberations regarding Bezeq's decision to acquire a controlling interest in Yes.

Plaintiffs further claim that once the merger agreement was signed, "Defendants" inflated Yes's free cash flow. ACAC ¶ 43. Plaintiffs allege in particular that Eilon caused Yes to freeze or delay payments to suppliers. ACAC ¶¶ 4, 43, 148-49. Plaintiffs further allege Elovitch and Eurocom instructed Eilon to do this in order to trigger BComm's contingent payment obligations, in order to obtain funds for Eurocom and Elovitch, who faced financial difficulties. ACAC ¶¶ 52, 136-38.

### D. Alleged Misstatements And Omissions

Plaintiffs claim that as a result of the purported irregularities in the Bezeq-Yes Merger, BComm's public filings with the SEC between March 18, 2015 and May 30, 2017 contained misstatements. ACAC ¶¶ 58-104. The only category of misstatement related to the actions of the Yes Defendants concerns statements about BComm's free cash flow. Plaintiffs allege that Eilon's purported delay of payments to vendors allegedly caused Yes's free cash flow to be overstated. ACAC ¶¶ 43, 149. Plaintiffs do not allege any facts showing how there was anything improper in the alleged timing of payment to vendors or how its alleged effect on free cash flows was improper. Further, Plaintiffs do not allege facts showing that Neumann took any actions to affect Yes's free cash flow, stating merely in conclusory fashion that Neumann, as Yes's CFO, "knew about or recklessly disregarded the scheme." ACAC ¶ 151.

Plaintiffs then allege that "[t]hroughout the Class Period, BComm reported Yes' Free Cash Flow separately and as part of Bezeq's consolidated Free Cash Flow in BComm's SEC filings." ACAC ¶ 55. *See also id.* ¶¶ 56-71 (listing SEC filings alleged to contain misstatements

related to "Yes, Bezeq, and BComm's Inflated Free Cash Flows").  The Amended Complaint

identifies certain of these SEC filings as having been "signed and/or approved by" BComm's

CEO and CFO, *id.* ¶¶ 26-27, 58, 60, 62, 64, 66, 68, 70.  By contrast, Plaintiffs do not point to any

specific filing that was signed by Eilon or Neumann—nor could they: a review of these filings,

which the Court may consider on this motion,[5] shows that neither Eilon nor Neumann were

signatories to these filings.  *See* Declaration of Martha E. Vega-Gonzalez, dated July 12, 2018

(Vega-Gonzalez Decl.) Exhibits ("Exs.") 1-34 (SEC filings discussed in ACAC ¶¶ 56-71).

Moreover, Plaintiffs do not allege what role, if any, the Yes Defendants had in the preparation,

drafting, approval, or distribution of any of these SEC filings.  Rather, with respect to Eilon and

Neumann, the Amended Complaint merely states in conclusory fashion that Yes's free cash flow

was reported in SEC filings, "which were signed throughout the Class Period collectively by the

following Individual Defendants, without limitation (*or included in disclosures over which these

Individual Defendants had ultimate authority*): Eilon, Elovitch, Handler, Mizrahi, Neiman [sic]

Raveh, Turgeman, and Tadmor."  ACAC ¶ 55 (emphasis added).  Notably, the free cash flow

statements challenged by Plaintiffs were not signed by Eilon or Neumann.[6]  *See* Vega-Gonzalez

Decl. Exs. 1-34 (SEC filings discussed in ACAC ¶¶ 56-71).

---

[5] The Court may consider all other documents that are integral to the Amended Complaint, including exhibits and documents incorporated by reference, legally required public disclosure documents filed with the SEC, documents possessed by or known to the plaintiffs and upon which they relied in bringing suit, and matters subject to judicial notice. *See DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010); *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991).

[6] The only documents that were signed by Eilon and Neumann and included in documents filed with the SEC during the class period were the Yes financial statements for the year ended December 31, 2014 (the "2014 Yes Financial Statements").  The 2014 Yes Financial Statements were attached as exhibits to B-Comm's Forms 6-K filed on March 25, 2015 (not discussed in the ACAC) and on April 24, 2015 (different exhibit discussed at ACAC ¶¶ 74-75) and were included in BComm's Form 20-F annual report for the year ended December 31, 2014 ("BComm's 2014 20-F," discussed at ACAC ¶¶ 76-81).  However, Plaintiffs do not allege the 2014 Yes Financial Statements contained or any of the SEC filings incorporating them included any misstatements regarding Yes's free cash flow; nor would such an allegation be consistent with Plaintiffs' claims that Yes's cash flows were inflated to meet performance benchmarks during the period from 2015 through 2017.

### E.    Proceedings in Israel

Plaintiffs allege that the Israel Securities Authority ("ISA") has investigated BComm,

Bezeq and Yes, as well as several officers and directors of these companies, and recommended

that the Attorney General of Israel ("AGI") issue criminal indictments against several individuals

named as defendants in this Action, including Eilon and Neumann.  ACAC ¶ 6.  Plaintiffs seek

to rely on an ISA press release to suggest that the ISA found *prima facie* evidence that various of

the individual defendants had committed "reporting offenses," as well as other potential offenses

such as "obtaining by fraud, fraud and breach of trust in the corporation, and offenses of

obstruction of justice."  ACAC ¶ 127.  Notably, however, the AGI (the prosecuting agency) has

not indicted either Eilon or Neumann—indeed, the two are currently operating as Yes's CEO and

CFO, respectively.  Eilon Decl. ¶ 1; Neumann Decl. ¶ 1.

