
Cara David
Of Counsel

December 19, 2019

**VIA ECF**

Hon. J. Paul Oetken, U.S.D.J.
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square, Courtroom 706
New York, NY 10007

RE: *Maleeff, et al., v. B Communications Ltd., et al.*, No. 17-cv-04937 (JPO) (S.D.N.Y.)

Dear Judge Oetken:

We represent lead plaintiffs Rex and Roberta Ling Living Trust u/a December 6, 1990, as Amended, John Taylor Jones, and David Thomas Jones (collectively, "Lead Plaintiffs") in the above-referenced action ("Action"). We write in response to the Court's December 5 request that the parties meet-and-confer regarding discovery bearing on the four-factor control test outlined in *Sicav v. Wang*, No. 12 Civ. 6682 (PAE), 2014 WL 2624753 (S.D.N.Y. June 12, 2014) (Englemeyer, J.). (The transcript of the December 5 telephonic conference with the Court (the "December 5 Conference") is ECF No. 112.) The *Sicav* court examined:

1. The degree of ownership and control exercised by the parent over the subsidiary;
2. A showing that the two entities operate as one;
3. Demonstrated access to documents in the ordinary course of business; and
4. An agency relationship.

*Id.* at *4. The Court asked that the parties submit letters regarding discovery and briefing on these issues. Unfortunately, BComm is unwilling to produce sufficient documents prior to briefing.

### 1. Counsel's Follow-Up Discussions Regarding This Dispute

Counsel for Defendant B Communications Ltd. ("BComm") and I met-and-conferred directly following the December 5 Conference about what documents we would require. With regard to "access to documents," I made clear to BComm's lead counsel Jeffrey Boxer that these documents would need to include any requests from BComm officers and directors to its subsidiary, Bezeq The Israeli Telecommunications Corporation ("Bezeq"),[1] for documents. We

---

[1] The definition of Bezeq for these purposes includes D.B.S. Satellite Services (1998) Ltd. ("Yes").

cdavid@pomlaw.com
600 Third Avenue, New York, New York 10016   tel: 212.661.1100   www.pomerantzlaw.com
NEW YORK        CHICAGO        LOS ANGELES        PARIS

325


both understood—and agreed—that Bezeq sent BComm documents for SEC filings. But the process surrounding this, and whether BComm and Bezeq exchanged documents or information at other times during the year, were unknowns. At that time, according to Mr. Boxer, he did not know if documents evidencing requests from BComm to Bezeq existed. Nor did he know what documents existed that would shed light on the other factors. Mr. Boxer said he would consult with his client and get back to me the following week.

At this time, I asked Mr. Boxer if he would produce, in this round of discovery, documents regarding the relationship between BComm and its parent entities, Eurocom and Internet Gold. As noted in the letter Lead Plaintiffs sent to the Court on November 25, 2019 (ECF No. 109), Lead Plaintiffs were not at that time seeking a Court ruling on BComm's relationship with those entities because we did not yet have enough information regarding the interrelationship between the entities to apply the relevant case law. (*Id.* at 2 n.4.) However, given that this Court was now going to engage in an analysis of the four-factor test regarding the relationship between BComm and Bezeq, I explained to Mr. Boxer that, for the sake of efficiency, we should brief the relationship between BComm and its parents at the same time we brief the relationship between BComm and its subsidiaries. Mr. Boxer said he would take it under advisement.

As of last Friday, December 13, I had yet to hear from BComm. I called Mr. Boxer's associate, Jacob Nemon, to discuss what their firm had ascertained from their client. Mr. Nemon would not provide me any information beyond saying that a letter from his firm would be forthcoming Monday or Tuesday of this week. I raised concerns regarding the timing. Mr. Nemon then said that we "had all the documents" we needed because the majority of information was public. As I had with Mr. Boxer the prior week, I expressed our disagreement with this proposition. In particular, Mr. Nemon and I had a debate regarding the third factor, the same factor Mr. Boxer and I discussed at length the week prior. I stressed the importance of knowing whether BComm requested documents and other specifics regarding the flow of information.

On Tuesday, December 17, I again reached out to Mr. Nemon regarding the status of his firm's response, given the upcoming submission deadline set by the Court. We later received a letter (the Letter, Exhibit A) and *a single PDF*, which included multiple public documents, from counsel for BComm.

2. **BComm's Insufficient Response**

The Letter purports to describe the public documents in the *single PDF* and how they impact the *Sicav* test.[2] It also states:

> In addition, BComm intends to provide Plaintiffs with copies of communications BComm received from Bezeq in which Bezeq provided

---

[2] Lead Plaintiffs disagree with assertions in the Letter and these documents. However, as this letter is simply about the required production prior to briefing, we have chosen not to substantively debate the contents of the Letter.



> BComm with Bezeq's quarterly financial data and reports to be incorporated into BComm's consolidated financial statements. We believe that the document production resolves any discovery issues relating to Rule 34 control that were addressed at the Court conference.

ECF No. 112 at 2. In other words, the only documents BComm is willing to provide pre-briefing are one-sided communications of whose existence there is no debate. (BComm did not even provide a timeframe for this production, but upon inquiry stated they "hope to produce them by year's end.") I later asked, via email, if BComm was willing to make a representation "that no BComm officer ever communicated with Bezeq to request documents." No such representation was forthcoming.

The Letter did not mention any production regarding BComm's relationship with its parent companies. After inquiry, our request that BComm also produce those documents before the end of the year was denied.

