**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| REX AND ROBERTA LING LIVING TRUST u/a DECEMBER 6, 1990, as AMENDED, JOHN TAYLOR JONES, and DAVID THOMAS JONES, Individually and on Behalf of All Others Similarly Situated,<br><br>      Plaintiffs,<br><br>  -against-<br><br>B COMMUNICATIONS LTD., EUROCOM COMMUNICATIONS LTD., SHAUL ELOVITCH, and OR ELOVITCH,<br><br>      Defendants. | Case No. 1:17-cv-04937 (JPO)<br><br><br>ECF CASE |

### LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

## TABLE OF CONTENTS

**Page(s)**

I.     PRELIMINARY STATEMENT ................................................................. 1

II.    SUMMARY OF THE LITIGATION AND SETTLEMENT ............................. 4

    A.     Procedural History Of The Litigation ....................................... 4

    B.     Summary Of Key Terms Of The Proposed Settlement ...................... 6

        1.     Relief to Class Members and Release of Claims ........................ 6

        2.     Class Notice and Settlement Administration ............................. 7

            a)     Notice ...................................................................... 7

            b)     Administration ....................................................... 7

        3.     Papers in Support of the Settlement, Award of Lead Counsel Fees and Expenses, and Plaintiff Compensatory Awards ......................... 8

        4.     Objections ....................................................................... 8

        5.     Opt Outs ......................................................................... 9

        6.     Termination of the Settlement .............................................. 9

        7.     No Admission of Liability ................................................... 9

III.   THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL........... 9

    A.     The Courts Favor Settlements Of Complex Class Actions..................... 9

    B.     The Proposed Settlement Merits Preliminary Approval ..................... 11

        1.     The Proposed Settlement Recovery Is Substantively Fair .............. 11

            a)     The Settlement Was Negotiated By Well-Informed Counsel And Thus Warrants A Presumption Of Fairness .......................... 12

            b)     The Settlement Is Within The Reasonable Range Of Recovery... 13

                1)     *The Complexity, Expense and Likely Duration of the Litigation*............................................................... 14

                2)     *Stage of Proceedings and Amount of Discovery Completed* .. 14

                3)     *The Risks of Establishing Liability & Damages* .................... 15

                4)     *The Risks of Maintaining the Class Action Through Trial* ..... 16

                5)     *Reasonableness of the Settlement* ........................................ 16

IV.    THE PROPOSED CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES............................................................................................. 17

    A.     The Proposed Class Meets the Requirements of Rules 23(a) and 23(b)(3) .......... 17

        1.     The Class Satisfies the Requirements of Rule 23(a)................................ 18

|  |  | 2. | The Class Satisfies the Requirements of Rule 23(b)(3) | 21 |
|  | B. | Nationwide Class Certification Is Appropriate for Settlement Purposes | 22 |
|  | C. | The Court Should Appoint Lead Counsel as Counsel for the Class | 22 |
| V. | THE COURT SHOULD APPROVE THE PROPOSED FORM AND METHOD OF CLASS NOTICE | 23 |
|  | A. | Notice By Direct Mail And Publication Is Appropriate | 23 |
|  | B. | The Proposed Notice Adequately Informs Class Members Of Their Rights In This Litigation | 24 |
| PROPOSED SCHEDULE OF EVENTS | 26 |
| CONCLUSION | 26 |

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)........................................................................................18, 21

*Basic Inc. v. Levinson*,
  485 U.S. 224 (1988)................................................................................................16

*Bourlas v. Davis Law Assocs.*,
  237 F.R.D. 345 (E.D.N.Y. 2006).....................................................................18, 19

*Cammer v. Bloom*,
  711 F. Supp. 1264 (D.N.J. 1989).........................................................................16

*Carson v. Am. Brands, Inc.*,
  450 U.S. 79 (1981)................................................................................................10

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed
  Care, L.L.C.*,
  504 F.3d 229 (2d Cir. 2007).................................................................................18

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by Goldberger v.
  Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).......................................11, 13, 16

*Clark v. Ecolab Inc.*,
  No. 07 Civ. 8623 (PAC), 2010 U.S. Dist. LEXIS 47036 (S.D.N.Y. May 11,
  2010).......................................................................................................................12

*Diaz v. E. Locating Serv. Inc.*,
  No. 1:10-cv-04082-JCF, 2010 U.S. Dist. LEXIS 139136 (S.D.N.Y. Nov. 29,
  2010).......................................................................................................................12

*Dura Pharm., Inc. v. Broudo*,
  544 U.S. 336 (2005)................................................................................................17

*Fleisher v. Phoenix Life Ins. Co.*,
  No. 11-cv-8405 (CM) 2015 U.S. Dist. LEXIS 121574 (S.D.N.Y. Sept. 9,
  2015).......................................................................................................................10

*Halliburton Co. v. Erica P. John Fund, Inc.*,
  573 U.S. 258 (2014)................................................................................................14

*In re Am. Bank Note Holographics, Inc.*,
  127 F. Supp. 2d 418 (S.D.N.Y. 2001) ..................................................................15

*In re China Sunergy Sec. Litig.*,
  No. 07 Civ. 78595 (DAB), 2011 U.S. Dist. LEXIS 53007 (S.D.N.Y. May 13,
  2011) ......................................................................................................................3

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
  No. 05 CIV 10240 CM, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ...................10

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  245 F.R.D. 147 (S.D.N.Y. 2007), *aff'd in part, vacated in part on other
  grounds*, 574 F.3d 29 (2d Cir. 2009) ..............................................................20, 21

*In re Frontier Ins. Grp., Inc. Sec. Litig.*,
  172 F.R.D. 31 (E.D.N.Y. 1997) ............................................................................19

*In re Marsh ERISA Litig.*,
  265 F.R.D. 128 (S.D.N.Y. 2010) ..........................................................................23

*In re Mego Fin Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) ................................................................................16

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
  No. 02 MDL 1484 (JFK), 2007 U.S. Dist. LEXIS 9450 (S.D.N.Y. Jan. 31,
  2007) ......................................................................................................................3

*In re Oxford Health Plans, Inc.*,
  191 F.R.D. 369 (S.D.N.Y. 2000) ..........................................................................20

*In re Rite Aid Corp. Sec. Litig.*,
  146 F. Supp. 2d 706 (E.D. Pa. 2001) ...................................................................16

*In re Sadia, S.A. Sec. Litig.*,
  269 F.R.D. 298 (S.D.N.Y. 2010) ..........................................................................19

*In re Salomon Analyst Metromedia Litig.*,
  544 F.3d 474 (2d Cir. 2008), *abrogated on other grounds by Amgen Inc. v.
  Conn. Ret. Plans & Tr. Funds,* 568 U.S. 455 (2013) ............................................21

