# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| REX AND ROBERTA LING LIVING TRUST u/a DECEMBER 6, 1990, as AMENDED, JOHN TAYLOR JONES, and DAVID THOMAS JONES, Individually and on Behalf of All Others Similarly Situated, | Case No. 1:17-cv-04937 (JPO) |
| Plaintiffs, | |
| -against- | ECF CASE |
| B COMMUNICATIONS LTD., EUROCOM COMMUNICATIONS LTD., SHAUL ELOVITCH, and OR ELOVITCH, | |
| Defendants. | |

**LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN <u>OF ALLOCATION OF SETTLEMENT PROCEEDS</u>**

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.    PROCEDURAL HISTORY................................................................................... 2

III.    THE SETTLEMENT ........................................................................................... 5

IV.    THE PROPOSED SETTLEMENT SHOULD BE GRANTED FINAL APPROVAL ...... 6

    A.    The Settlement Is Presumptively and Procedurally Fair......................................... 7

    B.    The Settlement Is Substantively Fair ................................................................. 10

        1.    Litigating Securities Claims Would be Long, Complex, and Expensive . 11

        2.    The Class Reaction Supports Final Approval ........................................... 14

        3.    Lead Plaintiffs Had Sufficient Command of the Case's Merits to
                Enter the Settlement................................................................................. 15

        4.    There Are Substantial Risks of Establishing Liability and Damages ....... 16

        5.    The Risks of Maintaining Class Action Status Through Trial.................. 17

        6.    The Ability of Defendants to Withstand a Greater Judgment................... 18

        7.    The Settlement Amount is Within the Range of Reasonableness............. 18

V.    THE PLAN OF ALLOCATION SHOULD BE APPROVED ......................................... 20

VI.    THE CLASS SHOULD BE FINALLY CERTIFIED ..................................................... 22

VII.    NOTICE TO THE CLASS COMPLIED WITH RULE 23 AND DUE PROCESS......... 22

VIII.    CONCLUSION.................................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anixter v. Home-Stake Prod. Co.*,
    77 F.3d 1215 (10th Cir. 1996) ...............................................................13

*Backman v. Polaroid Corp.*,
    910 F.2d 10 (1st Cir. 1990)....................................................................13

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988)................................................................................12

*Carson v. Am. Brands, Inc.*,
    450 U.S. 79 (1981)...................................................................................7

*Castagna v. Madison Square Garden, L.P.*,
    No. 09-cv-10211 (LTS)(HP), 2011 WL 2208614 (S.D.N.Y. June 7, 2011)...........................16

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974)....................................................1, 10, 16, 18, 20

*City of Providence v. Aéropostale, Inc.*,
    2014 WL 1883494 (S.D.N.Y. May 9, 2014) ...................................................10, 14

*Clark v. Ecolab Inc.*,
    No. 07 Civ. 8623 (PAC), 2010 WL 1948198 (S.D.N.Y. May 11, 2010) .................................7

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974)................................................................................22

*Fleisher v. Phx. Life Ins. Co.*,
    No. 11-cv-8405, 2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015) .......................................7, 21

*George v. China Auto. Sys., Inc.*,
    11 Civ. 7533 (KBF), 2013 WL 3357170 (S.D.N.Y. July 3, 2013)........................................18

*Guevoura Fund Ltd. v. Sillerman*,
    No. 1:15-cv-07192-CM, 2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) ....................11, 14, 15

*Halliburton Co. v. Erica P. John Fund, Inc.*,
    573 U.S. 258 (2014)................................................................................11

*Hayes v. Harmony Gold Mining Co.*,
    509 F. App'x 21 (2d Cir. 2013) .................................................................10

*Hubbard v. BankAtlantic Bancorp, Inc.*,
    688 F.3d 713 (11th Cir. 2012) ........................................................................17

*IBEW Local 90 Pension Fund v. Deutsche Bank AG*,
    11 Civ. 4209 (KBF), 2013 WL 5815472 (S.D.N.Y. Oct. 29, 2013).........................18

*In re Advanced Battery Techs. Sec. Litig.*,
    298 F.R.D. 171 (S.D.N.Y. 2014) ......................................................................23

*In re Am. Bank Note Holographics, Inc.*,
    127 F. Supp. 2d 418 (S.D.N.Y. 2001)..................................................11, 12, 15

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
    2006 WL 903236 (S.D.N.Y. Apr. 6, 2006).............................14, 15, 16, 17, 18

*In re Austrian & German Bank Holocaust Litig.*,
    80 F. Supp. 2d 164 (S.D.N.Y. 2000)..................................................................15

*In re Bear Stearns Cos.*,
    909 F. Supp. 2d 259, (S.D.N.Y. Nov. 9, 2012)...........................11, 14, 15, 19

*In re China Sunergy Sec. Litig*,
    No. 07 Civ. 7895 (DAB), 2011 WL 1899715 (S.D.N.Y. May 13, 2011).................20

*In re Citigroup Inc. Sec. Litig.*,
    965 F. Supp. 2d 369 (S.D.N.Y. 2013)................................................................10

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
    No. 05 Civ. 10240 (CM), 2007 WL 2230177 (S.D.N.Y. July 27, 2007).................7

*In re Flag Telecom Holdings*,
    2010 WL 4537550 (S.D.N.Y. Nov 8, 2010).........................................................18

*In re Gilat Satellite Networks, Ltd.*,
    No. CV-02-1510 (CPS), 2007 WL 1191048 (E.D.N.Y. Apr. 19, 2007) .................11

*In re Glob. Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ......................................................................16

*In re Gulf Oil/Cities Serv. Tender Offer Litig.*,
    142 F.R.D. 588 (S.D.N.Y. 1992) ......................................................................20

*In re IMAX Secs. Litig.*,
    283 F.R.D. 178 (S.D.N.Y. 2012) ......................................................................21

*In re Indep. Energy Holdings PLC Sec. Litig.*,
    No. 00 Civ. 6689 (SAS), 2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003).............14

*In re Initial Pub. Offering Sec. Litig.*,
  671 F. Supp. 2d 467 (S.D.N.Y. 2009) ..................................................................................20

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
  327 F.R.D. 483 (S.D.N.Y. 2018) ..........................................................................................10

,” In re *Marsh & McLennan Cos., Inc. Sec. Litig.*,
  2009 WL 5178546 (S.D.N.Y. Dec, 23, 2009) ........................................................................18

*In re Marsh ERISA Litig.*,
  265 F.R.D. 128 (S.D.N.Y. 2010) ..........................................................................................10

*In re Paine Webber Ltd. P'ships Litig*,
  171 F.R.D. 104 (S.D.N.Y.), *aff'd*, 117 F.3d 721 (2d Cir. 1997) .........................................7, 14

