## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| REX AND ROBERTA LING LIVING TRUST u/a DECEMBER 6, 1990, as AMENDED, JOHN TAYLOR JONES, and DAVID THOMAS JONES, Individually and on Behalf of All Others Similarly Situated, | Case No. 1:17-cv-04937 (JPO) |
| Plaintiffs, | |
| -against- | ECF CASE |
| B COMMUNICATIONS LTD., EUROCOM COMMUNICATIONS LTD., SHAUL ELOVITCH, and OR ELOVITCH, | |
| Defendants. | |

**DECLARATION OF JEREMY A. LIEBERMAN IN SUPPORT OF LEAD PLAINTIFFS'
(1) UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENTAND PLAN OF ALLOCATION OF SETTLEMENT PROCEEDS AND
(2) UNOPPOSED MOTION FOR AWARD OF ATTORNEYS' FEES,
REIMBURSEMENT OF EXPENSES, AND COMPENSATORY AWARD
<u>TO LEAD PLAINTIFFS</u>**

## TABLE OF CONTENTS

I.      SUMMARY OF LEAD PLAINTIFFS' CLAIMS ................................................ 4

II.     PROCEDURAL HISTORY .................................................................................. 5

III.    THE SETTLEMENT ........................................................................................... 8

        A.      Reasons for the Settlement ........................................................................ 8

        B.      Settlement Terms ....................................................................................... 9

IV.     THE COURT'S PRELIMINARY APPROVAL ORDER AND
        PLAINTIFFS'DISSEMINATION OF NOTICE ............................................... 11

        A.      Preliminary Approval Order .................................................................... 11

        B.      Notice ...................................................................................................... 12

        C.      Reaction of the Class ............................................................................... 13

        D.      The Plan of Allocation ............................................................................ 13

V.      LEAD COUNSEL'S APPLICATION FOR AN AWARD OF ATTORNEYS' FEES
        AND REIMBURSMENT OF EXPENSES ....................................................... 16

        A.      Attorneys' Fees ....................................................................................... 16

        B.      Costs and Expenses ................................................................................. 20

VI.     AN AWARD TO THE LEAD PLAINTIFFS IS WARRANTED .................... 20

I, Jeremy A. Lieberman, declare and state, under penalty of perjury, that the following is true and correct to the best of my knowledge, information, and belief:

1.      I am a partner at the Pomerantz LLP ("Pomerantz") law firm, court-appointed Lead Counsel on behalf of Plaintiffs Rex and Roberta Ling Living Trust u/a December 6,1990, as Amended, John Taylor Jones, and David Thomas Jones (together, "Lead Plaintiffs") in the class action styled as *Maleeff v. B Communications Ltd.*, No. 1:17-cv-04937 (JPO) (S.D.N.Y.) (the "Action").[1]

2.      I am duly admitted to practice in New York and before this Court.  I have personal knowledge of the matters set forth herein and, if called upon, could and would competently testify thereto.

3.      I respectfully submit this Declaration ("Decl." or "Declaration") in support of the following: (1) Lead Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement and Plan of Allocation of Settlement Proceeds; and (2) Lead Plaintiffs' Unopposed Motion for Award of Attorneys' Fees, Reimbursement of Expenses, and Compensatory Award to Lead Plaintiff.  The terms of the Settlement are set forth in the Stipulation.  The Court preliminarily approved the Stipulation by its Order Preliminarily Approving Settlement and Providing for Notice, filed on the docket April 10, 2020.  (Dkt. No. 128,  "Preliminary Approval Order.")

4.      This Declaration sets forth the nature of the claims asserted, the Action's procedural history, and the methods by which the Class was notified of the Settlement.  It also demonstrates the reasons why the Settlement and Plan of Allocation are fair, reasonable, and adequate, and why Counsel's application for attorneys' fees, reimbursement of expenses, and an

---

[1] All capitalized terms that are not otherwise defined herein have the meanings provided in the Stipulation of Settlement, dated March 3, 2020 (Docket ("Dkt.") No. 127-1) ("Stipulation"). Unless indicated otherwise, "Dkt. No." references herein are to the *Maleeff v. B Communications Ltd.*, No. 1:17-cv-04937 (JPO) (S.D.N.Y.), docket.

award for Lead Plaintiff should be approved.

5.      The settlement contemplated by the Stipulation ("Settlement") provides for a payment of one million two hundred thousand U.S. dollars ($1,200,000.00) in cash in exchange for the release of all claims asserted by Lead Plaintiffs against defendants B Communications Ltd. ("BComm"), Eurocom Communications Ltd., Shaul Elovitch and Or Elovitch (collectively, "Defendants")[2] and completely resolves this Action.  While Lead Counsel believes that the allegations in the Amended Class Action Complaint for Violations of the Federal Securities Laws (the "Complaint," Dkt. No. 17) have substantial merit, Lead Counsel respectfully submits that the Settlement represents an excellent result for the Class.