At least four applications to approve class actions or derivative or pre-derivative actions

have been brought by civil plaintiffs in Israel in connection with the facts Plaintiffs allege here.

Declaration of Doron Kol, dated February 18, 2018 ("Kol Decl.") ¶ 3.  The ISA has requested

that the Israeli courts stay these actions.  Kol Decl. ¶¶ 5, 8. All but the most recent of these civil

actions have been stayed at the request of the ISA or dismissed.[7]

### F.    This Action

On June 29, 2017, counsel for Plaintiffs commenced this Action by filing a complaint

against BComm and certain of its officers.  By order dated September 27, 2017, this Court

appointed Rex and Roberta Ling Living Trust u/a December 6, 1990, as Amended, John Taylor

---

[7] This most recent action, *Yizhak Eliaz et al vs. Bezeq et al*, 54743-06-18, Economic Department of the Tel-Aviv Jaffa District Court ("Tel Aviv Court"), was commenced on June 24, 2018.  The Tel Aviv Court has allowed proceedings to continue while preliminary case administration matters were before it.  Declaration of Justin Nematzadeh, filed on April 17, 2018, Ex. 13 at 5 (noting that at  that stage "the court is requested to decide on the matter of conducting the four cases.").  However, the Yes Defendants are not aware of any action that has been allowed to proceed past the initial case administration stage.

Jones, and David Thomas Jones (collectively, "Plaintiffs") as Lead Plaintiffs.  Plaintiffs allege

that they purchased BComm's American Depositary Receipts ("ADRs") during the Class Period.

ACAC ¶¶ 13-15.[8]  On December 8, 2017, Plaintiffs submitted the Amended Complaint, alleging

violations of the U.S. securities laws against several additional defendants, including for the first

time, the Yes Defendants.  Plaintiffs made no attempt to serve the Yes Defendants until after

BComm moved to dismiss or stay.

## ARGUMENT

## I.   THIS COURT DOES NOT HAVE PERSONAL JURISDICTION OVER YES, EILON OR NEUMANN

On a motion to dismiss for lack of personal jurisdiction, the "plaintiff bears the burden of

demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit."

*Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010).  Personal jurisdiction is

a defendant-specific inquiry, *see Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781. n.13

(1984); *Rush v. Savchuk*, 444 U.S. 320, 331-32 (1980), that focuses on the defendant's contacts

with the forum.  *Daimler AG v. Bauman*, 571 U.S. 117, 126-27 (2014); *Walden v. Fiore*, 571

U.S. 277, 283-284 (2014).  In *Walden*, the Court explained that in a case involving alleged

intentional torts, specific jurisdiction requires that "the defendant's suit-related conduct must

create a substantial connection with the forum State," and that the contacts must be "with the

forum State itself, not the defendant's contacts with persons who reside there."  *Walden*, 571

U.S. at 283-284.  The "unilateral activity of another party or a third person is not an appropriate

consideration when determining whether a defendant has sufficient contacts with a forum State

to justify an assertion of jurisdiction."  *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466

---

[8] While BComm's ordinary shares trade on NASDAQ, it does not issue ADRs.  Mem. of Law in Support of Def. B Commc'ns Ltd.'s Mot. to Dismiss or Stay at 2, ECF No. 36.

U.S. 408, 417, 104 (1984).  The statutory basis for personal jurisdiction in securities cases involving securities listed on domestic exchanges is found in Section 27 of the Exchange Act, 15 U.S.C. § 78aa, which "permits the exercise of personal jurisdiction to the limit of the Due Process Clause of the Fifth Amendment."  *SEC v. Unifund SAL*, 910 F.2d 1028, 1033 (2d Cir. 1990).

A.   **Plaintiffs Do Not—And Could Not—Plead That The Yes Defendants Are Subject To General Jurisdiction In The United States**

Plaintiffs assiduously avoid making any jurisdictional allegations regarding the Yes Defendants, *see, e.g.*, ACAC ¶ 18, and thus fail to plead that the Yes Defendants are subject to general jurisdiction in the United States.  Indeed, Plaintiffs cannot avoid that Yes is an Israeli company, incorporated in Israel, with its principal place of business in Israel.  Eilon Decl. ¶ 2.  Yes's purchase price and financial results are denominated in Israeli currency.  *See, e.g.*, ACAC ¶ 56.  Under the Supreme Court's decision in *Daimler AG v. Bauman*, because Yes is neither incorporated nor headquartered in the United States, it is not subject to general jurisdiction here.  571 U.S. at 136-39.  Similarly, Plaintiffs do not and could not plead any facts suggesting that either Eilon or Neumann is domiciled in the United States, *see* Eilon Decl. ¶ 5; Neumann Decl. ¶ 2, and therefore, similarly fail to plead that Eilon or Neumann is subject to general personal jurisdiction here.  *See Reich v. Lopez*, 858 F.3d 55, 63 (2d Cir. 2017) ("General jurisdiction over an individual comports with due process in the forum where he is 'at home,' meaning the place of 'domicile.'").