We requested a 30(b)(6) deposition "about [BComm's] processes and practices with respect to the creation and custody of, and access to, documents including but not limited to the extent to which [BComm], or its agents, have had access to documents of its subsidiaries." *Sicav*, 2014 WL 2624753 at *3. This is the exact deposition that Judge Engelmayer ordered in *Sicav*, the case on which BComm relies. *Id.* The resulting deposition proved central to the court's analysis in that case. *Id.* Indeed, courts in this circuit routinely analyze deposition testimony while analyzing the four-factor test. *See, e.g., id.*; *Hickey Freeman Tailored Clothing, Inc. v. Chargeurs*, S.A., No. 17 Civ. 5754 (KPF), 2018 WL 5729297 (S.D.N.Y. Nov. 01, 2018); *Huang v. iTV Media, Inc.*, No. 13-CV-3439 (JFB) (SIL), 2017 WL 706194 (E.D.N.Y. Feb. 22, 2017). Nevertheless, BComm's counsel declined our request, distinguishing this case from *Sicav* because "discovery is not complete."

In summary, BComm is willing to provide ***no new information*** prior to briefing. The only non-public documents they are willing to provide are transmissions of quarterly filings from Bezeq to BComm, the existence of which both parties acknowledged on December 5.

### 3. **BComm's Lack of Production Thus Far**

BComm served Objections and Responses to the Requests on August 1, 2019, over four-and-a-half months ago. To date, other than documents to back up the expert report, Lead Plaintiffs have received ***one single PDF*** of public documents.

Prior to the December 5 Conference, we requested on multiple occasions an update on when we would receive documents from BComm, both in email and during phone conversations. No timeline has been given.

On the December 5 Conference with this Court, BComm's counsel said a reason they had produced absolutely no substantive documents was that Lead Plaintiffs first sent an e-discovery

Hon. J. Paul Oetken
December 19, 2019
Page 4



protocol on November 14. (ECF No. 112 at 8:8-10.) Lead Plaintiffs produced all their documents prior to entry of an e-discovery protocol. BComm never informed Lead Plaintiffs that they were waiting for entry of an e-discovery protocol before producing documents. It has been over a month and BComm has not even provided comments on that protocol, despite my inquiring as to when Lead Plaintiffs could expect to receive those comments.

Additionally, on the December 5 Conference, BComm blamed the lack of document production on the fact that Lead Plaintiffs had not yet provided search terms. (*Id.* at 8:10.) However, as I raised on the call with the Court, BComm never requested we provide search terms. (*Id.* at 12:3-8.) If BComm was truly waiting for search terms from Lead Plaintiffs, it is inconceivable that counsel would not have responded to any of my prior inquiries about the status of document production by letting me know that my firm was the cause of the delay. Additionally, certain documents BComm has agreed to produce, such as an organizational chart, typically do not require use of search terms. Yet no organizational chart has been produced. Nevertheless, during our meet-and-confer after the December 5 Conference, I agreed to draft search terms. They were provided to BComm, in Hebrew, on December 17.

However, this Court should not let BComm delay any further. BComm has repeatedly represented during meet-and-confers that they will not be producing many documents. On the December 5 Conference, Mr. Boxer made the representation:

> We can produce some documents. Certainly BComm was making public filings, and we can produce documents relating to the public filings and the public filings themselves. . . . [T]here are not going to be significant documents of the type that the defendants have sought in their document requests that BComm itself has.

ECF No. 112 at 8:14-19. If there are so few documents, surely BComm can produce them with great speed.[3]

All fact discovery is scheduled to be completed in this Action by February 26, 2020. (ECF No. 92.) According to BComm's own representation, the only documents it even hopes to produce by 2020 are one-sided transmissions of corporate filings.

As previously detailed, BComm is refusing to provide a 30(b)(6) deponent on the topic of control until it completes production. However, it offers no indication of when that will be.

---

[3] While the parties have yet to negotiate the proposed search terms, Lead Plaintiffs are available at BComm's convenience to do so and, additionally, would happily accept documents on a rolling basis, starting with documents resulting from easily agreed-upon search terms. Lead Plaintiffs would also stipulate to the use of TAR or any similar electronic processing which would allow BComm to more quickly produce documents. And, again, according to BComm's own representations, the entire universe of documents is limited.



Additionally, if BComm's representations are to be taken on face value, BComm is planning on producing almost no documents. This deposition cannot wait. Lead Plaintiffs are in no better position to brief these issues than they were during the December 5 Conference, as BComm has agreed to produce *no new information*.

We ask the Court to require BComm to produce any documents from BComm officers and directors to Bezeq within 15 days. We further ask the Court to order a 30(b)(6) deposition on the control issues (along the lines of the one Judge Englemayer ordered) within 20 days. We further ask the Court to set a date certain within 30 days by which BComm will substantially complete its document production.

If the Court would like to have another telephonic conference, we are available at the Court's convenience, even over the holiday weeks.

Respectfully submitted,

*s/ Cara David*
Cara David


cc: All counsel of record (by ECF)

> Granted. Defendant B Communications Ltd. ("BComm") is directed to produce any requests for documents from BComm to Bezeq The Israel Telecommunication Corporation Ltd. on or before January 22, 2020. Plaintiffs are directed to notice a Rule 30(b)(6) deposition on the control issues on or before January 27, 2020. *See Sicav v. Wang*, 2014 WL 2624753, at *3 (S.D.N.Y. June 12, 2014). BComm will complete all document production, absent unforeseen circumstances, on or before February 6, 2020. The parties will file a joint letter on or before February 10, 2020, updating the Court on the status of the dispute and, if necessary, proposing a briefing schedule for a motion to compel. Finally, in light of this discovery dispute, the discovery deadlines are stayed. A new deadline will be set after resolution of this dispute.
> The Clerk of Court is directed to close the motion at Docket Number 116.
> So ordered.
> January 7, 2020

_____
J. PAUL OETKEN
United States District Judge