*In re SCOR Holding (Switz.) AG Litig.*,
  537 F Supp. 2d 556 (S.D.N.Y. 2008) ...................................................................20

*Mangone v. First USA Bank*,
  206 F.R.D. 222 (S.D. Ill. 2001) ............................................................................24

*Marisol A. v. Guiliani*,
  126 F.3d 372 (2d Cir. 1997) ................................................................................18

*Menkes v. Stolt-Nielsen S.A.*,
   270 F.R.D. 80 (D. Conn. 2010)...................................................................................18, 22

*Mullane v. Cent. Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950).........................................................................................................23

*Palacio v. E\*TRADE Fin. Corp.*,
   No. 10 Civ. 4030 (LAP) (DCF), 2012 U.S. Dist. LEXIS 88019 (S.D.N.Y.
   June 22, 2012)..............................................................................................................9, 12

*Police & Fire Ret. Sys. of City of Detroit v. SafeNet, Inc.*,
   645 F. Supp. 2d 210 (S.D.N.Y. 2009)..............................................................................15

*Rex & Roberta Ling Living Tr. v. B Commc'ns Ltd.*,
   346 F. Supp. 3d 389 (S.D.N.Y. 2018)...........................................................................5, 6

*Soberal-Perez v. Heckler*,
   717 F.2d 36 (2d Cir. 1983)...............................................................................................23

*Spann v. AOL Time Warner, Inc.*,
   No. 02 Civ. 8238 (DLC), 2005 U.S. Dist. LEXIS 10848 (S.D.N.Y. June 7,
   2005) .................................................................................................................................10

*Thompson v. Metro. Life Ins. Co.*,
   216 F.R.D. 55 (S.D.N.Y. 2003) .......................................................................................13

*Wagner v. Barrick Gold Corp.*,
   251 F.R.D. 112 (S.D.N.Y. 2008) .....................................................................................20

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005)..........................................................................................10, 11

*Weinberger v. Kendrick*,
   698 F.2d 61 (2d Cir. 1982)...............................................................................................18

*Westchester Indep. Living Ctr., Inc. v. State Univ. of N.Y., Purchase Coll.*,
   331 F.R.D. 279 (S.D.N.Y. 2019) .....................................................................................19

**Statutes**

15 U.S.C. § 78...................................................................................................4, 5, 20, 22, 25

Sarbanes-Oxley Act of 2002....................................................................................................5

**Rules**

Fed. R. Civ. P. 23 ............................................................................................... *passim*

**Other Authorities**

17 C.F.R. § 240.10b-5.............................................................................................4, 5

Cornerstone Research, *Securities Class Action Settlements — 2016 Review and
    Analysis* .......................................................................................................................3

Cornerstone Research, *Securities Class Action Settlements: 2017 Review and
    Analysis* .....................................................................................................................17

*Manual for Complex Litigation (Fourth)* ..........................................................11, 13, 23

*Manual for Complex Litigation (Third)* (1995). ........................................................11

*Newberg on Class Actions* (4th ed. 2002).........................................................9, 11, 24

Plaintiffs Rex and Roberta Ling Living Trust u/a December 6,1990, as Amended, John Taylor Jones, and David Thomas Jones (together, "Lead Plaintiffs"), individually and on behalf of all Class Members, respectfully submit this memorandum in support of Lead Plaintiffs' unopposed motion seeking an order: (i) granting preliminary approval of the proposed Settlement as set forth in the Stipulation of Settlement dated March 3, 2020 (the "Stipulation")[1]; (ii) granting conditional certification of the Class, certifying Lead Plaintiffs as class representatives, and appointing Lead Counsel as class counsel for purposes of the Settlement; (iii) granting approval of the form and manner of giving notice of the proposed Settlement to the Class Members; and (iv) setting a date for a Settlement Hearing and deadlines for the mailing and publication of the Notice, the filing of Class Member objections, the filing of Class Member opt-out notices, the filing of Lead Plaintiffs' motion for final approval of the Settlement, and the filing of Lead Counsel's application for attorneys' fees and expenses.  While Defendant B Communications Ltd. ("BComm") does not oppose the relief sought herein, the analysis and characterizations of the litigation and Settlement are provided only on behalf of Lead Plaintiffs, individually and on behalf of all Class Members, and do not necessarily reflect the views of BComm.

## I.    PRELIMINARY STATEMENT

As the Court is well aware, to consummate a class settlement, Lead Plaintiffs must: (a) mail court-ordered notice to the class while simultaneously publishing a summary notice; and (b) solicit objections, exclusions, or claims.  With the responses of Class Members in hand, the

---

[1] Unless otherwise defined, all capitalized terms herein have the same meanings as set forth in the Stipulation, attached as Exhibit 1 to the Declaration of Jeremy A. Lieberman ("Lieberman Declaration"), which is filed concurrently herewith.  Defendants Shaul Elovitch, Or Elovitch and Eurocom Communications Ltd. have never appeared in the action, but are included in the definition of "Defendants," as they are in the Stipulation.

Court must then hold a hearing to determine whether the Settlement is fair, reasonable, and adequate such that it should be formally approved.

Pursuant to the Stipulation, filed contemporaneously herewith, Lead Plaintiffs and BComm have agreed to settle the Litigation for a payment by BComm of one million two hundred thousand U.S. dollars ($1,200,000), as described more fully in the Stipulation, in return for a release of all claims. The Stipulation is the result of extensive arms' length negotiations between highly experienced counsel.

By this motion, Lead Plaintiffs seek to begin the settlement approval process, through an order:

• Granting preliminary approval of the Settlement, the terms of which are set forth in the Stipulation, which the Court should order because the Settlement Amount of $1.2 million "falls within the range of possible approval";

• Certifying a class for settlement purposes only, appointing Lead Plaintiffs as the Class Representatives, and appointing Pomerantz LLP ("Pomerantz") as Class Counsel, which the Court should order because the prerequisites of Fed. R. Civ. P. 23 are met;

• Approving the Parties' proposed form and method of giving Class Members notice of the action and proposed Settlement, which the Court should order because the Notice and the plan to provide notice meet all applicable requirements;

• Setting a hearing on whether the Court should grant final approval of the Settlement, dismiss claims against the Defendants and approve the release of claims against all Releasee(s), enter judgment, and award attorneys' fees and expenses to Lead Counsel.

*See* Exhibit A to the Stipulation (Proposed Preliminary Approval Order).