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  330 F.R.D. 11 (E.D.N.Y. 2019) ............................................................................................17

*In re Platinum & Palladium Commodities Litig.*,
  No. 10cv3617, 2014 WL 3500655 (S.D.N.Y. July 15, 2014) ...................................................6

*In re Rite Aid Corp. Sec. Litig.*,
  146 F. Supp. 2d 706 (E.D. Pa. 2001) ....................................................................................20

*In re Sony SXRD Rear Projection TV Class Action Litig.*,
  No. 06 Civ. 5173 (RPP), 2008 WL 1956267 (S.D.N.Y. May 1, 2008) .............................15, 16

*In re Sturm, Ruger, & Co. Inc. Sec. Litig.*,
  No. 3:09cv1293 (VLB), 2012 WL 3589610 (D. Conn. Aug. 20, 2012) ..................................14

*In re Veeco Instruments Sec. Litig.*,
  No. 05 MDL 01695 (CM), 2007 U.S. Dist. LEXIS 85629 (S.D.N.Y. Nov. 7,
  2007) ..............................................................................................................................14, 15

*In re Visa Check/MasterMoney Antitrust Litig.*,
  297 F. Supp. 2d 503 (E.D.N.Y. 2003) ..................................................................................13

*Joel A. v. Giuliani*,
  218 F.3d 132 (2d Cir. 2000)....................................................................................................6

*Lyons v. Marrud, Inc.*,
  No. 66 Civ. 415., 1972 U.S. Dist. LEXIS 13401 (S.D.N.Y. June 6, 1972) ..............................8

*Maley v. Del Glob. Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002)....................................................................................17

*McReynolds v. Richards-Cantave*,
  588 F.3d 790 (2d Cir. 2009)..............................................................................................6, 8

*Pantelyat v. Bank of Am., N.A.*,
    No. 16-cv-8964 (AJN), 2019 WL 402854 (S.D.N.Y. Jan. 31, 2019) .....................................15

*Ret. Sys. v. Lockheed Martin Corp.*,
    954 F. Supp. 2d 276 (S.D.N.Y. 2013)...................................................................................20

*Rex & Roberta Ling Living Tr. v. B Commc'ns Ltd.*,
    346 F. Supp. 3d 389 (S.D.N.Y. 2018)......................................................................................4

*Robbins v. Koger Props., Inc.*,
    116 F.3d 1441 (11th Cir. 1997) ............................................................................................13

*Shapiro v. JPMorgan Chase & Co.*,
    No. 11 Civ. 8331 (CM), 2014 WL 1224666 (S.D.N.Y. Mar. 21, 2014)................................10

*Steginsky v. Xcelera, Inc.*,
    No. 3:12-cv-188 (SRU), 2015 WL 1036985 (D. Conn. Mar. 10, 2015)...............................17

*Stinson v. City of N.Y.*,
    256 F. Supp. 3d 283 (S.D.N.Y. 2017).....................................................................................6

*Thompson v. Metro. Life Ins. Co.*,
    216 F.R.D. 55 (S.D.N.Y. 2003) ..............................................................................................7

*Van Oss v. N.Y.*,
    No. 10 Civ. 7524 (SAS), 2012 WL 2550959 (S.D.N.Y. July 2, 2012) .................................10

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005)..............................................................6, 7, 10, 13, 14, 16, 19

*Youngers v. Virtus Inv. Partners Inc.*,
    No. 15cv8262, 2017 WL 2062986 (S.D.N.Y. May 15, 2017)...............................................17

**Statutes**

15 U.S.C. § 77...............................................................................................................................22

15 U.S.C. § 78...............................................................................................................................11

15 U.S.C. § 78t (a) .......................................................................................................................2, 4

(15 U.S.C. §§ 78j(b)).....................................................................................................................2, 4

Sarbanes-Oxley Act of 2002 .........................................................................................................4

**Rules**

Fed. R. Civ. P. 23 ...............................................................................................................1, 22, 23

Rule 10b-5 .......................................................................................................................2, 4

**Other Authorities**

17 C.F.R. § 240.10b-5 ...................................................................................................2, 4

Alba Conte, Herbert B. Newberg, *Newberg on Class Actions* §11.45 (4th ed. 2002) .................................................................................................................15

Cornerstone Research, *Securities Class Action Settlements – 2018 Review and Analysis* (2019) ...................................................................................................19

Stefan Boettrich & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2018 Full-Year Review* (NERA Jan. 29, 2019) .....................................19

William Rubenstein, Alba Conte, & Herbert B. Newberg, Newberg on Class Actions § 13.44 (5th ed. 2014) ...............................................................................7

## I.   INTRODUCTION

Pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"),[1] Plaintiffs Rex and Roberta Ling Living Trust u/a December 6,1990, as Amended, John Taylor Jones, and David Thomas Jones (together, "Lead Plaintiffs"), individually and on behalf of all Class Members, present for the Court's final approval a $1.2 million United States dollars ($1,200,000) cash settlement resolving all claims in the above-captioned action ("Action") against Defendants, as set forth in the Stipulation of Settlement, dated March 3, 2020 (Docket ("Dkt.") No. 127-1) ("Stipulation").

The $1.2 million cash Settlement is a superb result for the Class and substantively fair under the factors articulated in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).  Lead Plaintiffs estimate that the proposed Settlement provides the Class with over 17% of likely recoverable damages[2]—well above median settlements for similar securities class actions.[3]  The Settlement's merit is further demonstrated by the fact that, to date, no potential Class Members have objected to the Settlement.  Further, the Settlement is entitled to a presumption of fairness because it resulted from arm's-length negotiations between highly experienced counsel and an all-day mediation session before an experienced mediator.

The Action consisted of over two years of litigation, wherein Lead Counsel: (a) conducted lengthy investigations reviewing and analyzing publicly available information regarding Defendants, including SEC filings, news articles, analyst reports, press releases, share-price movements, earnings calls, and analyst presentations; (b) carefully drafted a detailed

---

[1] Unless otherwise indicated, all capitalized terms herein have the meanings set forth in the Stipulation.

[2] This estimate is based on a calculation of damages performed by Lead Plaintiffs' damages consultant.

[3] *See infra* Section IV.B.7.

Amended Class Action Complaint for Violations of the Federal Securities Laws (the "Complaint," Dkt. No. 17); (c) consulted with a damages expert to evaluate recoverable losses; (d) consulted with an investigator; (e) thoroughly researched the securities laws and intricacies of the B Communications Ltd. ("BComm") business; (f) engaged in briefing related to a series of motions to dismiss the Complaint and defeated the motion filed by BComm; (g) engaged in class certification briefing, including engaging an expert and conducting expert depositions; (h) engaged in letter briefing surround discovery; (i) negotiated search terms; (j) produced and reviewed documents as part of discovery efforts; (k) successfully negotiated the $1.2 million Settlement; and (l) actively supported the Settlement, including by reaching the terms of the Stipulation with Defendants, seeking the Court's approval, and overseeing the settlement-administration process.