6.      The Settlement is the result of extensive arm's-length settlement negotiations among esteemed and experienced counsel.  The ability of Counsel to reach a compromise in light of the many complex issues present in this Action evidences the skill of representation and the quality of the results.

7.      Pursuant to the Preliminary Approval Order, 1,385 Notices of Proposed Settlement of Class Action ("Notice") and Proof of Claim and Release Forms ("Claim Form") (collectively, the "Notice Packet") were mailed to potential Class Members, brokers and other nominees, and the Notice Packet, the Preliminary Approval Order, and the Stipulation were posted online at https://www.strategicclaims.net/bcomm/.  *See* Declaration of Bravata Concerning: (A) Mailing of the Notice and Claim Form; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections, dated June 15, 2020 ("Bravata Decl."), at ¶¶ 1-7, submitted as Exhibit ("Ex.") 1 hereto.  The Summary Notice of Pendency and Proposed Settlement of Class Action and Final Approval Hearing ("Summary Notice") was posted by wire on *GlobeNewswire* on January 10, 2020.  Bravata Decl., ¶ 9 and Ex. C.

---

[2] Eurocom Communications Ltd., Shaul Elovitch and Or Elovitch have not yet appeared in the Action.

8.     For well over two years prior to the Settlement, Lead Counsel successfully overcame the significant obstacles that this Action presented and adeptly navigated the complicated issues of law and fact inherent in prosecuting this claim.  The Settlement provides an immediate and certain benefit to the Class, considering the significant risks that a smaller recovery—or, indeed, no recovery—might be achieved in the future.  While the Settling Parties had briefed class certification, it had yet to be decided.  While Lead Plaintiffs believe they would have prevailed on class certification, it was uncertain as the motion for class certification was hotly contested and presented unique issues for adjudication.  The Settling Parties disagreed on whether a classwide presumption of reliance could be utilized once Lead Plaintiffs established price impact, or if more proof that the stock traded in an efficient market was necessary. Even if the Court certified a class, there would still be many discovery disputes, a motion for summary judgement, and trial and the likely appeals that would follow, which could prolong the Action for years.  For these reasons and those set forth more fully below, Lead Counsel respectfully submits that the Settlement is in the best interests of the Class and should be approved as fair, adequate, and reasonable.

9.     Lead Counsel also respectfully requests that the Court approve the Plan of Allocation for the Settlement proceeds, the award of attorneys' fees in the amount of three hundred thousand U.S. dollars ($300,000) plus accrued interest, and reimbursement of expenses in the amount of $514,525.37 as fair and reasonable.  The fee award constitutes one-fourth (25%) of the Settlement Fund, which is within the range of attorneys' fees regularly awarded by courts within the Second Circuit and is reasonable in light of the relevant factors, including the quality of the representation, the complexity of the Action, and the Class' reaction to the fee request. The Notice Packet published stated Lead Counsel could be awarded attorneys' fees up to 30%.

(Dkt. No. 127-3.)  Lead Counsel is taking 5% less to allow more money for Class Members.  The expenses incurred were reasonable and necessary to prosecute this Action—including a complicated class certification process—and to reach this favorable result for the Class.  Lead Counsel also respectfully requests an award of two thousand U.S. dollars ($2,000.00) to each of the three Lead Plaintiffs, totaling six thousand U.S. dollars ($6,000.00), for their substantial efforts in leading the prosecution of the Action.

## I.     SUMMARY OF LEAD PLAINTIFFS' CLAIMS

10.     Lead Plaintiffs' claims are set forth in the Complaint (Dkt. No. 17), which asserts claims against Defendants on behalf of BComm investors during the Class Period. The Complaint alleges that, during the Class Period, Defendants issued false and misleading statements pertaining to BComm's business.  Specifically, the Complaint alleges that Defendants and Dismissed Defendants materially inflated the key metric of Yes's valuation, its reported free cash flow.  The Complaint alleges that investors were misled not only by Yes's reported results, which were incorporated into BComm's financials, but also by BComm's purported compliance with laws and deterrence of conflicts of interest with its executives, as reflected in its Code of Business Conduct and Ethics, and BComm's representations about the adequacy of internal controls under the Sarbanes-Oxley Act of 2002.  Additionally, the Complaint alleges BComm misrepresented the independence of the committee that reviewed the Yes-Bezeq transaction.

11.     The Complaint alleges that investors learned the truth through a series of corrective disclosures during the Class Period that took place on June 20, 2017; June 22, 2017; June 26, 2017; July 6, 2017; July 17, 2017; July 19, 2017; September 5, 2017; and September 7, 2017.