B.   **The Yes Defendants Are Not Subject To Specific Jurisdiction**

1.   ***Plaintiffs Fail To Adequately Plead That Any Alleged Conduct By Any Of The Yes Defendants Was Purposefully Directed At The United States***

Plaintiffs have likewise failed to make a *prima facie* showing of specific jurisdiction over any of the Yes Defendants because Plaintiffs fail to plead that the Yes Defendants have the

-9-

requisite minimum contacts with the United States.  "To establish the minimum contacts

necessary to satisfy due process, the plaintiff must show that his 'claim arises out of, or relates

to, the defendant's contacts with the forum . . . [and that] the defendant purposefully availed

itself of the privilege of doing business in the forum and could foresee being haled into court

there." *SEC v. Sharef*, 924 F. Supp. 2d 539, 544-45 (S.D.N.Y. 2013) (quoting *Bank Brussels*

*Lambert v. Fiddler, Gonzalez & Rodriguez*, 305 F.3d 120, 127 (2d Cir. 2002)).  While it is "well-

established that signing or directly manipulating financial statements to cover up illegal foreign

action, with knowledge that those statements will be relied upon by United States investors

satisfies" the minimum contacts test,  *Sharef*, 924 F. Supp. 2d at 547, "a conclusory statement

that a foreign defendant caused an issuer to mak[e] false and misleading filings is not enough to

support personal jurisdiction." *In re Braskem S.A. Sec. Litig.*, 246 F. Supp. 3d 731, 770

(S.D.N.Y. 2017) (collecting cases).

 *In re Braskem S.A. Sec. Litig.* is instructive.  246 F. Supp. 3d at 770.  There, plaintiffs

sought to assert personal jurisdiction over Odebrecht, a foreign corporation, in connection with

alleged misstatements and omissions of Braskem, Odebrecht's subsidiary and a U.S. issuer,

based on a control theory similar to the one Plaintiffs assert here.  The *Braskem* court refused to

exert personal jurisdiction over Odebrecht, because the complaint did not allege "concretely, that

Odebrecht played any role in making, proposing, editing or approving Braskem's public filings

in the United States," and the complaint "allege[d] no other contacts between Odebrecht and the

United States that could justify the exercise of personal jurisdiction over Odebrecht." *Id*.  This

case is *a fortiori* of *Braskem.*  Unlike Odebrecht, which was the issuer's parent and thus arguably

had authority to control the actions and financial statements of its subsidiary, Yes is a partially-

owned indirect subsidiary of the issuer here, BComm.  Eilon and Neumann are merely officers of

that partially-owned indirect subsidiary.  Even more so than in *Braskem*, Plaintiffs do not allege

"concretely, that [the Yes Defendants] played any role in making, proposing, editing or

approving [BComm's] public filings in the United States."  *Id*.

      At best, Plaintiffs' allegations rest upon foreseeability: that a fraud purportedly aimed at

Bezeq and intended to benefit Elovitch would have ripple effects on BComm's financial

statements and therefore on persons who purchased BComm securities.  But, even if Plaintiffs

sought to rely on unstated allegations of foreseeability—*i.e.*, that it was foreseeable that Yes's

free cash flow could be incorporated in the financial statements of Bezeq, an Israeli company

that trades on TASE, and that it was therefore foreseeable that BComm, which owns a minority

stake in Bezeq, could in turn report this information to U.S. investors—to establish a connection

with the United States, this would not be enough to establish personal jurisdiction over the Yes

Defendants.  As the Supreme Court has held, "'foreseeability' alone has never been a sufficient

benchmark for personal jurisdiction under the Due Process Clause." *World-Wide Volkswagen

Corp. v. Woodson*, 444 U.S. 286, 295 (1980)*; see also Sharef*, 924 F. Supp. 2d at 547 (rejecting

position that "every participant in illegal action taken by foreign company subject to U.S.

securities laws would be subject to the jurisdiction of U.S. courts no matter how attenuated their

connection with the falsified financial statements" because "[t]his would be akin to a tort-like

foreseeability requirement, which has long been held to be insufficient.").

      **2.**      ***Considerations of Fair Play, Substantial Justice, and International
      Comity Support Dismissal***

      Even if Plaintiffs had alleged sufficient suit-related forum contacts with respect to each of

Yes, Eilon and Neumann, due process requires the Court to engage in an additional analysis to

determine whether exercising jurisdiction "would comport with fair play and substantial justice."

*Gucci Am., Inc. v. Weixig Li,* 768 F.3d 122, 136 (2d Cir. 2014).  "Relevant factors at this second

step of the analysis may include: (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; [and] (3) the plaintiff's interest in obtaining convenient and effective relief." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 170 (2d Cir. 2013). Also relevant is whether exercising jurisdiction threatens "international rapport." *See Daimler AG*, 571 U.S. at 142.