The Settlement is an excellent result for Class members. Lead Plaintiffs estimate that the Settlement returns over 17% of estimated damages – a result which is above settlements for similar securities class actions. *See* Cornerstone Research, *Securities Class Action Settlements — 2016 Review and Analysis*,[2] at 7-8 (median recovery in all securities class actions from 2007 to 2016 was approximately 1.8%-2.9% of estimated damages, and the median recovery in securities class actions with estimated damages of less than $50 million was 10.8% of estimated damages between 2006 and 2015, and 7.3% in 2015); *see also In re China Sunergy Sec. Litig.*, No. 07 Civ. 78595 (DAB), 2011 U.S. Dist. LEXIS 53007, at *15 (S.D.N.Y. May 13, 2011) ("the average settlement amounts in securities fraud class actions where investors sustained losses over the past decade . . . have ranged from 3% to 7% of the class members' estimated losses") (internal quotation marks omitted); *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, No. 02 MDL 1484 (JFK), 2007 U.S. Dist. LEXIS 9450, at *33 (S.D.N.Y. Jan. 31, 2007) (a recovery of approximately 6.25% was "at the higher end of the range of reasonableness of recovery in class action[] securities litigations"). Thus, the Settlement easily falls "within the range of possible approval" and warrants preliminary approval. Moreover, given the likelihood that less than 100% of Class Members will file claims, the actual percentage of recovery is even higher. So long as the Settlement appears to be *prima facie* reasonable, Lead Plaintiffs request that the Court preliminarily approve the Settlement so that notice of the proposed settlement may be disseminated to the Class.

---

[2] https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2016-Review-and-Analysis.

## II.     SUMMARY OF THE LITIGATION AND SETTLEMENT

### A.     Procedural History Of The Litigation

Plaintiff Lynne P. Maleeff filed a class action complaint on June 29, 2017, alleging violations under Sections 10(b) and 20(a)-(b) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5) against BComm, Doron Turgeman, Itzik Tadmor and Ehud Yahalom.  Dkt. 1.  Rex and Roberta Ling Living Trust u/a December 6, 1990, as Amended, John Taylor Jones and David Thomas Jones filed a motion to be appointed Lead Plaintiffs on August 28, 2017.  Dkt. 7.  On September 27, 2017, this Court issued an Order, appointing Rex and Roberta Ling Living Trust u/a December 6, 1990, as Amended, John Taylor Jones and David Thomas Jones as Lead Plaintiffs.  Dkt. 11.

On December 8, 2017, Lead Plaintiffs filed their Complaint concerning securities fraud and asserting a class period of March 18, 2015 through September 6, 2017, inclusive, against BComm, Eurocom Communications Ltd., D.B.S. Satellite Services (1998) Ltd., Shaul Elovitch, Or Elovitch, Ron Eilon, Stella Handler, David Mizrahi, Micky Neiman, Allon Raveh, Itzik Tadmor, Doron Turgeman, Ehud Yahalom, and Linor Yochelman.  Dkt. 17.

BComm is a holding company with a single asset: its controlling share ownership of Bezeq The Israeli Telecommunication Corp. Ltd. ("Bezeq"), which provides telecommunications services in Israel.  The Complaint in this Litigation alleges that, during the Class Period, Defendants and Dismissed Defendants made material misstatements and omissions in connection with BComm and Bezeq's substantial overpayment in the purchase of D.B.S. Satellite Services (1998) Ltd. ("Yes").  This was done to benefit Shaul Elovitch, BComm's then-controlling shareholder and former Board of Directors chairman.

Specifically, the Complaint alleges that Defendants and Dismissed Defendants materially inflated the key metric of Yes's valuation, its reported free cash flow.  The Complaint alleges

that investors were misled not only by Yes's reported results, which were incorporated into BComm's financials, but also by BComm's purported compliance with laws and deterrence of conflicts of interest with its executives, as reflected in its Code of Business Conduct and Ethics ("Code of Ethics"), and BComm's representations about the adequacy of internal controls under the Sarbanes-Oxley Act of 2002.  Additionally, the Complaint alleges BComm misrepresented the independence of the committee that reviewed the Yes-Bezeq transaction.

The Complaint charged that the conduct of the Defendants and Dismissed Defendants violated Sections 10(b) and 20(a) of the Securities Exchange Act (15 U.S.C. §§ 78j(b), and 78t(a)) and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission (17 C.F.R. § 240.10b-5).  From the outset of the litigation, BComm has consistently denied any wrongdoing, liability or damages.

On February 20, 2018, Defendant BComm moved to dismiss or stay the Complaint as to BComm.  Dkt. 33.  On July 12, 2018, Defendants Itzik Tadmor, Doron Turgeman and Ehud Yahalom moved to dismiss the Complaint as to them.  Dkt. 59.  That same day, Defendants D.B.S. Satellite Services (1988) Ltd., Ron Eilon and Micky Neiman moved to dismiss the Complaint as to them.  Dkt. 67.  That same day, Defendants Stella Handler, David Mizrahi, Allon Raveh and Linor Yochelman moved to dismiss the Complaint as to them.  Dkt. 71.

On September 27, 2018, BComm's motion to dismiss was granted in part and denied in part.  Judge Oetken held that statements about BComm's Code of Ethics and disclosure and reporting controls were not actionable.  *See Rex & Roberta Ling Living Tr. v. B Commc'ns Ltd.*, 346 F. Supp. 3d 389, 405 (S.D.N.Y. 2018).  However, Judge Oetken also held that Lead Plaintiffs had adequately alleged that (i) statements regarding BComm's reported free cash flows figures for 2015 and 2016; and (ii) a March 18, 2015, SEC filing statement regarding the

independence of a subcommittee that approved a merger between Bezeq The Israeli Telecommunication Corp. Ltd. and D.B.S. Satellite Services (1998) Ltd. were materially false or misleading.  *Id.* at 404.  On March 28, 2019, the Court granted the motions of all the parties who filed motions to dismiss on July 12, 2018.  Dkt. 87.  This left only BComm and Defendants Eurocom, Shaul Elovitch and Or Elovitch—who have not yet appeared—in the Litigation.

On July 31, 2019, the Lead Plaintiffs moved the Court to certify the Litigation as a class action and appoint themselves as Class Representatives and their counsel, Pomerantz, as class counsel.  Dkt. 97.  BComm opposed this motion.  Dkt. 108.  The Lead Plaintiffs' class certification motion was fully briefed as of January 13, 2020.  Dkt. 118.  On February 4, 2020, after being informed by letter that the parties had reached a settlement in principal, the Court denied the class certification motion without prejudice to renewal in connection with the motion for approval of the settlement.  Dkt. 123.