This Settlement was agreed to as class certification was pending. While Lead Plaintiffs believe they would have prevailed on class certification, it was uncertain as the motion for class certification was hotly contested and presented unique issues for adjudication. The Settling Parties disagreed on whether a classwide presumption of reliance could be utilized once Lead Plaintiffs established price impact, or if more proof that the stock traded in an efficient market was necessary.

Lead Plaintiffs respectfully request that the Court grant final approval of the Settlement and Plan of Allocation and grant final certification of the Class for settlement purposes.

## II.    PROCEDURAL HISTORY

Plaintiff Lynne P. Maleeff filed a class action complaint on June 29, 2017, alleging violations under Sections 10(b) and 20(a)-(b) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5) against BComm, Doron Turgeman, Itzik Tadmor and Ehud Yahalom. (Dkt. No. 1.) Rex and Roberta

Ling Living Trust u/a December 6, 1990, as Amended, John Taylor Jones and David Thomas Jones filed a motion to be appointed Lead Plaintiffs on August 28, 2017. (Dkt. No. 7.) On September 27, 2017, this Court issued an Order, appointing Rex and Roberta Ling Living Trust u/a December 6, 1990, as Amended, John Taylor Jones and David Thomas Jones as Lead Plaintiffs. (Dkt. No. 11.)

On December 8, 2017, Lead Plaintiffs filed their Complaint concerning securities fraud and asserting a class period of March 18, 2015 through September 6, 2017, inclusive, against BComm, Eurocom Communications Ltd., D.B.S. Satellite Services (1998) Ltd., Shaul Elovitch, Or Elovitch, Ron Eilon, Stella Handler, David Mizrahi, Micky Neiman, Allon Raveh, Itzik Tadmor, Doron Turgeman, Ehud Yahalom, and Linor Yochelman.

BComm is a holding company with a single asset: its controlling share ownership of Bezeq The Israeli Telecommunication Corp. Ltd. ("Bezeq"), which provides telecommunications services in Israel. The Complaint in this Litigation alleges that, during the Class Period, Defendants and Dismissed Defendants made material misstatements and omissions in connection with BComm and Bezeq's substantial overpayment in the purchase of D.B.S. Satellite Services (1998) Ltd. ("Yes"). This was done to benefit Shaul Elovitch, BComm's then-controlling shareholder and former chairman of its Board of Directors.

Specifically, the Complaint alleges that Defendants and Dismissed Defendants materially inflated the key metric of Yes's valuation, its reported free cash flow. The Complaint alleges that investors were misled not only by Yes's reported results, which were incorporated into BComm's financials, but also by BComm's purported compliance with laws and deterrence of conflicts of interest with its executives, as reflected in its Code of Business Conduct and Ethics ("Code of Ethics"), and BComm's representations about the adequacy of internal controls under

the Sarbanes-Oxley Act of 2002.  Additionally, the Complaint alleges BComm misrepresented the independence of the committee that reviewed the Yes-Bezeq transaction.

The Complaint charged that the conduct of the Defendants and Dismissed Defendants violated Sections 10(b) and 20(a) of the Securities Exchange Act (15 U.S.C. §§ 78j(b), and 78t(a)) and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission (17 C.F.R. § 240.10b-5).  From the outset of the litigation, BComm has consistently denied any wrongdoing, liability or damages.

On February 20, 2018, Defendant BComm moved to dismiss or stay the Complaint as to BComm.  (Dkt. No. 33.)  On July 12, 2018, Defendants Itzik Tadmor, Doron Turgeman and Ehud Yahalom moved to dismiss the Complaint as to them.  (Dkt. No. 59.)  That same day, Defendants D.B.S. Satellite Services (1988) Ltd., Ron Eilon and Micky Neiman moved to dismiss the Complaint as to them.  (Dkt. No. 67.)  That same day, Defendants Stella Handler, David Mizrahi, Allon Raveh and Linor Yochelman moved to dismiss the Complaint as to them. (Dkt. No. 71.)

On September 27, 2018, BComm's motion to dismiss was granted in part and denied in part.  Judge Oetken held that statements about BComm's Code of Ethics and disclosure and reporting controls were not actionable.  *See Rex & Roberta Ling Living Tr. v. B Commc'ns Ltd.*, 346 F. Supp. 3d 389, 405 (S.D.N.Y. 2018).  However, Judge Oetken also held that Lead Plaintiffs had adequately alleged that (i) statements regarding BComm's reported free cash flows figures for 2015 and 2016; and (ii) a March 18, 2015, SEC filing statement regarding the independence of a subcommittee that approved a merger between Bezeq The Israeli Telecommunication Corp. Ltd. and D.B.S. Satellite Services (1998) Ltd. were materially false or misleading.  *Id.* at 404.  On March 28, 2019, the Court granted the motions of all the parties who

filed motions to dismiss on July 12, 2018.  (Dkt. No. 87.)  This left only BComm and Defendants

Eurocom, Shaul Elovitch and Or Elovitch—who have not yet appeared—in the Litigation.

On July 31, 2019, the Lead Plaintiffs moved the Court to certify the Litigation as a class

action and appoint themselves as Class Representatives and their counsel, Pomerantz, as class

counsel.  (Dkt. No. 97.)  BComm opposed this motion.  (Dkt. No. 108.)  The Lead Plaintiffs'

class certification motion was fully briefed as of January 13, 2020.  (Dkt. No. 118.)  On February

4, 2020, after being informed by letter that the parties had reached a settlement in principal, the

Court denied the class certification motion without prejudice to renewal in connection with the

motion for approval of the settlement.  (Dkt. No. 123.)

## III.   THE SETTLEMENT

In April 2019, counsel for the Settling Parties and then-BComm Chief Executive Officer

Ami Barlev, met about a potential resolution of the Action.  Those initial talks did not lead to an

agreement and the Settling Parties continued actively litigating the Action, including briefing

class certification and participating in discovery.  In January 2020, the Settling Parties resumed

settlement discussions.   After two negotiation sessions, the Settling Parties executed a

Memorandum of Understanding setting forth their agreement in principle to settle the Litigation

("MOU") for $1.2 million.