12.     The Complaint charged that the conduct of the Defendants and Dismissed Defendants violated Sections 10(b) and 20(a) of the Securities Exchange Act (15 U.S.C. §§

78j(b), and 78t(a)) and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission (17 C.F.R. § 240.10b-5).

13.     BComm continues to deny that they committed any acts or omissions giving rise to any liability and/or violation of the law.

## II.     PROCEDURAL HISTORY

14.     Following the series of corrective disclosures, Lead Counsel began a thorough investigation.   Among other investigative efforts, Lead Counsel reviewed and analyzed information regarding BComm's SEC filings, press releases, analyst reports, share-price movements, and public statements, as well as information in news articles and other publications.

15.     Plaintiff Lynne P. Maleeff filed a class action complaint on June 29, 2017, alleging violations under Sections 10(b) and 20(a)-(b) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5) against BComm, Doron Turgeman, Itzik Tadmor and Ehud Yahalom.  (Dkt. No. 1.)

16.     Rex and Roberta Ling Living Trust u/a December 6, 1990, as Amended, John Taylor Jones and David Thomas Jones filed a motion to be appointed Lead Plaintiffs on August 28, 2017.  (Dkt. No. 7.)  On September 27, 2017, this Court issued an Order, appointing Rex and Roberta Ling Living Trust u/a December 6, 1990, as Amended, John Taylor Jones and David Thomas Jones as Lead Plaintiffs.  (Dkt. No. 11.)

17.     On December 8, 2017, Lead Plaintiffs filed their Complaint concerning securities fraud and asserting a class period of March 18, 2015 through September 6, 2017, inclusive, against BComm, Eurocom Communications Ltd., D.B.S. Satellite Services (1998) Ltd., Shaul Elovitch, Or Elovitch, Ron Eilon, Stella Handler, David Mizrahi, Micky Neiman, Allon Raveh, Itzik Tadmor, Doron Turgeman, Ehud Yahalom, and Linor Yochelman.  (Dkt. No. 17.)

18.     On February 20, 2018, Defendant BComm moved to dismiss or stay the

Complaint as to BComm.  (Dkt. No. 33.)  On July 12, 2018, Defendants Itzik Tadmor, Doron Turgeman and Ehud Yahalom moved to dismiss the Complaint as to them.  (Dkt. No. 59.)  That same day, Defendants D.B.S. Satellite Services (1988) Ltd., Ron Eilon and Micky Neiman moved to dismiss the Complaint as to them.  (Dkt. No. 67.)  That same day, Defendants Stella Handler, David Mizrahi, Allon Raveh and Linor Yochelman moved to dismiss the Complaint as to them.  (Dkt. No. 71.)

19.    On September 27, 2018, BComm's motion to dismiss was granted in part and denied in part.  Judge Oetken held that statements about BComm's Code of Ethics and disclosure and reporting controls were not actionable.  *See Rex & Roberta Ling Living Tr. v. B Commc'ns Ltd.*, 346 F. Supp. 3d 389, 405 (S.D.N.Y. 2018).  However, Judge Oetken also held that Lead Plaintiffs had adequately alleged that (i) statements regarding BComm's reported free cash flows figures for 2015 and 2016; and (ii) a March 18, 2015, SEC filing statement regarding the independence of a subcommittee that approved a merger between Bezeq The Israeli Telecommunication Corp. Ltd. and D.B.S. Satellite Services (1998) Ltd. were materially false or misleading.  *Id.* at 404.

20.    On March 28, 2019, the Court granted the motions of all the parties who filed motions to dismiss on July 12, 2018.  (Dkt. No. 87.)  This left only BComm and Defendants Eurocom, Shaul Elovitch and Or Elovitch—who have not yet appeared—in the Litigation.

21.    In April 2019, counsel for the Settling Parties and then-BComm Chief Executive Officer Ami Barlev, met about a potential resolution of the Action.  Those initial talks did not lead to an agreement and the Settling Parties continued actively litigating the Action.

22.    On July 31, 2019, the Lead Plaintiffs moved the Court to certify the Litigation as a class action and appoint themselves as Class Representatives and their counsel, Pomerantz, as

class counsel.  (Dkt. No. 97.)  BComm opposed this motion.  (Dkt. No. 108.)  As part of this process, expert depositions were taken.  The Lead Plaintiffs' class certification motion was fully briefed as of January 13, 2020.  (Dkt. No. 118.)

23.     The parties were in the midst of merits discovery.  Lead Plaintiffs had completed their production.  BComm had begun production of documents pertaining to their control of other entities.  BComm resisted producing documents for any companies it partially owned.  The parties wrote letter briefs to the Court on this subject and it had become clear that further briefing was inevitable.

24.     In January 2020, the Settling Parties resumed settlement discussions.  After two negotiation sessions, the Settling Parties executed a Memorandum of Understanding setting forth their agreement in principle to settle the Litigation ("MOU") for $1.2 million.