These factors also weigh in favor of dismissal. Plaintiffs ask the Court to exercise jurisdiction over two Israeli citizens and an Israeli corporation based on alleged wrongdoing that took place exclusively in Israel. The extraordinary burden of exercising jurisdiction on the Yes Defendants cannot be justified where the (scant) alleged manipulative conduct occurred entirely outside of the United States, and there is no allegation that it was aimed in any way at the United States. If any forum has an interest in adjudicating a case based on the facts alleged, it is Israel, which has a legitimate interest in regulating conduct within its borders, particularly where there already are related actions pending in Israel. International comity thus strongly weighs in favor of rejecting the exercise of personal jurisdiction over the Yes Defendants.

Subjecting Yes, Eilon and Neumann to jurisdiction in the United States based on attenuated "foreseeability" contacts would not "merely be inconvenient"; it "would violate our basic sense of fair play and substantial justice and deprive the defendants of the due process guaranteed by the Constitution." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 575 (2d Cir. 1996).

## II.    PLAINTIFFS' SECTION 10(b) CLAIMS AGAINST EILON AND NEUMANN FAIL[9]

To plead claim under Section 10(b) and Rule 10b-5 against Eilon and Neumann,

---

[9] Plaintiffs do not allege a Section 10(b) claim against Yes.

Plaintiffs must allege that they (1) made material misstatements or omissions, (2) with scienter, (3) in connection with the purchase or sale of securities, (4) reliance, (5) economic loss, and (6) loss causation.  *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37-38 (2011).  Plaintiffs fail to state a Section 10(b) claim against either Eilon or Neumann because Plaintiffs fail to allege that either Eilon or Neumann made any of the statements alleged in the Amended Complaint, plead particularized facts raising the requisite strong inference of scienter, or plead loss causation.[10]

### A.    Eilon And Neumann Did Not Make Any Of The Alleged Misstatements Within The Meaning Of *Janus*

As the Supreme Court has held, liability for "making" false or misleading statements under Section 10(b) and Rule 10b-5 promulgated thereunder is limited to individuals "with ultimate authority over the statement, including its content and whether and how to communicate it.  Without control, a person or entity can merely suggest what to say, not 'make' a statement in its own right."  *Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011).

Plaintiffs do not allege that Eilon or Neumann were themselves the maker of any of the purported misstatements they allege.  The Amended Complaint therefore fails at this threshold level.  Rather, the only statement in the Amended Complaint that even resembles such an allegation is:

> Throughout the Class Period, BComm reported Yes' Free Cash Flow separately and as part of Bezeq's consolidated Free Cash Flow in BComm's SEC filings, which were signed throughout the Class Period collectively by the following Individual Defendants, without limitation (*or included in disclosures over which these Individual Defendants had ultimate authority*): Eilon, Elovitch, Handler, Mizrahi, Neiman [sic], Raveh, Turgeman, and Tadmor.

---

[10] The Yes Defendants rely on and incorporate by reference the BComm Individual Defendants' (Itzik Tadmor, Doron Turgeman and Ehud Yahalom) arguments as to Plaintiffs' failure to plead loss causation.  *See* Mem. of Law in Support of Mot. to Dismiss or Stay by Defs. Tadmor, Doron and Yahalom at 19-21, ECF No. 64.

ACAC ¶ 55 (emphasis added).  Restated more simply, this sentence alleges that Eilon and

Neumann (1) signed BComm's SEC filings in which "BComm reported Yes' Free Cash Flow

separately and as part of Bezeq's consolidated Free Cash Flow" *or* (2) had ultimate authority

over disclosures included in those SEC filings.  Notably, this sentence does *not* allege that Eilon

and Neumann signed the SEC filings containing overstatements of Yes's cash flow much less

facts showing that they had ultimate authority over disclosures included therein.  In any event,

neither point is supported by particularized pleadings or the SEC filings on which Plaintiffs rely.

*First*, neither Eilon or Neumann signed any of the SEC filings that Plaintiffs allege included false

or misleading disclosures related to Yes or BComm's cash flows.  Vega-Gonzalez Decl. Exs. 1-

34 (SEC filings discussed in ACAC ¶¶ 56-71).  *Second*, Plaintiffs fail to allege any facts

supporting the conclusion that Eilon or Neumann—who after all were officers of an indirect

subsidiary of the company making the alleged misstatements Plaintiffs challenge—had or could

have had "ultimate authority over the statement, including its content and whether and how to

communicate it."  *Janus*, 564 U.S. at 142.

Indeed, so inadequate are Plaintiffs' allegations that they fail to include even a single

allegation describing what role—if any—Eilon or Neumann allegedly played in the preparation,

drafting, approval, or distribution of any of the statements Plaintiffs challenge.  But even if they

had, such allegations would still be insufficient to impose liability under *Janus*, which requires

factual allegations of control and ultimate authority for the disclosures.  *See Gavin/Solmonese*

*LLC v. D'Arnaud-Taylor*, 68 F. Supp. 3d 530, 539 (S.D.N.Y. 2014) ("Any role Vista played in

the drafting process or in distributing the offering materials is insufficient to impose primary

liability under *Janus*."), *aff'd*, 639 F. App'x 664 (2d Cir. 2016).