### B.  Summary Of Key Terms Of The Proposed Settlement

### 1.  Relief to Class Members and Release of Claims

BComm has agreed to settle the Litigation for $1,200,000, as described more fully in the Stipulation, in return for which all claims that have been, or could have been, asserted in the Complaint against Defendants and Released Parties will be dismissed, barred and released.

The monies will be deposited in an escrow account maintained by Huntington National Bank and will be held in instruments or accounts backed by the full faith and credit of the United States Treasury.

If the Settlement is approved, none of the monies will revert to BComm or its insurance carriers.  If the Settlement is not approved, or otherwise does not become effective, the monies other than costs of notice will revert.

2.      **Class Notice and Settlement Administration**

a)      **Notice**

Within 21 days of Preliminary Approval, a proposed Notice and Proof of Claim substantially in the form set forth in Exhibits A-1 and A-2 to the Stipulation will be mailed to each Class Member identified by records maintained by BComm or its transfer agent. Strategic Claims Services ("Claims Administrator") will send individual notice to all persons identified by banks, brokerage firms, or other nominees, as having purchased BComm stock during the Class Period. Not later than fourteen (14) days after the direct mail notice is first sent, the Claims Administrator shall publish notice of the Settlement, substantially in the form attached to the Stipulation as Exhibit A-3, over *GlobeNewswire*.

The Notice describes in plain English the terms of the Settlement, the considerations that led Lead Counsel and Lead Plaintiffs to conclude that the Settlement is fair and adequate, the Plan of Allocation, the maximum attorneys' fees award and expense reimbursement that may be sought, and the proposed Compensatory Awards. A copy of the Notice, Claims Form and Stipulation of Settlement will be posted on a website maintained by the Settlement Administrator, alongside a summary notice. This notice program will fairly apprise Class Members of the Settlement and their options with respect thereto, and fully satisfies due process requirements.

b)      **Administration**

After provision of a competitive bid, Lead Counsel selected the Claims Administrator to administer the notice and process the claims for the Settlement. The Claims Administrator is well known and highly experienced in the administration of securities fraud class action settlements. In accordance with the Stipulation, BComm shall pay or cause to be paid the Settlement Amount to an interest-bearing escrow account in a federally-chartered bank

designated by Lead Counsel (the "Escrow Account"), to be controlled by said bank as the Escrow Agent for the benefit of the Class, with interest to accrue for the benefit of the Class. Once the Settlement becomes final following entry of the final judgment, substantially in the form attached to the Stipulation as Exhibit B (the "Judgment"), no monies shall revert to Defendants.

### 3.    Papers in Support of the Settlement, Award of Lead Counsel Fees and Expenses, and Plaintiff Compensatory Awards

No later than 35 days prior to the Settlement Hearing, Lead Counsel will submit papers in support of the Settlement and Plan of Allocation, as well as the request for the awards of attorney fees, expenses, and Plaintiff Compensatory Awards.  Those papers will detail reasons why the Settlement should be approved, as well as Lead Counsel's efforts undertaken on behalf of the Class (including a breakdown of the time and hourly rates of each attorney who contributed to the outcome).

No less than 7 days prior to the Settlement Hearing, Lead Counsel may submit reply papers in support of the motion for final approval of Settlement, Plan of Allocation, request for an award of attorneys' fees and expenses or request for compensatory awards to Lead Plaintiffs.

### 4.    Objections

Any Class Member who objects to the Settlement or related matters must do so 21 days prior to the Settlement Hearing, and must send copies of such objections to the Court as well as designated counsel for the Class and Defendants.  Any Class Member who does not file a timely written objection to the Stipulation shall be foreclosed from seeking any adjudication or review of the Stipulation by appeal or otherwise.

To insure the legitimacy of any such objections, the Class Member must file documents evidencing BComm Shares transactions, as well as submit to the jurisdiction of this court for

possible deposition.  These measures are intended to thwart "professional objectors" who have appeared from time to time in these actions.

### 5.    Opt Outs

Any Class Member who wishes to be excluded must do so by written request accompanied by BComm transaction documentation, postmarked no later than 21 days prior to the Settlement Hearing.  The opt out must be sent to Lead Counsel, Defendants' Counsel, and the Settlement Administrator (but not the Court).

### 6.    Termination of the Settlement

Defendants have the right to withdraw from the Settlement if Class Members owning a previously negotiated amount of Shares elect to opt out of the Class.  The threshold amount is set forth in a separate agreement that will not be filed with the Court unless Defendants choose to exercise their right of withdrawal.

In the event that the Settlement is not approved by the Court, does not become final due to any appeals or Defendants' withdrawal from the Settlement, the parties will return to their respective positions prior to the Settlement and the litigation will proceed apace.

### 7.    No Admission of Liability

By entering into the Stipulation, BComm does not admit liability and continues to deny that they engaged in any misconduct or violated the law.

## III.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

### A.    The Courts Favor Settlements Of Complex Class Actions

The law favors settlement, particularly in class actions and other complex cases. William Rubenstein, Alba Conte, & Herbert B. Newberg, *Newberg on Class Actions* (*Fourth*) (2002) § 11.41 ("The compromise of complex litigation is encouraged by the courts and favored by public policy."); *Palacio v. E*TRADE Fin. Corp.*, No. 10 Civ. 4030 (LAP) (DCF), 2012 U.S.

Dist. LEXIS 88019, at *7 (S.D.N.Y. June 22, 2012) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005)); *see also Spann v. AOL Time Warner, Inc.*, No. 02 Civ. 8238 (DLC), 2005 U.S. Dist. LEXIS 10848, at *18 (S.D.N.Y. June 7, 2005). Due to the presumption in favor of settlement, and "[a]bsent fraud or collusion," courts "should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 CIV 10240 CM, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007). The Supreme Court has cautioned that in reviewing a proposed class settlement, courts should "not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc*., 450 U.S. 79, 88 n.14 (1981). Where, as here, the parties propose to resolve class action litigation through a class-wide settlement, they must request and obtain the Court's approval. *See* Fed. R. Civ. P. 23(e). As the Second Circuit has held:

> A court may approve a class action settlement if it is fair, adequate, and reasonable, and not a product of collusion. A court determines a settlement's fairness by looking at both the settlement's terms and the negotiating process leading to settlement. A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery. We are mindful of the strong judicial policy in favor of settlements, particularly in the class action context. The compromise of complex litigation is encouraged by the courts and favored by public policy.