On March 3, 2020, Lead Plaintiffs filed a motion for preliminary approval of settlement

("Preliminary Approval Motion") and accompanying documents.  (Dkt. Nos. 125-127.)  The

Court issued an Order Preliminarily Approving Settlement and Providing for Notice on April 10,

2020 ("Preliminary Approval Order," Dkt. No. 128).   The Court scheduled the Settlement

Hearing for final approval of the Settlement, attorney's fees and expenses, Lead Plaintiffs'

compensatory award, and to hear any objections by Class Members, for August 10, 2020, at 11

a.m.  *Id.*   BComm has paid $1.2 million into an escrow account for the Class's benefit.

(Lieberman Decl. ¶ 29).   The court-approved claims administrator, Strategic Claims Services ("SCS"), mailed a total of 1,385 Notices of Proposed Settlement of Class Action ("Notice") and Proof of Claim and Release Forms ("Proof of Claim") (collectively, the "Notice Packet") to potential Class Members, brokers and nominee holders.   (*See* Lieberman Decl., Ex. 1 (Declaration of Josephine Bravata Concerning: (A) Mailing of the Notice and Claim Form; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections ("Bravata Decl.")) ¶¶ 3-7).   The Summary Notice of Pendency and Proposed Settlement of Class Action and Final Approval Hearing ("Summary Notice") was published on May 8, 2020.   *Id.* ¶ 9 and Ex. C.   As of the time of this filing on June 15, 2020, not a single Class Member has transmitted an objection to the Settlement or requested exclusion from the Class.   *Id.* ¶¶ 12-13. The deadline to file an objection or submit a request for exclusion is July 20, 2020.   (Preliminary Approval Order ¶¶ 14, 17.)

## IV.   THE PROPOSED SETTLEMENT SHOULD BE GRANTED FINAL APPROVAL

"A court may approve a class action settlement if it is 'fair, adequate, and reasonable, and not a product of collusion.'"   *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (quoting *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000)).   "To determine whether a settlement is fair, reasonable, and adequate, the Second Circuit instructs district courts to examine 'the negotiating process leading up to the settlement, *i.e.*, procedural fairness, as well as the settlement's substantive terms, i.e., substantive fairness.'"   *Stinson v. City of N.Y.*, 256 F. Supp. 3d 283, 288 (S.D.N.Y. 2017) (quoting *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803-04 (2d Cir. 2009)); *see also In re Platinum & Palladium Commodities Litig.*, No. 10cv3617, 2014 WL 3500655, at *11 (S.D.N.Y. July 15, 2014) (same).   Courts consider "both the settlement's terms and the negotiating process leading to settlement." *Wal-Mart Stores*, 396 F.3d at 116.   The Second Circuit has repeatedly noted the "strong judicial policy in favor of

settlements, particularly in the class action context." *Id.*[4]   Moreover, the Supreme Court has cautioned that in evaluating a proposed class-action settlement, courts should "not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981).   This is particularly important in complex class actions where substantial resources are conserved by avoiding the time, cost, and rigor of prolonged litigation. *See* 4 William Rubenstein, Alba Conte, & Herbert B. Newberg, Newberg on Class Actions § 13.44 (5th ed. 2014).  The Settlement here is fair, adequate, reasonable, and not a product of collusion.

> ### A.    The Settlement Is Presumptively and Procedurally Fair

"So long as the integrity of the arm's-length negotiation process is preserved . . . *a strong initial presumption of fairness attaches to the proposed settlement*." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240 (CM), 2007 WL 2230177, at *10 (S.D.N.Y. July 27, 2007) (emphasis in original); *Thompson v. Metro. Life Ins. Co*., 216 F.R.D. 55, 61 (S.D.N.Y. 2003) (same); *In re Paine Webber Ltd. P'ships Litig*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997) (same), *aff'd*, 117 F.3d 721 (2d Cir. 1997).   Additionally, "[i]n appraising the fairness of a proposed settlement, the view of experienced counsel favoring the settlement is entitled to great weight." *EVCI*, 2007 WL 2230177, at *10; *Fleisher v. Phx. Life Ins. Co*., No. 11-cv-8405, 2015 WL 10847814, at *4 (S.D.N.Y. Sept. 9, 2015) (finding courts should give "proper deference to the private consensual decision of the parties" and "the unique ability of class and defense counsel to assess the potential risks and rewards of litigation"); *Clark v. Ecolab Inc.*, No. 07 Civ. 8623 (PAC), 2010 WL 1948198, at *4 (S.D.N.Y. May 11, 2010) (holding that "a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel").

---

[4] All internal citations and quotations are omitted herein, unless stated otherwise.

The Settlement was reached through arm's-length negotiation, which included initial settlement discussions that were not successful, and follow-up sessions between the Settling Parties.  (Lieberman Decl. ¶¶ 21, 24.)  Lead Plaintiffs claims survived a motion to dismiss and Lead Plaintiffs believe that the claims asserted in the Action have merit, and that the evidence developed to date supports their claims.  (Lieberman Decl. ¶ 30.)  However, the expense and length of continued proceedings necessary to prosecute the Litigation against Defendants through trial and through appeals would be great.  (*Id.*)  Additionally, the negotiations between the parties that led to the settlement were informed by the uncertain outcome and the risk of any litigation, especially in complex actions such as this Action, and the difficulties and delays inherent in such litigation.  (*See id.*)  The arm's-length nature of the settlement negotiations supports the conclusion that the Settlement is fair and free of collusion.  *McReynolds v. Richards-Cantave*, 588  F.3d  790 , 803 (2d Cir. 2009) (A presumption of procedural fairness exists "where a class settlement [is] reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.")

Further, in negotiating the Settlement, Lead Plaintiffs benefitted from attorneys (including Pomerantz's Managing Partner Jeremy A. Lieberman and Of Counsel Cara David) who are highly experienced in complex class litigation and familiar with the case's legal and factual issues.  *See* Lieberman Decl., Ex. B (Pomerantz Resume); *Lyons v. Marrud, Inc.*, No. 66 Civ. 415., 1972 WL 327, at *2 (S.D.N.Y. June 6, 1972) ("Experienced and competent counsel have assessed these problems and the probability of success on the merits . . . . The parties' decision regarding the respective merits of their positions has an important bearing on this case.").  The efforts of Class Counsel, who are highly experienced in the area of complex securities fraud litigation, secured a Settlement that provides substantial benefits to the Class

($1.2 million in cash), especially considering the expense, risks, difficulties, delays, and uncertainties of continued litigation, trial, and post-trial proceedings.