25.     On February 3, 2020, the parties jointly wrote to inform the Court that the parties had reached a settlement in principal.  (Dkt. No. 122.)

26.     On February 4, 2020, the Court denied the class certification motion without prejudice to renewal in connection with the motion for approval of the settlement.  (Dkt. No. 123.)

27.     On March 3, 2020, Lead Plaintiffs filed a motion for preliminary approval of settlement ("Preliminary Approval Motion") and accompanying documents.  (Dkt. Nos. 125-127.)

28.     The Court issued an Order Preliminarily Approving Settlement and Providing for Notice on April 10, 2020 ("Preliminary Approval Order," Dkt. No. 128).  The Court scheduled the Settlement Hearing for final approval of the Settlement, attorney's fees and expenses, Lead Plaintiff's compensatory award, and to hear any objections by Class Members for August 10,

2020, at 11 a.m.

29.     Thereafter, BComm paid $1.2 million into an escrow account for the Class'
benefit, two hundred and fifty thousand dollars ($250,000.00) of which is earmarked for Notice
and Administration Expenses.  (Lead Counsel expects the cost of Notice and Administration
Expenses will end up being considerably less than one hundred thousand dollars ($100,000.00).)

## III.    THE SETTLEMENT

### A.    Reasons for the Settlement

30.     Although Lead Plaintiffs and Lead Counsel strongly believe that the claims
asserted in this Action are meritorious and that the evidence developed to date supports them,
they recognize and acknowledge the substantial expense and duration of continued proceedings
that would be necessary to prosecute the Action.  Lead Plaintiffs and Lead Counsel are also
mindful of the inherent difficulty of proving claims under the federal securities laws and the
possible defenses to the claims asserted in this Action, as well as the uncertainties presented by
complex litigation.

31.     This Litigation has not gotten beyond the class certification phase, and BComm
disputes that a class should be certified.  The class certification motion itself presents unique
issues for adjudication and, while Lead Plaintiffs and Lead Counsel believe a class should be
certified in this Action, it is not yet known what the Court would decide.  BComm argued that its
stock did not trade in an efficient market and efficiency was required in order to trigger the
classwide presumption of reliance laid out in *Basic Inc. v. Levinson*, 485 U.S. 224, 241-242
(1988).  Whereas Lead Plaintiffs argued that statistically significant price impact was sufficient
to trigger the presumption.

32.     Even if the class is certified, without settlement, many issues would still remain.
For instance, the Settling Parties were still in the process of negotiating search terms for

discovery purposes.  Discovery, including international discovery and numerous depositions, would still need to be completed, then summary judgment and then trial – all of which would be extremely expensive and risky.  The Court and/or jury, depending on the proceeding, would then have had to determine: (i) whether the alleged representations/omissions were material; (ii) whether Defendants acted with scienter; (iii) whether Lead Plaintiffs are entitled to a presumption of reliance; and (iv) the artificial inflation of BComm stock and how much of the price declines were attributable to what Lead Plaintiffs allege were the disclosures of information correcting the alleged false statements.  Without this settlement, *any* recovery be very uncertain, considering the near certainty of appeals, it would inevitably be delayed by years.

33.     Given that many relevant documents are foreign language documents, and many witnesses are located outside of the United States, discovery in the Action was likely to be particularly costly.  The Settling Parties would have also had to incur substantial other costs in a prolonged litigation, which would have likely spanned through summary judgment, trial, and appeals.  Lead Counsel would anticipate, given the complexities, continuing to review at least hundreds of thousands of pages of documents, if not more, and taking many depositions.  In addition to merits discovery, the parties would have to continue engaging experts through the remainder of the litigation.

34.     In contrast to the foregoing, the Settlement represents an immediate and certain benefit for the Class.  Lead Counsel, having evaluated the substantial risk, time, and expense required to prosecute this Action through trial and appeals, strongly believes that the Settlement is a very favorable result for the Class.

###  B.     Settlement Terms

35.     Lead Plaintiffs and Lead Counsel retained an expert who estimated damages at $7 million.  The Settlement provides the Class with $1.2 million in cash, which Lead Plaintiffs

estimate at over 17% of estimated damages.