Finally, to the extent Plaintiffs seek in their opposition to rest their claim on the notion

-14-

that Eilon and Neumann provided inflated cash flow figures (directly or indirectly) to BComm and that BComm in turn included those figures in its own statements, that argument must fail for two reasons.  First, it is not pleaded.  Moreover, second, the Supreme Court has squarely rejected such a theory of liability.  *See Janus*, 564 U.S. at 144-45 (rejecting definition of "make" that "would permit private plaintiffs to sue a person who 'provides the false or misleading information that another person then puts into the statement.'"); *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 161 (2008) (rejecting a private Rule 10b-5 suit against companies involved in deceptive transactions, even when information about those transactions was later incorporated into false public statements); *Marine Bank v. Weaver*, 455 U.S. 551, 556 (1982) ("Congress, in enacting the securities laws, did not intend to provide a broad federal remedy for all fraud"); *see also In re JPMorgan Chase & Co. Sec. Litig.*, No. 12 Civ. 03852 (GBD), 2014 WL 1297446, at *10 (S.D.N.Y. Mar. 31, 2014) ("Plaintiffs' allegation that Defendants Cavanagh, Drew and Zubrow provided information to Defendants Dimon and Braunstein before the April 13 earnings call is not enough to establish that Cavanagh, Drew and Zubrow made the challenged statements); *In re Barrick Gold Sec. Litig.*, No. 13 Civ. 3851(SAS), 2015 WL 3486045, at *2 (S.D.N.Y. June 2, 2015) (a separate corporate entity "categorically could not be the 'maker' of the statement, as it could not, as a matter of law, have the ultimate authority over that statement").

Nor may Plaintiffs sidestep *Janus* by invoking scheme liability.  *SEC v. Kelly*, 817 F. Supp. 2d 340, 343 (S.D.N.Y. 2011) ("Courts have not allowed subsections (a) and (c) of Rule 10b-5 to be used as a back door into liability for those who help others make a false statement or omission in violation of subsection (b) of Rule 10b-5.").  While Plaintiffs conclusorily allege that "Defendants" engaged in a "scheme" that was "intended to and . . . did . . . (i) deceive

[Plaintiffs]; (ii) artificially inflate and maintain the market price of BComm's ADRs [sic]; and (iii) cause [Plaintiffs] to purchase BComm's ADRs [sic] at artificially inflated prices," ACAC ¶¶ 166-67,  it has long been settled in the Second Circuit that "[w]here the sole basis for such claims is alleged misrepresentations or omissions, plaintiffs have not made out a market manipulation claim under Rule 10b-5(a) and (c), and remain subject to the heightened pleading requirements of the PSLRA." *Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 177 (2d Cir. 2005). Plaintiffs fail to allege any mechanism by which any defendants—let alone the Yes Defendants—could have deceived Plaintiffs or affected the market price of BComm's U.S.-listed securities other than the purported misstatements Plaintiffs allege.  "Labeling the alleged misconduct a 'scheme' rather than a 'misstatement'" does not suffice to state a claim for scheme liability. *See Kelly*, 817 F. Supp. 2d at 343.  Under Rule 10b-5, statements simply are not schemes.[11]

Because Eilon and Neumann did not make any of the purported misstatements that Plaintiffs allege, they cannot be held liable under Section 10(b) or Rule 10b-5.

### B.   Plaintiffs Fail To Plead Particularized Facts Raising The Requisite Strong Inference Of Scienter

Plaintiffs' Section 10(b) claims against Eilon and Neumann also must be dismissed for the separate and independent reason that Plaintiffs fail to plead particularized facts raising the strong inference of scienter required by both Rule 9(b) and the PSLRA, 15 U.S.C. § 78u-4(b)(2). "Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud." *DiVittorio v.*

---

[11] The Supreme Court recently granted a petition for writ of certiorari to the United States Court of Appeals for the District of Columbia Circuit on the question of whether a misstatement claim that does not meet the elements set forth in Janus can be repackaged and pursued as a fraudulent scheme claim. *Lorenzo v. SEC*, No. 17-1077, 2018 WL 646998, at *1 (U.S. June 18, 2018).

*Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987).  "The requisite scienter can be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness."  *In re Mylan N.V. Sec. Litig.*, No. 16-CV-7926 (JPO), 2018 WL 1595985, at *11 (S.D.N.Y. Mar. 28, 2018) (internal citations omitted).  In order to meet the requirement that the inference be "strong," the inference "must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007).

Here, Plaintiffs fail to plead any facts showing that Eilon or Neumann had motive to commit the purported fraud with respect to BComm's disclosure of Yes's free cash flows or to allege strong circumstantial evidence of conscious misbehavior or recklessness.  Plaintiffs thus fail to allege scienter with respect to Eilon and Neumann.

### 1.    *Plaintiffs Fail To Plead Motive*

In order to show that Eilon and/or Neumann had a motive to commit the fraud Plaintiffs attempt to plead, Plaintiffs must allege "that the officers in question benefitted in some concrete and personal way from the purported fraud."  *Mylan*, 2018 WL 1595985, at *11.  "Motives that are common to most corporate officers, such as the desire for the corporation to appear profitable and the desire to keep stock prices high to increase officer compensation, do not constitute 'motive' for purposes of this inquiry."  *Id.* (internal citations omitted).