*Wal-Mart,* 396 F.3d at 116-17 (citations and internal quotation marks omitted). In evaluating a proposed class-action settlement, "courts should give proper deference to the private consensual decision of the parties" and should bear in mind "the unique ability of class and defense counsel to assess the potential risks and rewards of litigation." *Fleisher v. Phoenix Life Ins. Co.*, No. 11-cv-8405 (CM) 2015 U.S. Dist. LEXIS 121574, at *17 (S.D.N.Y. Sept. 9, 2015) (citations omitted). Moreover, the Supreme Court has cautioned that courts should "not decide the merits of the case or resolve unsettled legal questions." *Carson,* 450 U.S. at 88 n.14. This is particularly

important in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation.

The three-step process for approval of a class-action settlement is: (1) preliminary approval; (2) dissemination of notice of the settlement to the class; and (3) a settlement approval hearing where class members may be heard regarding the fairness, adequacy, and reasonableness of the settlement. *Manual for Complex Litigation (Fourth)* §§ 21.632–634 (2004). This procedure serves the dual function of safeguarding class members' procedural due process rights and enabling the court to fulfill its role as the guardian of the class members' interests. *See Newberg, supra,* § 11.25. Lead Plaintiffs respectfully request the Court to take the first step in the process and grant preliminary approval to the Settlement.

**B.      The Proposed Settlement Merits Preliminary Approval**

Preliminary approval is merely the prerequisite for disseminating notice to class members so they may decide whether to approve or reject the Settlement. Accordingly:

> If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval, the court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement.

*Manual for Complex Litigation (Third)* § 30.41 (1995).

**1.      The Proposed Settlement Recovery Is Substantively Fair**

In the Second Circuit, courts will examine the negotiating process leading to the settlement. *Wal-Mart,* 396 F.3d 96 at 116. They will also determine whether the settlement's terms are fair, reasonable, and adequate, using the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

### a)  The Settlement Was Negotiated By Well-Informed Counsel And Thus Warrants A Presumption Of Fairness

"In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery." *Clark v. Ecolab Inc.*, No. 07 Civ. 8623 (PAC), 2010 U.S. Dist. LEXIS 47036, at *18 (S.D.N.Y. May 11, 2010) (citation omitted).  Courts also give weight to the parties' judgment that the settlement is fair and reasonable.  *See Palacio*, 2012 U.S. Dist. LEXIS 88019, at *8; *Diaz v. E. Locating Serv. Inc.*, No. 1:10-cv-04082-JCF, 2010 U.S. Dist. LEXIS 139136, at *10 (S.D.N.Y. Nov. 29, 2010); *Clark*, 2010 U.S. Dist. LEXIS 47036, at *18.

The Settlement was reached through arm's-length negotiation, which included an unsuccessful settlement conference attended by counsel for the Settling Parties and then-BComm Chief Executive Officer Ami Barlev, in April 2019.  The parties continued to confer periodically to discuss potential settlement of the Litigation.  In January 2020, the Settling Parties resumed settlement discussions.   After two negotiation sessions, the Settling Parties executed a Memorandum of Understanding setting forth their agreement in principle to settle the Litigation ("MOU").  The negotiations, though collegial, were adversarial.  Though the Lead Plaintiffs believe that the claims asserted in this litigation have merit and that the evidence developed to date supports their claims, the negotiations were informed in part by the expense and length of continued proceedings necessary to prosecute the litigation against Defendants through trial and through appeals, the uncertain outcome and the risk of any litigation, especially in complex actions such as this litigation, where the majority of witnesses and documents are located outside the United States, as well as the difficulties and delays inherent in such litigation.

In negotiating the Settlement, Lead Plaintiffs had the benefit of attorneys (including Pomerantz's Managing Partner Jeremy A. Lieberman) who are highly experienced in complex litigation and familiar with the legal and factual issues of the case.

In Lead Counsel's view, the Settlement provides substantial benefits to the Class.

### b)      The Settlement Is Within The Reasonable Range Of Recovery

At the Settlement Hearing, in finally determining whether a settlement is fair, reasonable, and adequate, the Court will have to decide whether to approve the Settlement under the factors articulated in *Grinnell*:  (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the Settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the Settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the Settlement fund to a possible recovery in light of all the attendant risks of litigation.  *Grinnell*, 495 F.2d at 463.  All nine factors need not be satisfied; rather, the Court should consider the totality of these factors in light of the particular circumstances.  *Thompson v. Metro. Life Ins. Co.*, 216 F.R.D. 55, 61 (S.D.N.Y. 2003).

For preliminary approval purposes, however, the Court need not decide these factors. Rather, if the Court finds that the Settlement is "within the range of possible approval" that might be approved under *Grinnell*, it should then order that the Class receive notification of the Settlement, schedule the Settlement Hearing, and provide Class members an opportunity to be heard.  *See Manual for Complex Litigation (Fourth)* § 40.42 (model preliminary approval order). Here, the Settlement satisfies the *Grinnell* test.  Therefore, the Court should grant preliminary approval.

### 1)   *The Complexity, Expense and Likely Duration of the Litigation*

The Settlement provides the Class with substantial relief, without the delay and expense of trial and post-trial proceedings. Due to the inherent complexity of securities litigation, and particularly the stringent requirements imposed by the Private Securities Litigation Reform Act of 1995's ("PSLRA") amendments to the Exchange Act, as well as supervening case law developments, including the Supreme Court's decision in *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258 (2014), prosecution of securities class action litigation is inherently complex and lengthy.  This Litigation has not gotten beyond the class certification phase, and BComm disputes that a class should be certified.  Even if the class is certified, without settlement, many issues would still remain.  For instance, the parties were still in the process of negotiating search terms for discovery purposes.  Discovery, including international discovery and numerous depositions, would still need to be completed, then summary judgment and then trial – all of which would be extremely expensive and risky.  The Court and/or jury, depending on the proceeding, would then have had to determine: (i) whether the alleged representations/omissions were material; (ii) whether Defendants acted with scienter; (iii) whether Lead Plaintiffs are entitled to a presumption of reliance; and (iv) the artificial inflation of BComm stock and how much of the price declines were attributable to what Lead Plaintiffs allege were the disclosures of information correcting the alleged false statements.

If the parties did not agree to settle, they would have faced, in the best-case scenario for the class, an expensive trial with an uncertain outcome.  Not only would *any* recovery be very uncertain, considering the near certainty of appeals, it would inevitably be delayed by years.