The Settling Parties and their counsel were knowledgeable about the strengths and weaknesses of the case prior to their agreement to settle.   Lead Counsel (a) conducted a comprehensive investigation into the allegedly wrongful acts, which included, among other things, a review and analysis of BComm's SEC filings and investor calls, and public reports and information concerning BComm; (b) consulted damages experts; (c) thoroughly researched the securities laws as well as the intricacies of BComm's business; (d) consulted with an investigator; (f) engaged in briefing related to a series of motions to dismiss the Complaint and defeated the motion filed by BComm; (g) engaged in class certification briefing, including engaging an expert and conducting expert depositions; (h) engaged in letter briefing surround discovery; (i) negotiated search terms; (j) produced and reviewed documents as part of discovery efforts; (k) successfully negotiated the $1.2 million Settlement; and (l) actively supported the Settlement, including by reaching the terms of the Stipulation with Defendants, seeking the Court's approval, and overseeing the settlement-administration process.  (*See* Lieberman Decl. ¶ 63.)

The Settlement does not provide preferential treatment to Lead Plaintiffs or any other Class Members.   The proposed Plan of Allocation, which is set forth on pages 11-14 of the Notice, provides a fair and reasonable method to allocate the Net Settlement Fund among Class Members who submit valid Proofs of Claim.  (Lieberman Decl. ¶¶ 46-57.)  The Net Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Claims.  *Id.*  Similar plans have repeatedly been approved by courts in this

District.  *See In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 386-87 (S.D.N.Y. 2013); *In re*

*Marsh ERISA Litig.*, 265 F.R.D. 128, 145-46 (S.D.N.Y. 2010).

For all these reasons, a strong initial presumption of fairness deservedly attaches to the

Settlement, which resulted from a thorough arm's-length process.  *See Van Oss v. N.Y.*, No. 10

Civ. 7524 (SAS), 2012 WL 2550959, at *1 (S.D.N.Y. July 2, 2012) (finding "a strong

presumption of fairness attaches because the Settlement was reached by experienced counsel

after extensive arm's length negotiations.")

### B.      The Settlement Is Substantively Fair

Courts in the Second Circuit consider the nine factors enumerated in *Grinnell*, 495 F.2d

at 463 (the "*Grinnell* factors"), to evaluate the substantive fairness of a settlement.  *See Hayes v.*

*Harmony Gold Mining Co.*, 509 F. App'x 21, 22-24 (2d Cir. 2013) (citing *Wal-Mart Stores*, 396

F.3d at 117-19).  The *Grinnell* factors are: (1) the complexity, expense, and likely duration of the

litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the

amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing

damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the

defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement

fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement

fund to a possible recovery in light of all the attendant risks of litigation.  *Grinnell*, 495 F.2d at

463.  All nine factors need not be satisfied; rather, the Court should consider the totality of these

factors in light of the circumstances.  *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 327

F.R.D. 483, 493 (S.D.N.Y. 2018); *see also City of Providence v. Aéropostale, Inc.,* 2014 WL

1883494, at *10 (S.D.N.Y. May 9, 2014) (same).  Further, a court's function in reviewing a

settlement is not to rewrite the settlement agreement reached by the parties or try the case by

resolving issues intentionally left unresolved. *See Shapiro v. JPMorgan Chase & Co.*, No. 11

Civ. 8331 (CM) (MHD), 2014 WL 1224666 at *7 (S.D.N.Y. Mar. 21, 2014).  On balance, the Grinnell factors support approval of the Settlement.

> ### 1.    Litigating Securities Claims Would be Long, Complex, and Expensive

The Settlement provides substantial and certain relief without the delay and expense of motion practice, discovery, class certification, trial, and post-trial proceedings.  Because of the stringent requirements imposed by the Private Securities Litigation Reform Act of 1995, 15 U.S.C. §78u-4(f)(7) ("PSLRA"), amendments to the Exchange Act, and supervening case law developments, such as the Supreme Court's decision in *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258 (2014), prosecution of securities class actions is inherently complex and lengthy.  *See Guevoura Fund Ltd. v. Sillerman*, No. 1:15-cv-07192-CM, 2019 WL 6889901, at *7 (S.D.N.Y. Dec. 18, 2019) ("Securities class actions are notoriously complex[.]"); *Bear Stearns*, 909 F. Supp. 2d at 266 ("[S]ecurities class actions are notably difficult and notoriously uncertain[.]"); *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 424 (S.D.N.Y. 2001) (finding "most securities fraud cases[] are complex and challenging as regards both liability and damages" even when defendants "have admitted" errors); *In re Gilat Satellite Networks, Ltd.*, No. CV-02-1510 (CPS), 2007 WL 1191048, at *10 (E.D.N.Y. Apr. 19, 2007) ("Securities class actions are generally complex and expensive to prosecute.").

If the parties did not agree to settle, they would have faced a continued, and expensive, discovery process, summary judgment briefing, and the risks of trial.  A jury would have to determine numerous complex securities law issues and navigate battles of the experts regarding merits issues, market efficiency, loss causation, and damages.  The Court and/or jury, depending on the proceeding, would have had to determine: (i) whether the alleged representations/omissions were material; (ii) whether Defendants acted with scienter; (iii) whether Lead Plaintiffs are entitled to a presumption of reliance; and (iv) the artificial inflation

of BComm stock and how much of the price declines were attributable to what Lead Plaintiffs allege were the disclosures of information correcting the alleged false statements. *Any* recovery would be very uncertain and, because of the near certainty of appeals, inevitably delayed by years.

In this Action, class certification is hotly contested and presents unique issues for adjudication, as was made clear through motion papers and expert depositions. BComm argued that its stock did not trade in an efficient market and efficiency was required in order to trigger the classwide presumption of reliance laid out in *Basic Inc. v. Levinson*, 485 U.S. 224, 241-242 (1988). Whereas Lead Plaintiffs argued that statistically significant price impact was sufficient to trigger the presumption. While Lead Plaintiffs believe they would have prevailed on their class certification motion, it was not certain a class would be certified without the Settlement.

This is also a case where there are unusual discovery issues and, after extensive letter briefing to the Court, is was clear that motion practice regarding discovery parameters was virtually inevitable. *See In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 425-26 (S.D.N.Y. 2001) ("To approve a proposed settlement, . . . the Court need not find that the parties have engaged in extensive discovery. Instead, it is enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to intelligently make . . . an appraisal of the Settlement.") (quotation marks and citations omitted).

Even after discovery-related briefing, given that many relevant documents are foreign language documents, and many witnesses are located outside of the United States, discovery in the Action was likely to be extremely costly. The Settling Parties would have also had to incur substantial other costs in a prolonged litigation, which would have likely spanned through summary judgment, trial, and appeals. Lead Counsel would anticipate, given the complexities,

continuing to review at least hundreds of thousands of pages of documents, if not more, and taking many depositions. In addition to merits discovery, the parties would have to continue engaging experts through the remainder of the litigation.