36.    The $1.2 million Settlement amount is a highly favorable result that is well above the median settlement for similar securities class actions.  *See* Stefan Boettrich & Svetlana Starykh, Recent Trends in Securities Class Action Litigation: 2018 Full-Year Review (NERA Jan. 29, 2019), at 35 (Fig. 27), 36 (Fig. 28) (showing the median settlement value in securities class actions in 2018 was just 2.6% of estimated damages, and for cases between 1996-2018 with NERA-defined investor losses between $100-199 million was only 3.1%);[3] Laarni T. Bulan, Ellen M. Ryan, & Laura E. Simmons, *Securities Class Action Settlements – 2018 Review and Analysis* (Cornerstone Research 2019), at 6 (Fig. 5) (between 2009-2017, the median settlement in securities class actions with simplified tiered damages ranging between $75-149 million and $150-249 million was approximately 5% and 4%, respectively, whereas the median settlement in 2018 for these ranges was approximately 4.9% and 9.4%, respectively; between 2009-2017, median settlement was approximately 5.1% of simplified tiered damages for all securities class actions and, in 2018, median settlement was approximately 6% for all securities class actions).[4] These studies tend to focus on the size of the settlement relative to transaction losses, not recoverable damages, and therefore probably understate the recovery rate.  *See Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005).

37.    BComm has not admitted to any liability or any wrongdoing as part of the Settlement and adamantly maintains that it is not liable to the Class.

---

[3] *See* https://www.nera.com/content/dam/nera/publications/2019/PUB_Year_End_Trends_ 012819_Final.pdf.
[4] *See* https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements- 2018-Review-and-Analysis.pdf.

## IV.   THE COURT'S PRELIMINARY APPROVAL ORDER AND PLAINTIFFS'DISSEMINATION OF NOTICE

### A.   Preliminary Approval Order

38.   On April 10, 2020, the Court issued the Preliminary Approval Order (Dkt. No. 128).

39.   In the Preliminary Approval Order, the Court:

   a)   preliminarily approved the Stipulation and the Settlement set forth therein, subject to further consideration at the Settlement Hearing;

   b)   scheduled a Settlement Hearing for August 10, 2020, at 11 a.m., to determine whether the proposed Settlement on the terms and conditions provided for in the Stipulation is fair, reasonable, and adequate and should be approved; whether a judgment as provided in the Stipulation should be entered; whether the proposed Plan of Allocation should be approved; and to determine any amount of fees and expenses that should be awarded to Lead Counsel and to Lead Plaintiffs;

   c)   appointed Strategic Claims Services ("SCS" or "Claims Administrator") to supervise and administer the notice procedure as well as the processing of claims;

   d)   approved the form and content of the Notice of Proposed Settlement of Class Action ("Notice"), the Proof of Claim and Release form ("Proof of Claim"), and the Summary Notice;

   e)   directed SCS to take all reasonable efforts to cause a copy of the Notice and Proof of Claim to be mailed by first-class mail to potential Class Members;

   f)   directed copies of the Notice and Proof of Claim to be posted on a SCS website designated for the Action no later than May 1, 2020 (the "Notice Date");

   g)   directed Counsel, through SCS, to cause the Summary Notice to be posted over *GlobeNewswire* no later than fourteen (14) calendar days after the Notice Date;

   h)   directed Counsel to serve on Defendants' counsel and file with the Court proof of such mailing and publication at least seven (7) calendar days prior to the Settlement Hearing;

     i)      established procedures and deadlines for Class Members to object to the Settlement, Plan of Allocation, award of attorneys' fees, reimbursement of expenses, or award to Lead Plaintiffs and to appear at the Settlement Hearing; and

     j)      established procedures and deadlines for Class Members to submit Proofs of Claim or seek exclusion.

**B.**    **Notice**

40.     Attached hereto as Ex. 1 is a true and correct copy of the Bravata Declaration, which sets forth the efforts undertaken by SCS to mail the Notice and Proof of Claim to potential Class Members, to publish the Summary Notice, and to establish the website and Internet notice.

41.     As detailed in the Bravata Decl., SCS mailed or caused to be mailed a total of 1,385 Notice Packets through first-class mail to potential Class Members, brokers and other nominees.  The Summary Notice was posted over *GlobeNewswire* on May 8, 2020.

42.     Additionally, SCS posted the Notice Packet, the Preliminary Approval Order, and the Stipulation on SCS's website, https://www.strategicclaims.net/bcomm/.

43.     As required by Federal Rule of Civil Procedure 23, due process, and the PSLRA, 15 U.S.C. §78u-4(f)(7), the Notice: (a) described the nature of the Action; (b) included the definition of the Class; (c) set forth the Class' claims; (d) described the Settlement's terms; (e) described the Plan of Allocation; (f) disclosed that Lead Counsel intends to seek attorneys' fees of up to 30% of the Settlement Fund, plus reimbursement of expenses up to $525,000, and an award for Lead Plaintiffs of $6,000.00 cumulative; (g) advised Class Members of the right to exclude themselves from the Class and the binding effect of not doing so; (h) provided the deadline and procedure for filing a proof of claim, opting-out of the Settlement, or opposing the Settlement, Plan of Allocation, award of attorneys' fees, reimbursement of expenses, or award to Lead Plaintiffs; (i) provided the necessary information for any Class Member to examine the Court records should they so desire; (j) provided the date, time, and place of the Settlement

Hearing; (k) summarized the reasons why the Settling Parties are proposing the Settlement; (l) provided the contact information for Lead Counsel; (m) provided instructions to securities brokers and other nominee holders for forwarding the Notice to those persons for whom the nominees held shares in street name; and (n) stated the binding effect of a judgment on Class Members.