With respect to Eilon, Plaintiffs allege merely that he caused Yes to freeze or delay payments to suppliers, which inflated Yes's free cash flow.  ACAC ¶¶ 4, 43, 149.  But Plaintiffs do not allege any facts showing how there was anything improper in the alleged timing of payment to vendors or how its alleged effect on free cash flows was improper.  Plaintiffs also

allege that Eilon acted on orders from Eurocom, ACAC ¶ 43, and Elovitch, ACAC ¶ 149, but plead no factual detail as to how that matters for the claims stated against the Yes Defendants. With respect to Neumann, Plaintiffs do not allege that he engaged in any affirmative acts that could have affected Yes's free cash flow.

Nowhere do Plaintiffs allege, even in a conclusory way, what "concrete and personal" benefit Eilon or Neumann stood to gain by participating in the purported fraud. Plaintiffs allege only that Eurocom and its indirect owner, Elovitch, would benefit from the alleged manipulation of Yes's free cash flow by triggering Bezeq's payment obligations, which ultimately flowed to Eurocom and Elovitch. ACAC ¶¶ 136-139. However, allegations as to *other* defendants' motives plainly cannot support any inference of scienter (let alone the requisite strong inference of scienter) on the part of Eilon or Neumann.

### 2. *Plaintiffs Fail To Plead Strong Circumstantial Evidence Of Conscious Misbehavior Or Recklessness*

In order to successfully allege conscious misbehavior or recklessness, Plaintiffs must show that defendants' conduct "is highly unreasonable and . . . represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001). In the absence of motive, "the strength of the circumstantial allegations must be correspondingly greater." *Id.* (internal citations omitted).

With respect to Eilon, Plaintiffs' limited allegation that he delayed payments, without more, does not show "an extreme departure from the standards of ordinary care." *Id.* With respect to Neumann, Plaintiffs' attempt to base an allegation of knowledge or recklessness merely on his status as Yes's CFO, ACAC ¶ 151, similarly fails. Plaintiffs seek to support this allegation by claiming that the Bezeq-Yes Merger was "at the forefront of the attention of

Defendant BComm, Bezeq, and Yes' executives, especially its CFOs," and that monitoring of Yes's free cash flow was within his purview as Yes's CFO. *Id*. But Plaintiffs cannot categorically plead scienter based on nothing more than Neumann's job title. *Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank of Commerce*, 694 F. Supp. 2d 287, 300 (S.D.N.Y. 2010) ("accusations founded on nothing more than a defendant's corporate position are entitled to no weight"); *In re Sotheby's Holdings, Inc.*, 2000 WL 1234601, at *7 (S.D.N.Y. Aug. 31, 2000) ("It is well established that boilerplate allegations that defendants knew or should have known of fraudulent conduct based solely on their . . . executive positions are insufficient to plead scienter.").

Finally, Plaintiffs' allegations with respect to the ongoing Israeli proceedings, including allegations regarding the ISA's investigation, its recommendation regarding potential criminal indictments, or that Eilon and Neumann were consensually placed under house arrest, cannot overcome the weakness of Plaintiffs' scienter allegations with respect to Eilon and Neumann. As this Court recognized in *In re ITT Educ. Servs., Inc. Sec. Litig.*, allegations regarding ongoing government investigations "are not tremendously probative." 34 F. Supp. 3d 298, 309 (S.D.N.Y. 2014) (Oetken, J.). There, plaintiffs alleged that the defendant was under investigation by the SEC, the Massachusetts Attorney General and the Consumer Financial Protection Bureau, and had received subpoenas from 12 states in addition to Massachusetts. *Id*. This Court gave little weight to those investigations because "[i]t [was] not clear whether, or how much, each investigation hinge[d] on the Defendants' states of mind—which is the key issue—and, either way, none [had] yet been resolved." *Id.* Those considerations apply *a fortiori* here. Plaintiffs fail to identify even what provisions of Israeli law the ISA believes Eilon and Neumann may have breached, instead listing the various provisions under which the ISA recommended

-19-

indicting various individuals as a single, "cumulative[]" list.  ACAC ¶ 130.  As Plaintiffs' own

pleadings make clear, this list includes non-fraud claims.  *See, e.g.*, ACAC ¶¶ 127, 130, 132.

Plaintiffs also fail to plead what evidentiary standard Israeli law imposes with respect to mental

state.  Finally, and importantly, Plaintiffs do not allege that Israeli prosecutors have done

anything to follow the ISA's recommendation to indict Eilon or Neumann (or anyone else, for

that matter), much less that Eilon or Neumann have been convicted of any crimes under Israeli

law.

Thus, even coupled with the rest of Plaintiffs' bare and conclusory allegations regarding

Eilon and Neumann's scienter, Plaintiffs' allegations regarding the Israeli proceedings fail to

show that Eilon or Neumann's conduct was "highly unreasonable" or represented "an extreme

departure from the standards of ordinary care," as required to establish scienter in the absence of

motive.  *Kalnit*, 264 F.3d at 142.

## III.    PLAINTIFFS' SECTION 20 CLAIMS AGAINST THE YES DEFENDANTS FAIL

Plaintiffs also seek to hold the Yes Defendants liable for BComm's alleged misstatements

under Sections 20(a) and 20(b) of the Exchange Act.  ACAC ¶¶ 178-85.  Here too, Plaintiffs fail

to state a claim.