### 2)   *Stage of Proceedings and Amount of Discovery Completed*

In this Litigation, the proceedings were sufficiently advanced to provide Lead Plaintiffs with a thorough understanding of the strengths and weaknesses of the Class's claims.  Lead

Plaintiffs conducted an investigation prior to filing the Amended Complaint. Although document discovery was not complete, many factors illuminated the relative strengths and weaknesses of the parties' positions. This is a case where class certification is hotly contested and presents unique issues for adjudication, as was made clear through motion papers and expert depositions. This is also a case where there are unusual discovery issues and, after extensive letter briefing to the Court, is was clear that motion practice regarding discovery parameters was virtually inevitable. *See In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 425-26 (S.D.N.Y. 2001) ("To approve a proposed settlement, . . . the Court need not find that the parties have engaged in extensive discovery. Instead, it is enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to intelligently make . . . an appraisal of the Settlement.") (quotation marks and citations omitted).

### 3)   *The Risks of Establishing Liability & Damages*

There were substantial risks in prosecuting this Litigation, and further prosecution of this Litigation to trial may have yielded limited or no recovery. Even if the Class was certified by the Court, Lead Plaintiffs would have to establish falsity, materiality, and scienter to a jury's satisfaction which is notoriously difficult and risky. *Id.* at 426. Additionally, Lead Plaintiffs would have encountered a summary judgment motion on the elements of their claims, and if Lead Plaintiffs defeated BComm's motion, the risk attendant in proving their claims at trial. Among other arguments, BComm would have argued that Lead Plaintiffs were foreclosed from using a number of the alleged stock drops on certain dates to prove loss causation. *See*, *e.g.*, *Police & Fire Ret. Sys. of City of Detroit v. SafeNet, Inc.*, 645 F. Supp. 2d 210, 228-29 (S.D.N.Y. 2009) (dismissing claims based on stock drop following press release for failure to "explain why the disclosure on page eight – as opposed to all other information in the extended 12-page release

– caused the price decline").  Additionally, the establishment of scienter on BComm's part was uncertain.

### 4)  *The Risks of Maintaining the Class Action Through Trial*

Despite Lead Plaintiffs' confidence in the Litigation and its positions on class certification, BComm was contesting class certification, and a positive outcome was not inevitable.  Lead Plaintiffs were arguing price impact should be enough to establish the presumption of reliance outlined in *Basic Inc. v. Levinson*, 485 U.S. 224, 242 (1988).  However, BComm was insisting the Court analyze market efficiency utilizing the frequently-used factors articulated in *Cammer v. Bloom*, 711 F. Supp. 1264 (D.N.J. 1989), which BComm argued did not weigh in favor of class certification.  It is unknown whether the Court would have certified the class.

### 5)  *Reasonableness of the Settlement*

The Stipulation provides for the Settlement Amount of $1.2 million to be paid into the Settlement Fund.  Lead Plaintiffs' consultation with their expert indicated that, based on the allegations in the Amended Complaint, class-wide damages were approximately $7 million.  Compared to this range of damages, the Settlement represents an excellent result, returning over 17% of estimated damages.  As such, the settlement falls well within the range of possible approval. *See*, *e.g.*, *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001) (citing studies indicating that the average securities fraud class action settlement since 1995 had resulted in a recovery of 5.5%-6.2% of estimated losses); *In re Mego Fin Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (stating that even using the objector's damages estimates, a settlement of 14% would be fair); *Grinnell*, 495 F.2d at 455 n.2 ("In fact there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a

thousandth part of a single percent of the potential recovery.").[3]   Moreover, that computation assumes that 100% of eligible class members file claims.  It is more likely that less than 100% will do so (despite efforts that will be made to notify as many eligible claimants as possible, including posting of notice through the Internet).

## IV.   THE PROPOSED CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

### A.   The Proposed Class Meets the Requirements of Rules 23(a) and 23(b)(3)

In granting preliminary settlement approval, the Court should also certify the Class for purposes of the Settlement under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure. The proposed Class, which has been stipulated to by the Parties, consists of: "all persons or entities who or which purchased or otherwise acquired BComm ordinary shares listed on NASDAQ between March 18, 2015 and September 6, 2017, both dates inclusive."  Excluded from the Class are Defendants and Dismissed Defendants; the present and former officers and directors of BComm and any subsidiary thereof, and the immediate family members, legal representatives, heirs, successors or assigns of such excluded persons and any entity in which any such excluded person has or had a controlling interest during the Class Period.  Also excluded from the Class are all putative members of the Class who exclude themselves by filing a valid and timely request for exclusion.

---

[3] *See also* Cornerstone Research, *Securities Class Action Settlements: 2017 Review and Analysis* at 8, 10, https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2017-Review-and-Analysis (noting that in 2017 the median settlement as a percentage of "simplified tiered damages" for a Rule 10b-5 claim was 5.8%, while between 2008 and 2017, the average settlement as a percentage of "simplified tiered damages" for cases with a 1933 Act claim with a named underwriter defendant was 12.8%),.  It should be noted that these studies tend to focus on the size of the settlement relative to transactions losses, not recoverable damages, and probably understate the recovery rate.  *See Dura Pharm., Inc. v. Broudo,* 544 U.S. 336 (2005).

The Second Circuit has long acknowledged the propriety of certifying a class solely for settlement purposes. *See Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982). Before granting preliminary approval of a class action settlement, however, the Court should determine that the proposed Class is a proper class for settlement purposes. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Manual for Complex Litigation (Fourth)* § 21.632. To certify a class, the Court must determine whether four threshold requirements of Federal Rule 23(a) are met: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *Amchem*, 521 U.S. at 613. Additionally, the action must be maintainable under Fed. R. Civ. P. 23(b)(1), (2) or (3). *Id.* at 614. In certifying the Class, however, the Court is not required to determine whether the action, if tried, would present intractable management problems, "for the proposal is that there be no trial." *Id.* at 620; *see also* Fed. R. Civ. P. 23(b)(3)(D). Here, the proposed Class meets all of the requirements of Rule 23(a) and satisfies the requirements of Rule 23(b)(3).

### 1. The Class Satisfies the Requirements of Rule 23(a)

A class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Joinder is generally presumed to be impracticable when a putative class exceeds 40 members." *Menkes v. Stolt-Nielsen S.A.*, 270 F.R.D. 80, 90 (D. Conn. 2010) (citing *Marisol A. v. Guiliani*, 126 F.3d 372, 376 (2d Cir. 1997)). Impracticable does not mean impossible, but only that the difficulty or inconvenience of joining all members of the class makes use of the class action appropriate. *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 244-45 (2d Cir. 2007).