Even assuming a favorable trial outcome, Defendants would likely appeal, further delaying any benefit to the Class. Moreover, even if a larger judgment were recoverable at trial, courts recognize that the delay occasioned by trial, post-trial, and appellate processes greatly reduces the value of any award. *See In re Visa Check/MasterMoney Antitrust Litig.*, 297 F. Supp. 2d 503, 510, 526 (E.D.N.Y. 2003) (approving settlement where action "would have taken many more years to finally resolve" and "exhaust all avenues of review"), *aff'd sub nom. Wal-Mart*, 396 F.3d 96. Even large judgments recovered after lengthy litigation and trial can be completely lost on appeal or as a result of a post-trial judgment as a matter of law. *See, e.g.*, *Backman v. Polaroid Corp.*, 910 F.2d 10, 11-18 (1st Cir. 1990) (reversing plaintiffs' multi-million dollar judgment after 11 years of litigation); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1219, 1221-33 (10th Cir. 1996) (overturning, on the basis of 1994 Supreme Court opinion, jury verdict rendered at trial in 1988 for case filed in 1973); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1443-49 (11th Cir. 1997) (reversing $81.3 million jury verdict after nearly 7 years of litigation). And, in this Action, damages were only expected to be around $7 million, making the upside of a lengthy trial minimal.

Thus, continued litigation presented great risk and uncertainty. Conversely, the Settlement provides a gross recovery certain of $1.2 million in cash, less the attorneys' fees, litigation expenses, administration costs, and Lead Plaintiffs' award that the Court may approve. The substantial and certain Settlement reached in this Action, compared to the significant complexity, delay, expense, and uncertainty of attempting to litigate to trial, weighs heavily in

favor of the Settlement.  *In re Sturm, Ruger, & Co. Inc. Sec. Litig.,* No. 3:09cv1293 (VLB), 2012 WL 3589610, at *13-14 (D. Conn. Aug. 20, 2012) (finding complexity, expense, and duration of litigation supported settlement approval in securities-fraud class action); *In re Indep. Energy Holdings PLC Sec. Litig.*, No. 00 Civ. 6689 (SAS), 2003 WL 22244676, at *9 (S.D.N.Y. Sept. 29, 2003) (same).

**2.      The Class Reaction Supports Final Approval**

"It is well settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy[.]" *Bear Stearns*, 909 F. Supp. 2d at 266; *In re Veeco Instruments Sec. Litig.*, No. 05 MDL 01695 (CM), 2007 WL 4115809, at *7 (S.D.N.Y. Nov. 7, 2007) (same); see also *Aéropostale*, 2014 WL 1883494, at *5 (finding the Class's reaction to the Settlement is a significant factor for the court to weigh when considering its adequacy).  When there are no objectors, as is the case here, the court can view this as indicative of the adequacy of the settlement.  *See Wal-Mart*, 396 F.3d at 118; *Guevoura,* 2019 WL 6889901, at *7 ("[T]he absence of objectors may itself be taken as evidencing the fairness of a settlement." (quoting *Paine Webber*, 171 F.R.D. at 126)); *In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006) (finding that the "small number of objections . . . strongly favor the Settlement").

The Class is overwhelmingly in favor of the Settlement.  Summary Notice was published on May 8, 2020, and 1,385 Notice Packets have been mailed to potential Class Members, brokers and nominee holders.  (Bravata Decl., ¶¶ 7, 9, Ex. B.)  The Notice contains a description of the Action, the Settlement, and information about Class Members' right to participate in the Settlement by submitting Proofs of Claim; to object to the Settlement, the Plan of Allocation, and/or the Fee and Expense Application; or to request exclusion from the Class.  *Id.*, Ex. A

14

(Notice Packet).  As of the time of this filing, not a single Class Member has objected to the Settlement or requested exclusion from the Class.  (Lieberman Decl. ¶ 45.)

The Class's favorable reaction supports approving the Settlement.  *See Guevoura*, 2019 WL 6889901, at *7 (holding that "[t]he absence of negative feedback from Class Members . . . strongly supports approval of the Settlement"); *Bear Stearns*, 909 F. Supp. 2d at 267 (holding that the low rate of exclusion and objection "weighs strongly in favor of approval"); *AOL Time Warner*, 2006 WL 903236, at *10 (same).

### 3. Lead Plaintiffs Had Sufficient Command of the Case's Merits to Enter the Settlement

"There is no precise formula for what constitutes sufficient evidence to enable the court to analyze intelligently the contested questions of fact.  It is clear that the court need not possess evidence to decide the merits of the issue, because the compromise is proposed in order to avoid further litigation . . . . At minimum, the court must possess sufficient information to raise its decision above mere conjecture."  4 Alba Conte, Herbert B. Newberg, *Newberg on Class Actions* §11.45 (4th ed. 2002).  As a result, courts regularly approve settlements where, as here, Lead Counsel has "engaged in sufficient investigation of the facts."  *Am. Bank*, 127 F. Supp. 2d at 425-26; *see also Pantelyat v. Bank of Am., N.A.*, No. 16-cv-8964 (AJN), 2019 WL 402854, at *7 (S.D.N.Y. Jan. 31, 2019) (approving final settlement where case "settled swiftly"); *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000) (finding formal discovery unnecessary where the parties "engaged in sufficient investigation of the facts").

For this reason, courts have commended class counsel for recognizing when—as is the case here—a prompt resolution is in the best interest of the Class.  *See, e.g., In re Sony SXRD Rear Projection TV Class Action Litig.*, No. 06 Civ. 5173 (RPP), 2008 WL 1956267, at *7 (S.D.N.Y. May 1, 2008); *Veeco,* 2007 WL 4115809, at *7 ("[T]he parties need not have engaged

in full discovery."); *AOL Time Warner*, 2006 WL 903236, at \*10 ("Courts have approved settlements at all stages of the proceedings. The relevant inquiry for this factor is whether the plaintiffs have obtained a sufficient understanding of the case[.]").

The Action here had advanced through the Motion to Dismiss phase and the Settling Parties were in the midst of discovery, while waiting for the Court to rule on the class certification motion filed by Lead Plaintiffs.  Lead Plaintiffs had begun reviewing documents produced by BComm.  Lead Plaintiffs had a thorough understanding of the strengths and weaknesses of their claims.

For these reasons, and those detailed in Section IV.A., *supra*, the parties and counsel possessed sufficient information on the merits of the claims to enter the Settlement.  *See In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06 Civ. 5173 (RPP), 2008 WL 1956267, at \*7 (S.D.N.Y. May 1, 2008) (approving a settlement even before full merits discovery began because the parties had already "conducted sufficient discovery to understand their claims and negotiate settlement terms").