44.     The notice procedures set forth above satisfied federal due process because they more than adequately apprised the interested parties of the pendency of the Action and afforded them the opportunity to present their objections.

**C.     Reaction of the Class**

45.     To date, neither Lead Counsel nor defense counsel has received any objection to the Settlement, the Plan of Allocation, the attorneys' fees award, the requested reimbursement of expenses, or the award to Lead Plaintiffs from any Class Member, nor have they received any requests for exclusion from the Class.

**D.     The Plan of Allocation**

46.     Pursuant to the Preliminary Approval Order, and as explained in the Notice, all Class Members who wish to participate in the Settlement must submit a Proof of Claim to SCS postmarked no later than seven (7) calendar days after the date of the Settlement Hearing.  All Class Members who wish to exclude themselves from the Settlement must file a request for exclusion by July 20, 2020.

47.     As set forth in the Notice, all Class Members who timely file a valid Proof of Claim form entitling him/her to a recovery of $10.00 or more will receive a distribution of the Settlement proceeds, after deduction of attorneys' fees, expenses, notice/administration expenses, Lead Plaintiffs' award, and taxes incurred on interest income earned by the gross Settlement Fund.  The distribution will be made in accordance with the Plan of Allocation set

forth and described in detail in the Notice.

48.     The objective of the Plan of Allocation is to equitably distribute the Net Settlement Fund among Authorized Claimants who suffered economic loss as a result of Defendants' alleged fraud, as opposed to losses caused by market or industry factors not related to the alleged fraud.

49.     The Plan of Allocation was formulated by Lead Counsel, in consultation with a well-respected and experienced financial consultant, and was designed to ensure that the distribution of the Settlement Fund was fair and consistent with Lead Plaintiffs' theory of the case, which asserted that there was a decline in the price of BComm Shares reflecting a disclosure of the truth relating to the alleged misconduct and to ensure that the allocation comported with the federal securities laws, including principles of loss causation.

50.     The Plan of Allocation does not compensate losses resulting from "in and out" transactions—losses from sales made prior to revelation of truth.  *See Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 342 (2005) ("But if, say, the purchaser sells the shares before the relevant truth begins to leak out, the misrepresentation will not have led to any loss.").

51.     Perhaps most importantly, the Plan of Allocation does not discriminate between Class Members in the same position, as each Authorized Claimant will receive a *pro rata* share of the Net Settlement Fund.

52.     Lead Counsel and their financial consultant determined that this was the fairest method of allocation of the Net Settlement Fund.

53.     A plaintiff incurs damages when purchasing a share at a price inflated as a result of false or misleading statements and/or omissions, provided that a later curative disclosure of that fraud causes the security price to decline.   Price inflation can be created by material

misrepresentations and/or omissions on or before the purchase date, which remain uncorrected in whole or in part at that date. Damages are mitigated if the share is later sold, while the price remains inflated, so that the original purchaser receives at sale an offsetting "bonus" equal to the dollar amount of inflation remaining at the sale date. Price inflation may be measured from changes in security prices, net of market, industry, and other non-fraud-related effects, when the true condition and prospects of the company are partially or fully disclosed; price inflation present at the purchase date may be estimated by measuring the portion of the price decline caused by a curative disclosure.

54.     The actual loss suffered by a Class Period purchaser (between March 18, 2015 and September 6, 2017, both dates inclusive) in this Action is readily observed as the portion of the BComm-specific price decline caused by the revelation of fraud on June 20, 2017; June 22, 2017; June 26, 2017; July 6, 2017; July 17, 2017; July 19, 2017; September 5, 2017; and September 7, 2017. If a BComm Share was sold before June 20, 2017 (the earliest Corrective Disclosure Date), the Recognized Loss for that Share is $0.00, and any loss suffered is not compensable under the federal securities laws. Likewise, if a BComm Share was both purchased and sold between two consecutive Corrective Disclosure Dates, the Recognized Loss for that Share is $0.00.