### A.    Plaintiffs Fail To Plead The Yes Defendants Are Liable Under Section 20(a)

In order to state a claim under Section 20(a) "a plaintiff must allege facts showing (1) an

underlying primary violation of the securities laws by the controlled person; (2) control over the

controlled person; and (3) that the controlling person was, in some meaningful sense, a culpable

participant in the controlled person's primary violation."  *Menaldi v. Och-Ziff Capital Mgmt.*

*Grp. LLC*, 164 F. Supp. 3d 568, 586 (S.D.N.Y. 2016) (internal citations omitted).  With respect

to the Yes Defendants, Plaintiffs fail to allege facts establishing any of these three

requirements.[12]

### 1. *Plaintiffs Fail To Adequately Allege That Any Of The Yes Defendants Exercised Actual Control Over BComm*

In a Section 20(a) claim, "Control over a primary violator may be established by showing that the defendant possessed the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise." *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1472-73 (2d Cir. 1996) (internal citations omitted). Furthermore, plaintiffs must allege that defendants "exercised *actual* control over the matters at issue." *In re Banco Bradesco, S.A. Sec. Litig.*, 277 F. Supp. 3d 600, 669 (S.D.N.Y. 2018) (internal citations omitted) (emphasis in original). "The mere exercise of influence . . . is not sufficient to establish control," *Youngers v. Virtus Inv. Partners Inc.*, 195 F. Supp. 3d 499, 524 (S.D.N.Y. 2016), nor is "officer or director status alone" sufficient, because control person liability requires "a real, de facto power." *Banco Bradesco*, 277 F. Supp. 3d at 670.

The Amended Complaint is devoid of any well-pled allegations that Eilon or Neumann exercised any control over BComm's alleged misstatements or omissions. Eilon and Neumann were officers of an indirect subsidiary of BComm. Plaintiffs plead no facts showing that Eilon or Neumann even had the ability to control BComm "through the ownership of voting securities, by contract, or otherwise," *First Jersey Sec., Inc.*, 101 F.3d at 1473, let alone that they did so. Rather, Plaintiffs conclusorily allege that Eilon and Neumann, purportedly along with all other "Individual Defendants," "participated in the operation and management of BComm," and held

---

[12] The Yes Defendants rely on and incorporate by reference BComm's arguments as to Plaintiffs' failure to state a plausible Section 10(b) claim against BComm. *See* Mem. of Law in Support of Def. B Commc'ns Ltd.'s Mot. to Dismiss or Stay at 9-25, ECF No. 36; Reply Mem. of Law in Further Support of Def. B Commc'ns Ltd.'s Mot. to Dismiss or Stay at 1-14, ECF No. 54. Since Plaintiffs have not plausibly alleged an underlying primary violation of the securities laws by BComm, Plaintiffs' Section 20(a) claims must be dismissed.

"positions of control and authority as senior officers."  ACAC ¶¶ 180, 182.  But, Eilon and

Neumann were officers of an indirect subsidiary of BComm, *not* of BComm itself.  Such

unsupported conclusory allegations should be afforded no weight, and in any event, allegations

regarding status as an officer are insufficient to establish control.  *Banco Bradesco*, 277 F. Supp.

3d at 670.

In sum, Eilon and Neumann are only employees of a subsidiary of BComm's partially-

owned subsidiary.  Plaintiffs' theory that the subsidiary of a subsidiary and its officers have

"actual control" over BComm is both far-fetched and wholly unsubstantiated, ignores the

corporate form, and inverts traditional notions of control.  It thus must be rejected.

### 2. Plaintiffs Fail To Show That Yes, Eilon Or Neumann Were Culpable Participants In BComm's Alleged Misstatements Or Omissions

In *Menaldi*, this Court observed that "Courts in this District disagree about whether

culpable participation must be pleaded with particularity, or instead, is an affirmative defense in

which the burden to establish the absence of culpable conduct shifts to the defense."  164 F.

Supp. 3d at 587.  There the Court found that plaintiffs had alleged culpable participation by

defendants under either pleading standard and declined to resolve the debate.  *Id*.  Because

Plaintiffs fail to allege any facts showing that Yes, Elion or Neumann exerted control over

BComm or to plausibly allege a claim for a primary violation by BComm, the Court need not

resolve the debate here.  Moreover, in light of the paucity of well-pled allegations regarding *any*

mental state by any of the Yes Defendants, *see* discussion *supra*, Plaintiffs cannot show culpable

participation by the Yes Defendants under either standard.

### B. Plaintiffs Fail To State A Claim Against The Yes Defendants Under Section 20(b)

Recognizing the weakness of their claims under Sections 10(b) and 20(a), Plaintiffs also

seek to impose liability on the Yes Defendants under Section 20(b) of the Exchange Act.