"While a precise quantification of the class is not required, some evidence or a reasonable estimate of the number of class members must be provided." *Bourlas v. Davis Law Assocs.*, 237 F.R.D. 345, 350-51 (E.D.N.Y. 2006) (quotations and alterations omitted). In making this

determination, "the court may make some common sense assumptions and rely on reasonable inferences drawn from the available facts." *Id.* at 351 (quotations omitted).  Consequently, "[i]n securities fraud class actions relating to publicly owned and nationally listed corporations, the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period." *In re Sadia, S.A. Sec. Litig.*, 269 F.R.D. 298, 304 (S.D.N.Y. 2010).  Publicly available information reveals that during the Class Period there were approximately 29.889 million Shares outstanding each year, making joinder impracticable.[4] Though Lead Plaintiffs have not yet ascertained the precise number of potential Class members, common sense suggests that even if one assumes that one entity owned nearly 65% of the outstanding stock during the Class Period, the almost 10.5 million Shares remaining were dispersed among hundreds—or thousands—of potential Class members.  *In re Frontier Ins. Grp., Inc. Sec. Litig.*, 172 F.R.D. 31, 40 (E.D.N.Y. 1997).

The proposed Class also meets the commonality requirement of Rule 23(a). "Commonality does not mean that all issues must be identical as to each member, but it does require that plaintiffs identify some unifying thread among the members' claims that warrant[s] class treatment." *Westchester Indep. Living Ctr., Inc. v. State Univ. of N.Y., Purchase Coll.*, 331 F.R.D. 279, 291 (S.D.N.Y. 2019) (quoting *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152 , 156 (S.D.N.Y. 2008)).  The requirement is met if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  Securities fraud class actions are "essentially course of conduct cases because the nub of plaintiffs' claims is that material information was withheld from the

---

[4] These shares were available on both the NASDAQ and Israel's Tel Aviv Stock Exchange ("TASE").  However, the proposed Class is of people or entities who purchased shares listed on the NASDAQ.  The proposed Class does not include persons or entities who or which purchased or otherwise acquired BComm shares solely on the TASE, and only shares traded on the NASDAQ are included in the Settlement.

entire putative class in each action, either by written or oral communication." *In re Oxford Health Plans, Inc.*, 191 F.R.D. 369, 374 (S.D.N.Y. 2000) (quotations omitted). Here, common questions of law and fact include: (i) whether Defendants' statements were materially false and misleading; (ii) whether the underlying misrepresentations and omissions were made with scienter; (iii) whether the price of BComm's stock was artificially inflated during the Class Period; and (iv) whether Defendants' misrepresentations and omissions caused Class members to suffer economic losses. The misstatements were made to the Class as a whole, and injured market participants in the same way. In comparable situations, courts have consistently found the commonality requirement to have been satisfied. *See, e.g., In re SCOR Holding (Switz.) AG Litig.*, 537 F Supp. 2d 556 (S.D.N.Y. 2008); *Wagner v. Barrick Gold Corp.*, 251 F.R.D. 112, 116 (S.D.N.Y. 2008); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 245 F.R.D. 147, 157-158 (S.D.N.Y. 2007), *aff'd in part, vacated in part on other grounds*, 574 F.3d 29 (2d Cir. 2009).

Lead Plaintiffs also meet Rule 23(a)'s typicality requirement. A plaintiff's claim is typical if it arises from "the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Flag Telecom*, 574 F.3d at 35. Like all other Class Members, Lead Plaintiffs directly relied or are entitled to a presumption of reliance on Defendants' alleged false and misleading statements that violated Sections 10(b) and 20(a) of the Exchange Act. There are no facts concerning Lead Plaintiffs that render them atypical as compared to other Class Members. They each purchased BComm Shares listed on the NASDAQ during the Class Period in the United States. Dkt. 9, Ex. B. Only one of them sold any Shares during the Class Period—and that Plaintiff still retained Shares throughout the Class Period. *Id.*

Rule 23(a) lastly requires that the class representative "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  This inquiry focuses "on uncovering 'conflicts of interest between named parties and the class they seek to represent.'"  *Flag Telecom*, 574 F.3d at 35 (quoting *Amchem*, 521 U.S. at 625).  Lead Plaintiffs adequately represent the Class as they have no individual interests or claims that are antagonistic to the Class and have zealously represented the Class's interests to date, including by monitoring the pleadings and authorizing Lead Counsel's settlement efforts.

### 2.    The Class Satisfies the Requirements of Rule 23(b)(3)

Finally, the proposed Class meets the requirements of Rule 23(b)(3).  Rule 23(b)(3) authorizes class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

To satisfy predominance, "a plaintiff must show that those issues in the proposed action that are subject to generalized proof outweigh those issues that are subject to individualized proof."  *In re Salomon Analyst Metromedia Litig.*, 544 F.3d 474, 480 (2d Cir. 2008), *abrogated on other grounds by Amgen Inc. v. Conn. Ret. Plans & Tr. Funds,* 568 U.S. 455 (2013).  This inquiry "tests whether a proposed class is sufficiently cohesive to warrant adjudication by representation."  *Id.* (quotations omitted).  There are questions of law and fact common to the Class that predominate over any individual questions, specifically whether Defendants' alleged actions, which were centralized and uniform, violated federal securities laws, and whether those violations were knowing or reckless.  These common issues predominate over any individual issues.

"Together with predominance, the superiority requirement ensures that the class will be certified only when it would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Menkes*, 270 F.R.D. at 99-100 (quoting *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 104 (2d Cir. 2007)) (quotations and alteration omitted). Class treatment is often deemed superior in "negative value" cases, in which each individual class member's interest in the litigation is less than the anticipated cost of litigating individually. *Id.* at 100.

A class action is also superior to other methods available for the fair and efficient adjudication of this controversy. Members of the Class are not likely to prosecute, and many do not have an interest or means to prosecute, an individual case against Defendants, which include two corporations and an individual that are represented by well-staffed law firms. Additionally, efficiency and economy support resolving the issues in one suit before this Court now.

**B.      Nationwide Class Certification Is Appropriate for Settlement Purposes**

It is appropriate to settle the claims of all Class Members in one action. Class Members' claims are all subject to the terms of a single federal statute, 15 U.S.C. § 78, *et seq*.

**C.      The Court Should Appoint Lead Counsel as Counsel for the Class**

A court that certifies a class must also appoint class counsel. *See* Fed. R. Civ. P. 23(g). Rule 23(g) states that the adequacy of Lead Plaintiff's counsel is determined by four factors: (1) the work counsel has done in identifying or investigating potential claims; (2) counsel's experience in handling class actions; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A). Lead Counsel Pomerantz has extensive experience and a stellar reputation in class actions and securities litigation. *See* Lieberman Decl., Ex. 2. Pomerantz has been appointed as lead or co-

lead counsel in many complex securities class actions, and has recovered substantial amounts of money for clients and class members.  Lead Counsel will continue to commit adequate resources to ensure that the Class is properly represented in this Action as Class Counsel.