### 4.    There Are Substantial Risks of Establishing Liability and Damages

In assessing the fairness, reasonableness, and adequacy of a settlement, courts should consider the "risks of establishing liability [and] the risks of establishing damages."  *Grinnell*, 495 F.2d at 463; *Wal-Mart*, 396 F.3d at 117.  Analyzing these risks "does not require the Court to adjudicate the disputed issues or decide unsettled questions; rather, the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement."  *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004); *AOL Time Warner*, 2006 WL 903236, at \*11 (same).  In other words, "[i]n assessing the Settlement, the Court should balance the benefits afforded to members of the Class and the immediacy and certainty of a substantial recovery for them against the continuing risks of litigation."  *Castagna v. Madison*

16

*Square Garden, L.P.*, No. 09-cv-10211 (LTS)(HP), 2011 WL 2208614, at *6 (S.D.N.Y. June 7, 2011) (quoting *Maley,* 186 F. Supp. 2d at 364). Courts "approve settlements where plaintiffs would have faced significant legal and factual obstacles." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 37 (E.D.N.Y. 2019).

Here, despite Lead Counsel's confidence, there are significant risks to proving liability, loss causation, and damages. And even if Lead Plaintiffs prevail at trial, a jury verdict could be undone because of these potential difficulties. *See, e.g., Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713, 716 (11th Cir. 2012) (affirming district court's grant of judgment as a matter of law against plaintiff for failure to prove loss causation after jury verdict partially in favor of plaintiff).

If the Settlement were not finally approved, Lead Plaintiffs risk a class not being approved. As stated *supra*, class certification in this Action is hotly disputed and presents unique issues for adjudication. If the class were certified, Lead Plaintiffs would still have to survive summary judgment and establish falsity, materiality, scienter, and the timeliness of her claims to a jury's satisfaction.

These daunting risks of establishing liability and damages favor final approval. *See, e.g., See AOL Time Warner, Inc.* 2006 WL 903236, at *11 (recognizing that "avoiding dismissal at the pleading stage does not guarantee that scienter will be adequately proven at trial").

5.      **The Risks of Maintaining Class Action Status Through Trial**

While certification of securities class actions remains the norm, it is by no means automatic. *See, e.g., Youngers v. Virtus Inv. Partners Inc.*, No. 15cv8262, 2017 WL 2062986, at *3 (S.D.N.Y. May 15, 2017) (denying motion for certification of a class alleging securities fraud "because individual issues of reliance will predominate"); *Steginsky v. Xcelera, Inc.*, No. 3:12-cv-188 (SRU), 2015 WL 1036985, at *12 (D. Conn. Mar. 10, 2015) (denying motion for

certification of a class alleging securities fraud on standing grounds); *IBEW Local 90 Pension Fund v. Deutsche Bank AG*, 11 Civ. 4209 (KBF), 2013 WL 5815472, at *22 (S.D.N.Y. Oct. 29, 2013) (denying motion for class certification of class of U.S. purchasers because "individualized questions as to the named plaintiffs threaten to predominate"); *George v. China Auto. Sys., Inc.*, 11 Civ. 7533 (KBF), 2013 WL 3357170, at *13 (S.D.N.Y. July 3, 2013) (denying motion for class certification in putative securities class action).

As discussed *supra*, in this Action, class certification was hotly contested because BComm argued that its stock did not trade in an efficient market. (Dkt. No. 108.) Therefore, "the uncertainty surrounding class certification supports approval of the Settlement," *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546, at *6 (S.D.N.Y. Dec, 23, 2009).

### 6.      The Ability of Defendants to Withstand a Greater Judgment

Even if a judgment for a greater amount were a burden that BComm could bear, "the mere ability to withstand a greater judgment does not suggest that the Settlement is unfair." *AOL Time Warner*, 2006 WL 903236, at *12 (citing *D'Amato*, 236 F.3d at 86). The Court must weigh this factor "in conjunction with all of the *Grinnell* factors; most notably the risk of the class prevailing and the reasonableness of the settlement fund." *Id.* at *12. Thus, the Settlement of $1.2 million in cash plainly represents a fair compromise between the parties, and it should be finally approved.

### 7.      The Settlement Amount is Within the Range of Reasonableness

Courts typically analyze the last two *Grinnell* factors together. In so doing, courts "consider[] and weigh[] the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable*." In re Flag Telecom Holdings*, 2010 WL 4537550, at *20 (S.D.N.Y. Nov 8, 2010). A court's "determination of whether a given settlement amount is reasonable in light of the best

18

possibl[e] recovery does not involve the use of a mathematical equation yielding a particularized sum." *Bear Stearns*, 909 F. Supp. 2d at 269.  Instead, the Second Circuit has held that "[t]here is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Wal-Mart*, 396 F.3d at 119.

The Settlement provides for a recovery of $1.2 million in cash, before fees and expenses. This is an immediate benefit to the Class and is well within the range of reasonableness, particularly in light of the possible recovery and the substantial risks presented by the Action. Lead Plaintiffs' consultation with their expert indicated that, based on the Complaint's allegations, class-wide damages were approximately $7 million.  Using Lead Plaintiffs' estimate, the Settlement returns over 17% of estimated damages based on that analysis.  (Lieberman Decl. ¶ 35).

This recovery is also very favorable to the Class because it is well above the median settlement for similar securities class actions. *See* Stefan Boettrich & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2018 Full-Year Review* (NERA Jan. 29, 2019), at 35 (Fig. 27), 36 (Fig. 28) (showing the median settlement value in securities class actions in 2018 was just 2.6% of estimated damages, and for cases from 1996 to 2018 with NERA-defined losses from $100-199 million was only 3.1%);[5] Cornerstone Research, *Securities Class Action Settlements – 2018 Review and Analysis* (2019), at 6 (Fig. 5) (showing that from 2009 to 2017, the median settlement in securities class actions with simplified tiered damages ranging from $75-149 million and $150-249 million was approximately 5% and 4% of total damages,

---

[5] *See* https://www.nera.com/content/dam/nera/publications/2019/PUB_Year_End_Trends_012819_Final.pdf.

respectively; median in 2018 for these ranges was approximately 4.9% and 9.4%; from 2009 to

2017 the median was 5.1%, and in 2018 the median was 6%, for all securities class actions).[6]

Courts regularly approve securities class action settlements where the settlement amount

is as—or even less—substantial as the 17% of total estimated damages that Lead Plaintiffs have

achieved here.  *See, e.g.*, *City of Pontiac Gen. Emps.' Ret. Sys. v. Lockheed Martin Corp.*, 954 F.