| Table 1<br>Artificial Inflation in BComm Shares | | |
|---|---|---|
| **From** | **To** | **Per-Share Price Inflation** |
| 8/18/2015 | 6/19/2017 | $7.69 |
| 6/20/2017 | 6/21/2017 | $6.70 |
| 6/22/2017 | 6/25/2017 | $5.58 |
| 6/26/2017 | 7/5/2017 | $4.18 |
| 7/6/2017 | 7/16/2017 | $3.71 |
| 7/17/2017 | 7/18/2017 | $2.01 |
| 7/19/2017 | 9/4/2017 | $1.28 |
| 9/5/2017 | 9/6/2017 | $0.60 |

| 9/7/2017 | Thereafter | $0.00 |

55.     Furthermore, in accordance with the "Limitation on Damages" provisions of the PSLRA (15 U.S.C. §78u-4(e)), damages on a share purchased during the Class Period and held as of the close of the 90-day period subsequent to the Class Period (the "90-Day Lookback Period") cannot exceed the difference between the purchase price paid for the share and the average price of the share during the 90-Day Lookback Period.  Damages on shares purchased during the Class Period and sold during the 90-Day Lookback Period cannot exceed the difference between the purchase price paid for the share and the rolling average price of the share during the portion of the 90-Day Lookback Period elapsed as of the date of sale.

56.     Additionally, under the U.S. Supreme Court's decision in *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 342-43 (2005), damages are assessed only for shares purchased during the Class Period and retained through at least the first alleged curative disclosure—shares purchased during the Class Period and sold before the alleged curative disclosure do not incur damages.

57.     There have been no objections to the Plan of Allocation, which is set forth in the Notice.  Lead Plaintiffs respectfully submit that it is fair, reasonable, and adequate and should be approved by the Court.

## V.   LEAD COUNSEL'S APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

### A.   Attorneys' Fees

58.     Lead Counsel have represented the Class on a wholly contingent basis for almost three years, not receiving any payment for their service or the expenses incurred in prosecuting this Action against Defendants and negotiating the Settlement.  Throughout this time, Lead Counsel's dedication to recovering a favorable result for the Class has been expensive and challenging.

59.     The Notice informed Class Members that Lead Counsel would apply for attorneys' fees in the amount of up to 30% of the Settlement Fund, plus reimbursement of expenses up to $525,000, and an award to Lead Plaintiffs up to $6,000.00 in total (with each of the three Lead Plaintiffs receiving $2,000,00).

60.     Lead Counsel now requests that the Court award a fee of only 25% of the Settlement Fund, or $300,000.00, plus accrued interest.  Lead Counsel is requesting a reduced amount so that there are more funds available for the Class.

61.     Lead Counsel intends to share part of any attorneys' fees awarded by the Court with other counsel in accordance with their level of contribution to the initiation, prosecution, and resolution of the Action, as provided for in Paragraph 7.2 of the Stipulation.

62.     As discussed in Lead Plaintiffs' Memorandum of Law in Support of Unopposed Motion for Award of Attorneys' Fees, Reimbursement of Expenses, and Compensatory Award to Lead Plaintiff filed concurrently herewith, the requested fee is within the range of reasonable fees awarded in common-fund cases.  The 25% fee is also strongly supported and should be approved based on the facts on this case, including the superb result achieved for the Class, the skill required, the quality of work performed, and the risk of pursuing claims on a contingency basis.

63.     As set forth in the Lodestar Report included as Ex. A to the Declaration of Jeremy A. Lieberman on Behalf of Pomerantz LLP in Support of Unopposed Motion for Award of Attorneys' Fees, Reimbursement of Expenses, and Compensatory Award to Lead Plaintiff, dated June 15, 2020, which is itself submitted as Ex. 2 hereto ("Pomerantz Decl."), Pomerantz has committed 2014.45 hours to litigating this Action from the initial investigation to its resolution, which includes time spent on:

a.   Preparing briefing in connection with the motion for appointment of lead plaintiff;

b.   Retaining and working with investigators to locate and interview numerous confidential witnesses;

c.   Reviewing and analyzing BComm's Class Period and pre- and post-Class Period SEC filings, annual reports, press releases, investment conference transcripts, and other public statements;

d.   Thoroughly researching the securities laws and intricacies of BComm's business and place in an intertwined network of companies;

e.   Preparing the detailed Complaint, including drafting such complaint and performing all legal and factual analysis, and expert consultation;

f.   Opposing the multiple Motions to Dismiss filed by Defendants, which raised and evaluated numerous complex issues specific to the Action;

g.   Preparing a detailed Class Certification motion, including working extensively with a class certification expert;

h.   Defending the deposition of Lead Plaintiffs' class certification expert and taking the deposition of BComm's expert opposing class certification;

i.   Replying to BComm's opposition to class certification, including again working with Lead Plaintiffs' class certification expert;

j.   Engaging in letter briefing to the Court regarding discovery;

k.   Producing documents from Lead Plaintiffs and reviewing documents produced by BComm;

l.   Obtaining competing bids for claims-administration work related to the Settlement before selecting a competitive bidder to serve as Claims Administrator, and worked with the Claims Administrator to effectuate notice and oversee the administration process;

m.   Securing the services of the Escrow Agent;

n.   Preparing the motion papers and related documents necessary to obtain preliminary approval of the Settlement and provide notice of the Settlement to Class Members; and

o.   Preparing the motion papers and related documents necessary to obtain final approval of the Settlement.