"Few reported cases discuss the applicability of Section 20(b)," *Cohen v. Citibank, N.A.*, 954 F. Supp. 621, 630 (S.D.N.Y. 1996), and no court that the Yes Defendants are aware of has imposed liability on a defendant for violations of Section 20(b).  Indeed, upon a plain reading of the statute, Section 20(b) does not provide for a private cause of action.  In stark contrast to Section 20(a), which explicitly provides for the liability of control persons, 15 U.S.C. § 78t(a) (control persons "shall also be liable jointly and severally" with the controlled person "to any person to whom such controlled person is liable"), Section 20(b) makes no reference to liability, merely providing that "It shall be unlawful for any person, directly or indirectly, to do any act or thing which it would be unlawful for such person to do under the provisions of this chapter or any rule or regulation thereunder through or by means of any other person."  15 U.S.C. § 78t(b).[13]

Even if Section 20(b) does provide an implied private right of action, Plaintiffs fail to state a claim under it.  The few cases that do discuss Section 20(b) have required both an underlying violation and control.  *See SEC v. Coffey*, 493 F.2d 1304, 1318 (6th Cir. 1974) ("Under section 20(b), there must be shown to have been knowing use of a controlled person by a controlling person before a controlling person comes within its ambit."); *Cohen*, 954 F. Supp. at 630 (Section 20(b) "requires a showing that a 'controlling person knowingly used the controlled person to commit the illegal act.'") (citing *Moss v. Morgan Stanley*, 553 F. Supp. 1347, 1362 (S.D.N.Y. 1983), *aff'd*, 719 F.2d 5 (1983), *cert. denied*, 465 U.S. 1025 (1984); *Union Cent. Life Ins. Co. v. Credit Suisse Sec. (USA), LLC*, No. 11 Civ. 2327 (GBD), 2013 WL 1342529, at *9 (S.D.N.Y. Mar. 29, 2013) (dismissing Section 20(b) claim because plaintiffs

---

[13] At least two courts have considered—though declined to resolve—whether Section 20(b) provides for a private cause of action.  *See In re World Wrestling Entm't, Inc. Sec. Litig.*, 180 F. Supp. 3d 157, 189 (D. Conn. 2016); *City of Pontiac Gen. Emps.' Ret. Sys. v. Lockheed Martin Corp.*, 875 F. Supp. 2d 359, 375 n. 4 (S.D.N.Y. 2012).

failed to state any unlawful act); *see also City of Pontiac Gen. Emps.' Ret. Sys.*, 875 F. Supp. 2d

at 375 (analyzing and dismissing 20(a) and 20(b) claims without distinguishing between them).

Accordingly, for the same reasons that Plaintiffs' Section 20(a) claim fails as to the Yes

Defendants—in particular, the absence of an underlying primary violation and Plaintiffs' failure

to show that the Yes Defendants controlled BComm's statements—Plaintiffs' Section 20(b)

claim against the Yes Defendants fails as well.

## IV.    IN THE ALTERNATIVE, THIS ACTION SHOULD BE STAYED PENDING THE RESOLUTION OF RELATED LEGAL PROCEEDINGS IN ISRAEL

In the event that this Court allows the claims against the Yes Defendants to proceed, the

Yes Defendants join in BComm's motion to stay.  The Yes Defendants rely on and incorporate

by reference BComm's arguments as to why the action should be stayed pending resolution of

related legal proceedings in Israel.  *See* Mem. of Law in Support of Def. B Commc'ns Ltd.'s

Mot. to Dismiss or Stay at 25-35, ECF No. 36; Reply Mem. of Law in Further Support of Def. B

Commc'ns Ltd.'s Mot. to Dismiss or Stay at 14-15, ECF No. 54.  This case significantly

overlaps with criminal investigations in Israel, and the Israeli authorities have supported stays of

similar civil cases in Israel.  In light of the ongoing legal proceedings in Israel, denying a stay

would cause substantial prejudice to the Yes Defendants.  As BComm explains, the Yes

Defendants, like BComm, "will be unable to obtain material assistance or testimony from certain

Individual Defendants who are barred by Israeli law from testifying or discussing this matter or

who likely will assert privileges against self-incrimination."  Mem. of Law in Support of Def. B

Commc'ns Ltd.'s Mot. to Dismiss or Stay at 29, ECF No. 36.  Moreover, litigating in the United

States while substantially similar issues are being investigated and litigated in Israel will lead to

significant duplication efforts and waste the time and resources of the Court and the parties.

Thus, denial of a stay at this juncture would significantly burden both the Court and the Yes

Defendants.  By contrast, a stay causes no prejudice to Plaintiffs, who commenced this Action over a year ago, but made no attempt to serve the Yes Defendants until after BComm moved to dismiss the Amended Complaint or stay the Action.

## **CONCLUSION**

For the foregoing reasons, the claims asserted against the Yes Defendants in the Amended Complaint should be dismissed with prejudice, or in the alternative, the Action should be stayed pending resolution of the related legal proceedings in Israel.

Dated: New York, New York
      July 12, 2018

                      **CLEARY GOTTLIEB STEEN & HAMILTON LLP**

              By:    /s/ Roger A. Cooper
                  Roger A. Cooper
                  (racooper@cgsh.com)
                  Jared Gerber
                  (jgerber@cgsh.com)
                  Martha E. Vega-Gonzalez
                  (mvega-gonzalez@cgsh.com)

                  One Liberty Plaza
                  New York, New York  10006
                  T: 212-225-2000

                  *Counsel for Defendants D.B.S. Satellite Services (1998) Ltd., Ron Eilon and Michael Neumann, sued here as Micky Neiman.*