## V.   THE COURT SHOULD APPROVE THE PROPOSED FORM AND METHOD OF CLASS NOTICE

### A.   Notice By Direct Mail And Publication Is Appropriate

"Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise,' regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *See Manual for Complex Litigation (Fourth)* § 21.312.  To satisfy due process, notice to class members must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).  "'The notice must be of such nature as reasonably to convey the required information . . . and it must afford a reasonable time for those interested to make their appearance.'" *Soberal-Perez v. Heckler*, 717 F.2d 36, 43 (2d Cir. 1983) (quoting *Mullane*, 339 U.S. at 314).  In securities class actions, it is customary to provide notice by (a) publishing a summary notice in a major publication, (b) publishing this same summary notice in a press release, (c) mailing long-form notice to all individual shareholders who can be found, and (d) publishing notice on a website. *See, e.g., In re Marsh ERISA Litig.*, 265 F.R.D. 128, 145 (S.D.N.Y. 2010).

The proposed Notice, which the Claims Administrator would send to Class Members by first class mail, is attached as Exhibit A-1 to the Stipulation.  The Notice describes in plain English the terms of the Settlement, the considerations that led Lead Counsel to conclude that the

Settlement is fair and adequate, the maximum attorneys' fees and expenses that may be sought, the procedure to object to the Settlement, and the date and place of the Settlement Hearing.

With the Court's permission, the Claims Administrator will commence mailing the Notice to Class Members identified by BComm's transfer agent and will also post the Notice on the internet within 21 days of approval, and will mail it to shareholders identified in requests to nominees as soon thereafter as addresses are received. The Summary Notice, set forth in Exhibit A-3 to the Stipulation, will be published once over the *GlobeNewswire* within 14 days thereafter.

Neither Rule 23 nor due process requires receipt of actual notice by all Class Members; rather, notice should be mailed to the last known addresses of those who can be identified and publication used to notify others. *Newberg* § 8.04; *see also Mangone v. First USA Bank*, 206 F.R.D. 222, 231-232 (S.D. Ill. 2001) (approving mailed notice to last known addresses of a Class with nearly 18.5 million members).

**B.     The Proposed Notice Adequately Informs Class Members Of Their Rights In This Litigation**

In an action proceeding under Rule 23(b)(3), the notice must inform each class member that "the court will exclude anyone from the class any member who requests exclusion," "the time and manner for requesting exclusion," "the binding effect of a class judgment on members," and that "a class member may enter an appearance through an attorney if the member so desires." Fed. R. Civ. P. 23(c)(2).

Here, the proposed Notice, Exhibit A-1 to the Stipulation, clearly and accurately discloses the information material to a Class Member's decision whether to accept, object to, or opt out of the Settlement. The proposed Notice provides information on, *inter alia*: the proposed Class; the terms and provisions of the Stipulation, including the Settlement Consideration; the relief to the Class and the releases to BComm that the Settlement will provide; the maximum

amount of any award of attorney's fees and reimbursement of expenses to Lead Counsel and of any compensatory award to Plaintiffs; the date, time and place of the final approval hearing; and the procedures and deadlines for opting out of the settlement or submitting comments or objections.

The Notice also meets the requirements of the PSLRA, 15 U.S.C. § 78u-4(a)(7).  The Notice provides:

- a cover page summarizing the information contained in the Notice;

- a statement of the Class Members' recovery before deduction of Court-approved fees and expenses and costs of notice and claims administration, while making clear that the Plan of Allocation will cause the actual amount recovered by any specific Class Member to vary greatly across the Class;

- the general terms of the Settlement;

- a statement of the potential outcome of the case including a statement concerning the issues on which the parties disagree;

- a statement of attorney's fees or costs sought, including a summary of this information on the cover page;

- information on how to contact the Claims Administrator and/or Lead Counsel (including names, addresses, telephone numbers, and websites); and

- a discussion of the reasons for the Proposed Settlement, including the factors Lead Plaintiffs and BComm considered in reaching the Proposed Settlement.

Thus, the proposed Notice to be sent to the Class provides all of the information required by the PSLRA.  The Court should approve the proposed form of Notice and direct that notice be given to the Class.

## PROPOSED SCHEDULE OF EVENTS

Lead Plaintiffs propose the following schedule of events in connection with the

Settlement Hearing as set forth in the Preliminary Approval Order filed herewith:

| Event | Deadline for Compliance |
| --- | --- |
| Date for Settlement Hearing | At least 120 calendar days after the Court preliminarily approves the Settlement. (Preliminary Approval Order ¶ 5) |
| Mailing of Notice and Proof of Claim and Release | No later than 21 calendar days after the entry of Preliminary Approval Order. (Preliminary Approval Order ¶ 8(a)) (the "Notice Date") |
| Publication of Summary Notice | No later than 14 calendar days after the Notice Date (Preliminary Approval Order ¶ 8(b)) |
| Filing deadline for requests for exclusion | Postmarked no later than 21 calendar days prior to the Settlement Hearing. (Preliminary Approval Order ¶ 14) |
| Date for Lead Plaintiffs to file and serve papers in support of the Settlement, the Plan of Allocation and for application for attorneys' fees and reimbursement of expenses | No later than 35 calendar days prior to the Settlement Hearing. (Preliminary Approval Order ¶ 21) |
| Filing deadline for objections | No later than 21 calendar days prior to the Settlement Hearing. (Preliminary Approval Order ¶ 17) |
| Date for Lead Plaintiffs to file reply papers in support of the Settlement, the Plan of Allocation and for application for attorneys' fees and reimbursement of expenses | Seven (7) calendar days prior to the Settlement Hearing. (Preliminary Approval Order ¶ 21.) |
| Date for Claims to be Filed | No later than 7 calendar days after the Settlement Hearing. (Preliminary Approval Order ¶ 12) |

## CONCLUSION

In light of the foregoing, Lead Plaintiffs respectfully request that the Court enter an Order

preliminarily approving the Settlement, granting conditional certification of the Class and setting

a date for a Settlement Hearing and deadlines for the mailing and publication of the Notices, the

filing of Class Member objections, the filing of Class Member opt-out notices, and the filing of

Lead Counsel's application for attorneys' fees and expenses and for an incentive award to Plaintiffs.

Dated: March 3, 2020

**POMERANTZ LLP**

By: */s/Jeremy A. Lieberman*
    Jeremy A. Lieberman
    Marc I. Gross
    Cara David
    600 Third Avenue, 20th Floor
    New York, New York 10016
    Telephone: (212) 661-1100

*Lead Counsel for Lead Plaintiffs*

**BRONSTEIN, GEWIRTZ & GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484

*Additional Counsel*