Supp. 2d 276, 280 (S.D.N.Y. 2013) (approving settlement for 10% of plaintiff's estimated

damages); *In re China Sunergy Sec. Litig*, No. 07 Civ. 7895 (DAB), 2011 WL 1899715, at *5

(S.D.N.Y. May 13, 2011) (finding "average settlement amounts in securities fraud class

actions . . . over the past decade . . . have ranged from 3% to 7% of the class members' estimated

losses"); *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 483 n.130 (S.D.N.Y. 2009)

(citing law review article finding "the ratio of securities class action settlements to investors'

economic losses has ranged over recent years between two and three percent"); *In re Gulf

Oil/Cities Serv. Tender Offer Litig.*, 142 F.R.D. 588, 590-91 (S.D.N.Y. 1992) (approving

settlement of "a bit more than 48 cents per share" out of potential recovery of $30 per share); *In

re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001) (citing studies that show

the average securities-fraud class action settlement since 1995 yielded recovery between 5.5% to

6.2% of estimated losses); *Grinnell*, 495 F.2d at 455 n.2 ("In fact there is no reason, at least in

theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part

of a single percent of the potential recovery.").

## V.   THE PLAN OF ALLOCATION SHOULD BE APPROVED

"To warrant approval, the plan of allocation must also meet the standards by which the

settlement was scrutinized—namely, it must be fair and adequate. When formulated by

---

[6] *See* https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2018-Review-and-Analysis.pdf.

competent and experienced counsel, a plan for allocation of net settlement proceeds need have only a reasonable, rational basis. Such a reasonable plan may consider the relative strength and values of different categories of claims." *In re IMAX Secs. Litig.*, 283 F.R.D. 178, 192 (S.D.N.Y. 2012) (alteration and citations omitted).   Pro-rata distributions are regularly "determined to be fair, adequate, and reasonable." *Fleisher*, 2015 WL 10847814, at *12 (collecting cases).

The proposed Plan of Allocation, developed by Lead Counsel in consultation with a damages expert, provides a fair and reasonable method to allocate the Net Settlement Fund among Class Members who submit valid Proof of Claim.   (Lieberman Decl. ¶¶ 46-57.)   A recognized-loss amount will be calculated for each purchase or acquisition of BComm Shares during the Class Period listed on the Proof of Claim and for which adequate documentation is provided.   *Id.*   The Net Settlement Fund is allocated to the BComm Shares that the Settlement covers based on the proportionate trading volume for these securities during the Class Period. *Id.*   In addition, the calculation of Recognized Loss amounts is based on the difference between the amount of estimated alleged artificial inflation in BComm Shares on the purchase date and the amount of estimated alleged artificial inflation on the sale date.   *Id.*   The sum of the recognized-loss amounts for all of a Claimant's purchases during the Class Period is the Claimant's Recognized Claim.   The Net Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on the size of their Recognized Claims.   *Id.*

Counsel submits that the Plan of Allocation fairly and rationally allocates the proceeds of the Net Settlement Fund among Class Members based on the losses they suffered on transactions in BComm Shares attributable to the conduct alleged.   Moreover, the Plan of Allocation is set forth in the Notice, and to date no objections to the Plan of Allocation have been received from any Class Members.   *Id.* ¶ 57.

Accordingly, for all of the reasons set forth herein, the Plan of Allocation is fair and reasonable and should be granted final approval for the purpose of administering the Settlement.

## VI.     THE CLASS SHOULD BE FINALLY CERTIFIED

The Preliminary Approval Order certified the Class for settlement purposes under Rules 23(a) and (b)(3).  *See* Preliminary Approval Order ¶¶ 1-2.  There have been no changes to alter the propriety of class certification for settlement purposes.  Thus, for the reasons stated in Lead Plaintiffs' Memorandum of Law in Support of Unopposed Motion for Preliminary Approval (Dkt. No. 126), Lead Plaintiffs respectfully request that the Court affirm its certification in the Preliminary Approval Order of the Class under Rules 23(a) and (b)(3).

## VII.    NOTICE TO THE CLASS COMPLIED WITH RULE 23 AND DUE PROCESS

Courts "must direct notice in a reasonable manner to all class members who would be bound by the proposal."  Rule 23(e)(1).  Notice must be the "best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).

Both the substance of the Notice and the means of dissemination satisfied these standards.  The Court-approved Notice includes all the information required by Rule 23(c)(2)(B) and the PSLRA, 15 U.S.C. §§ 77z-1(a)(7), 78u-4(a)(7), including (i) an explanation of the Action and claims asserted; (ii) the definition of the Class; (iii) the amount of the Settlement; (iv) a description of the Plan of Allocation; (v) the Parties' reasons for proposing the Settlement; (vi) the fees and expenses sought by Counsel, administrative costs, and the award to Lead Plaintiffs; (vii) the rights of Class Members, including the right to accept, opt out, or object to the Settlement, Plan of Allocation, or the requested attorneys' fees or expenses; (viii) the process for filing a proof of claim; (ix) the necessary information for any Class Member to examine the Court records; (x) instructions to securities brokers and other nominee holders for forwarding the

Notice to those persons for whom the nominees held shares in street name; and (xi) a statement of the binding effect of a judgment on Class Members.  (Lieberman Decl. ¶ 43).

The Notice program was carried out by SCS, a third-party claims administrator nationally recognized for notice and claims administration, under the supervision of Lead Counsel. (Bravata Decl. ¶¶ 1-8.)  In accordance with the Court's order, SCS distributed 1,385 Notice Packets to potential Class Members, brokers, and nominee holders.  *Id.* ¶ 7.  The Summary Notice was published online over *Globe Newswire* on May 8, 2020.  *Id.* ¶ 9, Ex. C.  The Notice and Stipulation are also available on SCS's website. *Id.* ¶ 11. This combination of first-class mail to all Class Members who could be identified with reasonable effort, supplemented by notice in appropriate, widely circulated publications, and posted on the Internet, was "the best notice . . . practicable under the circumstances."  Rule 23(c)(2)(B); *In re Advanced Battery Techs. Sec. Litig.*, 298 F.R.D. 171, 182-83 (S.D.N.Y. 2014).

## VIII.   CONCLUSION

Lead Plaintiffs respectfully request that the Court grant final approval of the Settlement and enter the proposed Final Judgment and Order of Dismissal with Prejudice.

Dated:  June 15, 2020

**POMERANTZ LLP**

*/s/Jeremy A. Lieberman*
Jeremy A. Lieberman
Cara David
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (917) 463-1044
Email: jalieberman@pomlaw.com
        cdavid@pomlaw.com

*Lead Counsel for Lead Plaintiffs*

**BRONSTEIN, GEWIRTZ
& GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600

New York, NY 10165
(212) 697-6484
peretz@bgandg.com

*Additional Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 15, 2020, a copy of the foregoing was filed electronically via the Court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