64.     Lead Counsel's expertise has been vital to obtaining such a favorable result for the Class.  As set forth in detail in the Pomerantz firm resume/biography, attached as Ex. C to the Pomerantz Decl., Pomerantz is a nationally-recognized class-action firm with extensive experience litigating and negotiating settlements as lead or co-Counsel in complex securities class actions.  Pomerantz has been appointed lead or co-lead counsel in many complex securities class actions and has recovered substantial sums for clients and class members.  Pomerantz has prosecuted hundreds of such cases to successful resolution in its 80-year history and obtained billions of dollars in compensation for class members.

65.     Based on the hours expended by Pomerantz and the current billing rates for the firm's professionals, the total lodestar is $1,205,579.[5]  The lodestar results in a multiplier of approximately 0.25, which is determined by dividing the $300,000 requested fee by the firms' $1,205,579 total lodestar.   In other words, Lead Counsel is only requesting one-forth of its lodestar amount.

66.     The Lodestar Report attached as Ex. A to the Pomerantz Decl. lists the amount of time spent by Pomerantz in the prosecution of this Action.  The firms' time is taken from daily time records regularly prepared and maintained in the ordinary course of business.

67.     The number of hours reasonably and necessarily spent by Pomerantz on this Action is 2014.45.  Pomerantz's hourly billing rates for the professionals working on this Action ranged from $330 to $1000.  The hourly rates for attorneys and professional staff at Pomerantz are the usual and customary rates charged for each individual in non-contingent matters and conform to industry practice.

68.     As set forth in Lead Plaintiffs' Memorandum of Law in Support of Unopposed

---

[5] Excludes work on motion seeking attorneys' fees, reimbursement of expenses, and awards to Plaintiffs.

Motion for Award of Attorneys' Fees, Reimbursement of Expenses, and Compensatory Award to Lead Plaintiff, a multiplier of 0.25 is much lower than typical range of a fair and reasonable award.

### B.   Costs and Expenses

69.   The expenses incurred in the prosecution of this Action are set forth in Exhibit B to the Pomerantz Decl. ("Expense Summary").   In total, Lead Counsel has incurred $514,525.37 in expenses.   The majority of these resulted from the work of experts engaged to help Lead Counsel prosecute this Action.

70.   The Expense Summary lists the unreimbursed expenses that Lead Counsel reasonably and necessarily incurred in the prosecution of this Action.

71.   These expenses are reasonable in light of the pace and duration of this Action and were necessarily incurred for its successful resolution.

## VI.   AN AWARD TO THE LEAD PLAINTIFFS IS WARRANTED

72.   The Notice advised Class Members that Lead Plaintiffs would seek an award of no greater than $6,000.00 in total.

73.   Lead Plaintiff seeks an award in the amount of $6,000.00, $2,000.00 for each of the three Lead Plaintiffs.   This award is justified in light of Lead Plaintiffs' efforts and lost time overseeing the prosecution of the Action, as well as the negotiations leading to the Settlement. In particular, Lead Plaintiffs (a) communicated with Lead Counsel regarding the posture and progress of the case; (b) compiled their trading data and completed their certifications in connection with their motion to be appointed Lead Plaintiffs; (c) reviewed all of the significant pleadings and pre-motion letters filed in the Action; (d) performed searches for documents; (e) consulted with Lead Counsel regarding the settlement negotiations and mediation; and (f) evaluated and approved the proposed Settlement.   *See* Declaration of Rex Ling, dated June 12,

2020, in Support of Lead Plaintiffs' Unopposed Motions for (I) Final Approval of Class Action Settlement and Plan of Allocation of Settlement Proceeds and (II) Award of Attorneys' Fees, Reimbursement of Expenses, and Compensatory Award to Lead Plaintiffs, at ¶ 4, submitted as Ex. 3 hereto; Declaration of John Taylor Jones, dated June 14, 2020, in Support of Lead Plaintiffs' Unopposed Motions for (I) Final Approval of Class Action Settlement and Plan of Allocation of Settlement Proceeds and (II) Award of Attorneys' Fees, Reimbursement of Expenses, and Compensatory Award to Lead Plaintiffs, at ¶ 4, submitted as Ex. 4 hereto; and Declaration of David Jones, dated June 14, 2020, in Support of Lead Plaintiffs' Unopposed Motions for (I) Final Approval of Class Action Settlement and Plan of Allocation of Settlement Proceeds and (II) Award of Attorneys' Fees, Reimbursement of Expenses, and Compensatory Award to Lead Plaintiffs, at ¶ 4, submitted as Ex. 5 hereto.

74.    Given the important contributions and the time and effort expended by Lead Plaintiffs, the requested award is warranted and should be approved.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 15, 2020

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman